IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

CENTER FOR PUBLIC INTEGRITY,    )
                                )
         Plaintiff,             )         Civil Action No.: 06-1818 (JDB)
                                )
    v.                          )
                                )
UNITED STATES DEPARTMENT OF     )
HEALTH & HUMAN SERVICES,        )
                                )
                                )
         Defendant.             )
                                )
_____ )

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant, the United States Department of Health and Human Services, respectfully moves the Court, pursuant to Federal Rule of Civil Procedure 56, for an order granting Defendant summary judgment on the grounds that no genuine issue of material fact exists and Defendant is entitled to judgment as a matter of law.

In support of this Motion, Defendant respectfully submits the attached statement of material facts as to which there is no genuine dispute, a memorandum of points and authorities with exhibits, and a proposed order.

Respectfully submitted,

   /s/ Jeffrey A. Taylor
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

   /s/ Rudolph Contreras
RUDOLPH CONTRERAS, D.C. BAR #  434122
Assistant United States Attorney

   /s/ Michelle N. Johnson
MICHELLE N. JOHNSON, D.C. BAR # 491910

Assistant United States Attorney
United States Attorney's Office
Civil Division
555 4th Street, N.W. – Room E4212
Washington, D.C. 20530
(202) 514-7139

COUNSEL FOR DEFENDANT

Of Counsel:

Patricia Mantoan
Attorney
Office of the General Counsel
General Law Division
Room 4760 Cohen Building
330 Independence Avenue, S.W.
Washington, DC 20201

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CENTER FOR PUBLIC INTEGRITY,** | ) |
| | ) |
| **Plaintiff,** | )    **Civil Action No.: 06-1818 (JDB)** |
| | ) |
| **v.** | ) |
| | ) |
| **UNITED STATES DEPARTMENT OF** | ) |
| **HEALTH & HUMAN SERVICES,** | ) |
| | ) |
| | ) |
| **Defendant.** | ) |
| | ) |
| | ) |

**DEFENDANT'S STATEMENT OF MATERIAL FACTS
AS TO WHICH THERE IS NO GENUINE ISSUE**

Pursuant to LCvR 56.1 and 7(h), Defendant, the United States Department of Health and
Human Services ("HHS"), respectfully submits this statement of material facts as to which there
is no genuine issue in support of its Motion for Summary Judgment.

1.    On December 21, 2005, Kevin Bogardus, identifying himself as a reporter for
the Center for Public Integrity ("CPI"), sent via electronic mail five separate requests pursuant to
the Freedom of Information Act.  Aside from the information sought in the requests, the requests
were identical.  (Exhibit ("Ex.") A, Letters to Lynn Armstrong from Kevin Bogardus dated
December 21, 2005).[1]

2.    Mr. Bogardus indicated that CPI was submitting its FOIA requests "as a
'representative of the news media.'"  (Ex. A, at 1).  In support of this categorization, Mr.
Bogardus stated that "[t]he Center for Public Integrity is a nonpartisan, nonprofit investigative

---

[1]Defendant has submitted the five separate FOIA requests as one exhibit.  When citing to
page numbers of the exhibit, reference is made to the pages as individually numbered in each of
the letters.

reporting organization, based in Washington, D.C., whose mission is to examine and write about public service and ethics-related issues." Id. Mr. Bogardus indicated that the disclosure would "'contribute to the understanding of the public at large'" and that it would "be posted to [CPI's] newsletter, *The Public i*, and on our website, www.publicintegrity.org, and will be read by a large number of people." Id. at 2. In addition, Mr. Bogardus stated that the information "produced through this and other FOIA requests" would "serve as the basis for several press releases and articles that explain the actions and operations of government to the general public." Id. Furthermore, Mr. Bogardus indicated that CPI would also distribute the information "to the general public via major news organizations." Id. Finally, the letter stated that CPI

> possesses the skills necessary to process the requested information. We are investigative journalists. We write and post an online newsletter. Other members of the media consider us to be [a] news organization as evidenced by our numerous awards over the years from the Society of Professional Journalists . . . .

Id.

3.      Mr. Bogardus further stated that "the disclosure under [CPI's] FOIA request will contribute to the understanding of the public at large." Id. Furthermore, he contended that CPI did not have any commercial interest in the information, and that "[a]lmost all of the publications by the Center are made available without charge." Id.

4.      In a letter dated October 5, 2006,[2] Ms. Armstrong informed Mr. Bogardus that CPI's request for a fee waiver would be denied because the disclosure of information was not in the public interest and CPI did not qualify as a representative of the news media. (Ex. B, Letter to Kevin Bogardus from Lynn Armstrong dated October 5, 2006). Specifically, Ms. Armstrong

---

[2]Prior to her October 5, 2006 letter, Ms. Armstrong sent Mr. Bogardus separate correspondence in which she informed him that CPI's requests were being aggregated and that CPI's request for expedited service was being denied.

concluded that CPI did not "meet the criteria as set forth in the Department of Justice FOIA

Reference Guide, or the Department's implementing regulations at 45 CFR Part 5.45 . . . ." Id.

5.      In a letter dated October 16, 2006, CPI's attorney, Mr. Peter Newbatt

Smith, appealed the denial of CPI's request for a fee waiver.  (Ex. C, Letter to Deputy Assistant

Secretary for Public Affairs (Media) from Peter Newbatt Smith dated October 18, 2006).  In his

letter, Mr. Smith stated that CPI was "entitled to fee classification as a representative of the

media[ ]" because:

> The Court of Appeals for the D.C. Circuit has held that, for purposes
> of FOIA's fee classifications, a 'representative of the news media' is
> "a person or entity that gathers information of potential interest to a
> segment of the public, uses its editorial skills to turn the raw materials
> into a distinct work, and distributes that work to an audience." *National
> Security Archive v. DOD,* 880 F.2d 1381, 1387 (D.C. Cir. 1989).  The
> Center for Public Integrity clearly falls within this definition, and I
> invite you to review our recent publications, at
> http://www.publicintegrity.org/archives/aspx, to satisfy yourself of this
> fact.  I am also enclosing a list . . . of journalism awards won by the
> Center, conferred on us by other representatives of the news media who
> consider us to be one of their own.
>
> For these reasons, I ask that you grant the Center for Public Integrity
> the fee reductions due to a representative of the news media under the
> Freedom of Information Act.

Id.  CPI did not receive a timely response to its appeal.  Am. Compl. ¶ 24.[3]

6.      On February 14, 2006, Ms. Marina Walker Guevara submitted another FOIA

request on behalf of CPI.  (Ex. D, Letter to Darlene Christian from Marina Walker Guevara

dated February 14, 2006).  In this request, the Center sought:

> All and any grants, contracts and/or agreements that have been made
> through the Department of Health and Human Services in relation to the
> President's Emergency Plan for Aids Relief (Pepfar) since the creation

---

[3]References to "Am. Compl." are to the First Amended Complaint for Declaratory and
Injunctive Relief filed by plaintiff on November 21, 2006.

of the plan in 2003 to the date on which you process this request.  These
contracts should include but not be limited to all program areas of Pepfar:
prevention, treatment and care.  By 'in relation' we mean both those
projects funded by other monies allocated by, through or in consultation
with the Office of the Global Aids Coordinator (OGAC).

Id.

_____7.    In its FOIA request, Ms. Guevara indicated that CPI was filing its request

as a "'representative of the news media' . . . ."  (Ex. D, at 1).  Ms. Guevara indicated that:

The Center for Public Integrity is a nonpartisan, nonprofit investigative
reporting organization, based in Washington, D.C., whose mission is to
examine and write about public service and ethics-related issues.  The
International Consortium of Investigative Journalists was created in
1997 as a project of the Center for Public Integrity.  For more information
on the Center for Public Integrity, ICIJ, and their online publication,
please refer respectively to http://www.publicintegrity.org,
http://www.icij.org, and http:www.public-i.org.

Id. at 2.   Furthermore, as it concerned its purported news media status, Ms. Guevara indicated

that

[t]he information will be posted to our newsletter, *The Public i*
and on our website, www.publicintergrity.org, and will be read by
a large number of people.  We expect the information produced
through this and other FOIA requests to serve as the basis for several
press releases and articles that explain the actions and operations
of government to the general public.

Id.  In addition, Ms. Guevara stated that "relevant information from this FOIA request will also

be distributed to the general public via major news organizations."  Id.  Ms. Guevara also

contended that disclosure of the information "'is likely to contribute' to the understanding of

your agency to the common reader."  Id. at 1.

8.    Additionally,  Ms. Guevara stated that CPI did not have any commercial interest

in the information because CPI "represent[s] the news media and plan[s] to distribute this

information to the public."  Id. at 3.  Furthermore, Ms. Guevara noted, "[a]lmost all of the

publications by [CPI] are made available without charge."  Id.

9.    In a letter dated April 19, 2006, Ms. Darlene Christian, Freedom of Information

Officer, Public Health Service, a component of HHS, denied CPI's request for a fee waiver.  (Ex.

E, Letter to Ms. Marina Walker Guevara from Darlene Christian dated April 19, 2006).  First,

Ms. Christian concluded that waiver or reduction of the applicable fees was not warranted in

light of the fact that disclosure of the information would not be in the public interest.  Id.

Specifically, Ms. Christian concluded that CPI did not

> support the likelihood of contributing significantly to public
> understanding of government operations or activities that are not
> already public knowledge.  Pepfar provides annual reports to Congress,
> and the Government has already published information concerning
> Pepfar on its web sites, including press releases.  The information is
> grant-specific, and narrowly focused.  Therefore, it would not
> significantly contribute to the general public understanding of the
> operations or activities of the Government.

Id. at 1-2.

10.    Ms. Christian also denied CPI's request for fee treatment as a representative of

the news media.  Id. at 2.  Ms. Christian concluded that CPI's statements that it "'represent[s]'

the news media and other Federal agencies have granted CPI media status" were insufficient to

warrant a fee waiver.  Id.  Ms. Christian noted that CPI's website "acknowledges that [CPI] is a

broker of information.  Therefore, CPI is a secondary contributor, not a primary news-gathering

organization."  Id.  Ms. Christian also found that CPI's statements were not "convincing and

[did] not provide substantial information to indicate that release of the information in this

instance[ ] would not further the commercial, trade, or profit interests of your organization."  Id.

11.    In a letter dated May 26, 2006, CPI appealed Ms. Christian's denial of its request

for news media representative status.  (Ex. F, Letter to Deputy Assistant Secretary for Public

Affairs (Media) from Peter Newbatt Smith dated May 26, 2006).  Mr. Smith stated that CPI's

statement on its website, "that 'Through objective and thorough analyses, the Center hopes to

serve as an honest broker of information . . . .'" did not "imply that the Center charges or receives payment for information."  Id.  Furthermore, Mr. Smith stated that CPI should be classified as a representative of the news media because:

> [t]he Court of Appeals for the D.C. Circuit has held that, for purposes of FOIA's fee classifications, a 'representative of the news media' is 'a person or entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience.' *National Security Archive v. DOD,* 880 F.2d 1381, 1387 (D.C. Cir. 1989).  The Center for Public Integrity clearly falls within this definition and I invite you to review our recent publications, at http://www.publicintegrity.org/archives.aspx, to satisfy yourself of this fact.  I am also enclosing a list . . . supplemented with additional awards won by the Center, conferred on us by other representatives of the news media who consider us to be one of their own.

Id.  CPI did not receive a timely response to its appeal.  Am. Compl. ¶ 24.

12.    On October 23, 2006, CPI filed its complaint in this Court.  In this complaint, CPI only sought to challenge HHS' denial of its request for news media status as it pertained to CPI's February 14, 2006, request.  Compl. ¶¶ 5-13.[4]

13.    Prior to an answer being filed, on November 21, 2006, Plaintiff filed a First Amended Complaint in which it added a challenge to the denial of CPI's request to be treated as a representative of the news media for fee purposes made in its December 21, 2005 requests. Am. Compl. ¶¶ 5-9.

14.    In a letter dated November 30, 2006, Ms. Christian wrote to CPI regarding its pending appeals concerning the December 2005 and February 2006 requests.  (Ex. G, Letter to Peter Newbatt Smith from Darlene Christian dated November 30, 2006).  In this letter, Ms. Christian sought "to obtain additional information from CPI in order to complete processing and

---

[4]References to "Compl." are to the complaint initially filed by plaintiff on October 23, 2006.

issue a final agency determination." Id. at 1. In particular, Ms. Christian noted that the fact that

CPI "[p]rovid[es] documents to the public through a website and through the sale of publications

is not sufficient to qualify . . . as a representative of the news media." Id. Furthermore, Ms.

Christian stated that an organization's awards, received from news media sources, as well as the

fact that it may provide information to representatives of the news media also "does not qualify

an organization as news media." Id. at 2. Ms. Christian sought the following specific

information from CPI:

> 1.      Please explain what CPI means by the term 'broker of
> information' in its 2004 Annual Report that appeared on your website.
> This same characterization as 'broker of information' was used by CPI
> to describe itself on your website under "About Us" in March, 2006.
>
> 2.      What does CPI intend to do with the records that are requested
> under the two FOIA requests at issue.
>
> 3.      Please explain how CPI will use its editorial skills to turn the
> requested records for the two FOIA requests at issue into distinct works.
>
> 4.      If a distinct work is created, please explain how CPI will distribute
> that work.

Id. at 2.

15.    Mr. Smith responded to Ms. Christian in a letter dated December 6, 2006. (Ex.

H, Letter to Ms. Darlene Christian from Peter Newbatt Smith dated December 6, 2006). In this

letter, Mr. Smith indicated, in response to Ms. Christian's first question, that "[t]he *American

Heritage Dictionary* defines 'honest broker' as 'A neutral agent, as in mediation.' . . . I have no

information to suggest that the Center intended by this expression any other meaning." Id. at 2.

Regarding Ms. Christian's second, third, and fourth questions, Mr. Smith provided the following

response:

> The specific answers to these questions (2-4) are, for the purposes of
> determining whether the Center is a representative of the news media,
> superfluous to the information already given to you and available to you.

The Center intends to use the requested records in the conduct of its investigative journalism mission.  The Center plans to use the requested records in creating 'distinct works' of a character similar to the hundreds of reports its has created since its formation in 1989.   The Center plans to distribute those 'distinct works' as it has distributed all its reports, by publication on its Web site and/or in printed form (e.g., newsletter, pamphlet or book).

The Center will not use the requested records for any commercial purpose.

Id.

Respectfully submitted,


      /s/ Jeffrey A. Taylor
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


      /s/ Rudolph Contreras
RUDOLPH CONTRERAS, D.C. BAR #  434122
Assistant United States Attorney


      /s/ Michelle N. Johnson
MICHELLE N. JOHNSON, D.C. BAR # 491910
Assistant United States Attorney
United States Attorney's Office
Civil Division
555 4th Street, N.W. – Room E4212
Washington, D.C. 20530
(202) 514-7139

COUNSEL FOR DEFENDANT


Of Counsel:

Patricia Mantoan
Attorney
Office of the General Counsel
General Law Division
Room 4760 Cohen Building
330 Independence Avenue, S.W.
Washington, DC 20201

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

————————————————————————

CENTER FOR PUBLIC INTEGRITY,    )
                               )
         Plaintiff,        )        Civil Action No.: 06-1818 (JDB)
                               )
   v.                      )
                               )
UNITED STATES DEPARTMENT OF   )
HEALTH & HUMAN SERVICES,     )
                               )
         Defendant.      )
                               )

———————————————————————— )

## <u>DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR</u> <u>SUMMARY JUDGMENT</u>

Defendant, the Department of Health and Human Services ("HHS"), submits this memorandum of law in support of its motion for summary judgment. Plaintiff, the Center for Public Integrity ("Plaintiff" or "CPI") brings this action pursuant to the Freedom of Information Act, 5 U.S.C. § 552 <u>et</u> <u>seq.</u>, seeking a declaratory judgment declaring that it "qualifies as a 'representative of the news media'" and requiring HHS to treat it as such in regards to Plaintiff's December 2005 and February 2006 FOIA requests. Because the Agency properly determined that Plaintiff failed to substantiate its claim that it is a representative of the news media, and because Plaintiff has not indicated its intention to pay the fees necessary to obtain the records it seeks, summary judgment in favor of Defendant is proper.

## <u>BACKGROUND</u>

### I.    **The December 21, 2005 FOIA Requests**

On December 21, 2005, Kevin Bogardus, identifying himself as a reporter for CPI, sent via electronic mail five separate requests pursuant to the Freedom of Information Act, 5 U.S.C. §

552 et seq. Aside from the information sought in the requests, the requests were identical.

(Exhibit ("Ex.") A, Letters to Lynn Armstrong from Kevin Bogardus dated December 21, 2005).

In each of CPI's requests, Mr. Bogardus indicated that CPI was entitled to treatment as a

representative of the news media for fee processing purposes. Id. at 1. Mr. Bogardus stated that

"[t]he Center for Public Integrity is a nonpartisan, nonprofit investigative reporting organization,

based in Washington, D.C., whose mission is to examine and write about public service and

ethics-related issues." Id. Mr. Bogardus indicated that the disclosure would "'contribute to the

understanding of the public at large'" and that it would "be posted to [CPI's] newsletter, *The

Public i*, and on our website, www.publicintegrity.org, and will be read by a large number of

people." Id. at 2. In addition, Mr. Bogardus stated that the information "produced through this

and other FOIA requests" would "serve as the basis for several press releases and articles that

explain the actions and operations of government to the general public." Id. Furthermore, Mr.

Bogardus indicated that CPI would also distribute the information "to the general public via

major news organizations." Finally, the letter stated that CPI

> possesses the skills necessary to process the requested information.
> We are investigative journalists. We write and post an online
> newsletter. Other members of the media consider us to be [a] news
> organization as evidenced by our numerous awards over the years
> from the Society of Professional Journalists . . . .

Id.

_____Ms. Armstrong denied CPI's request for a fee waiver in a letter dated October 5, 2006,[1]

(Ex. B, Letter to Kevin Bogardus from Lynn Armstrong dated October 5, 2006). In this letter,

Ms. Armstrong informed Mr. Bogardus that CPI's request for a fee waiver would be denied

_____

[1]Prior to her October 5, 2006 letter, Ms. Armstrong sent Mr. Bogardus separate
correspondence in which she informed him that CPI's requests were being aggregated and that
CPI's request for expedited service was being denied.

because the disclosure of information was not in the public interest and CPI did not qualify as a representative of the news media. Id. Specifically, Ms. Armstrong concluded that CPI did not "meet the criteria as set forth in the Department of Justice FOIA Reference Guide, or the Department's implementing regulations at 45 CFR Part 5.45 . . . ." Id. Mr. Peter Newbatt Smith, CPI's attorney, appealed Ms. Armstrong's determination in a letter dated October 16, 2006. (Ex. C, Letter to Deputy Assistant Secretary for Public Affairs (Media) from Peter Newbatt Smith dated October 18, 2006). In his letter, Mr. Smith stated that CPI was "entitled to fee classification as a representative of the media[ ]" because:

> The Court of Appeals for the D.C. Circuit has held that, for purposes of FOIA's fee classifications, a 'representative of the news media' is "a person or entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." *National Security Archive v. DOD,* 880 F.2d 1381, 1387 (D.C. Cir. 1989). The Center for Public Integrity clearly falls within this definition, and I invite you to review our recent publications, at http://www.publicintegrity.org/archives/aspx, to satisfy yourself of this fact. I am also enclosing a list . . . of journalism awards won by the Center, conferred on us by other representatives of the news media who consider us to be one of their own.
>
> For these reasons, I ask that you grant the Center for Public Integrity the fee reductions due to a representative of the news media under the Freedom of Information Act.

Id. CPI did not receive a timely response to its appeal. Am. Compl. ¶ 24.

## II.      The February 14, 2006 FOIA Request

On February 14, 2006, Ms. Marina Walker Guevara submitted another FOIA request on behalf of CPI. (Ex. D, Letter to Darlene Christian from Marina Walker Guevara dated February 14, 2006). In this request, CPI sought:

> All and any grants, contracts and/or agreements that have been made

3

> through the Department of Health and Human Services in relation to the
> President's Emergency Plan for Aids Relief (Pepfar) since the creation
> of the plan in 2003 to the date on which you process this request. These
> contracts should include but not be limited to all program areas of Pepfar:
> prevention, treatment and care. By 'in relation' we mean both those
> projects funded by other monies allocated by, through or in consultation
> with the Office of the Global Aids Coordinator (OGAC).

Id.  Ms. Guevara stated that CPI was filing its request as a "'representative of the news media' . .

. ." because:

> The Center for Public Integrity is a nonpartisan, nonprofit investigative
> reporting organization, based in Washington, D.C., whose mission is to
> examine and write about public service and ethics-related issues. The
> International Consortium of Investigative Journalists was created in
> 1997 as a project of the Center for Public Integrity. For more information
> on the Center for Public Integrity, ICIJ, and their online publication,
> please refer respectively to http://www.publicintegrity.org,
> http://www.icij.org, and http:www.public-i.org.

(Ex. D, at 2).  Furthermore, as it concerned its purported news media status, Ms. Guevara

indicated that

> [t]he information will be posted to our newsletter, *The Public i*
> and on our website, www.publicintergrity.org, and will be read by
> a large number of people. We expect the information produced
> through this and other FOIA requests to serve as the basis for several
> press releases and articles that explain the actions and operations
> of government to the general public.

Id.  In addition, Ms. Guevara stated that "relevant information from this FOIA request will also

be distributed to the general public via major news organizations." Id.  Ms. Guevara also

contended that disclosure of the information "'is likely to contribute' to the understanding of

your agency to the common reader." Id. at 1.

      In a letter dated April 19, 2006, Ms. Darlene Christian, Freedom of Information Officer,

Public Health Service, a component of HHS, denied CPI's request for a fee waiver. (Ex. E,

4

Letter to Ms. Marina Walker Guevara from Darlene Christian dated April 19, 2006). First, Ms.

Christian concluded that waiver or reduction of the applicable fees was not warranted in light of

the fact that disclosure of the information would not be in the public interest. Id. Specifically,

Ms. Christian concluded that CPI did not

> support the likelihood of contributing significantly to public
> understanding of government operations or activities that are not
> already public knowledge. Pepfar provides annual reports to Congress,
> and the Government has already published information concerning
> Pepfar on its web sites, including press releases. The information is
> grant-specific, and narrowly focused. Therefore, it would not
> significantly contribute to the general public understanding of the
> operations or activities of the Government.

Id. at 1-2.

Ms. Christian also denied CPI's request for treatment as a representative of the news

media. Id. at 2. Ms. Christian concluded that CPI's statements that it "'represent[s]' the news

media and other Federal agencies have granted CPI media status" were insufficient to warrant a

fee waiver. Id. Ms. Christian noted that CPI's website "acknowledges that [CPI] is a broker of

information. Therefore, CPI is a secondary contributor, not a primary news-gathering

organization." Id. Ms. Christian found that CPI's statements were not "convincing and [did] not

provide substantial information to indicate that release of the information in this instance[ ]

would not further the commercial, trade, or profit interests of your organization." Id.

In a letter dated May 26, 2006, Plaintiff appealed Ms. Christian's denial of CPI's request

for media representative status. (Ex. F, Letter to Deputy Assistant Secretary for Public Affairs

(Media) from Peter Newbatt Smith dated May 26, 2006). Mr. Smith stated that CPI's statement

on its website, "that 'Through objective and thorough analyses, the Center hopes to serve as an

honest broker of information . . . .'" does not "imply that the Center charges or receives payment

for information." <u>Id.</u>  Furthermore, Mr. Smith stated that, based on District of Columbia Circuit

law, CPI should be classified as a representative of the news media because:

> The Court of Appeals for the D.C. Circuit has held that, for purposes
> of FOIA's fee classifications, a 'representative of the news media' is 'a
> person or entity that gathers information of potential interest to a segment
> of the public, uses its editorial skills to turn the raw materials into a
> distinct work, and distributes that work to an audience.' *National Security
> Archive v. DOD*, 880 F.2d 1381, 1387 (D.C. Cir. 1989).  The
> Center for Public Integrity clearly falls within this definition and I
> invite you to review our recent publications, at
> http://www.publicintegrity.org/archives.aspx, to satisfy yourself of this
> fact.  I am also enclosing a list . . . supplemented with additional awards
> won by the Center, conferred on us by other representatives of the news
> media who consider us to be one of their own.

<u>Id.</u>  CPI did not receive a timely response to its appeal.  Am. Compl. ¶ 24.

## III.    The Agency Seeks Further Information from CPI.

On October 23, 2006, CPI filed its complaint in this Court.  In this complaint, CPI

only sought to challenge HHS' denial of its request for news media status as it pertained to CPI's

February 14, 2006, request.  Compl. ¶¶ 5-13.  Prior to an answer being filed, on November 21,

2006, Plaintiff filed a First Amended Complaint in which it sought to challenge the Agency's

denial of CPI's request for news media status made in CPI's December 21, 2005 requests.  Am.

Compl. ¶¶ 5-9.

In a letter dated November 30, 2006, Ms. Christian wrote to CPI regarding its

pending appeals concerning the December 2005 and February 2006 requests.  (Ex. G, Letter to

Peter Newbatt Smith from Darlene Christian dated November 30, 2006).  In this letter, Ms.

Christian sought "to obtain additional information from CPI in order to complete processing and

issue a final agency determination."  <u>Id.</u>  In particular, Ms. Christian noted that the fact that CPI

"[p]rovid[es] documents to the public through a website and through the sale of publications is

6

not sufficient to qualify . . . as a representative of the news media." <u>Id.</u>  Furthermore, Ms.

Christian stated that an organization's awards, received from news media sources, as well as the

fact that it may provide information to representatives of the news media also "does not qualify

an organization as news media."  Ms. Christian sought the following specific information from

CPI:

> 1.    Please explain what CPI means by the term 'broker of
> information' in its 2004 Annual Report that appeared on your website.
> This same characterization as 'broker of information' was used by CPI
> to describe itself on your website under "About Us" in March, 2006.
>
> 2.    What does CPI intend to do with the records that are requested
> under the two FOIA requests at issue.
>
> 3.    Please explain how CPI will use its editorial skills to turn the
> requested records for the two FOIA requests at issue into distinct works.
>
> 4.    If a distinct work is created, please explain how CPI will distribute
> that work.

<u>Id.</u> at 2.

Mr. Smith responded to Ms. Christian in a letter dated December 6, 2006.  (Ex.

H, Letter to Ms. Darlene Christian from Peter Newbatt Smith dated December 6, 2006).  In this

letter, Mr. Smith indicated, in response to Ms. Christian's first question, that "[t]he *American*

*Heritage Dictionary* defines 'honest broker' as 'A neutral agent, as in mediation.' . . . I have no

information to suggest that the Center intended by this expression any other meaning." <u>Id.</u> at 2.

Regarding Ms. Christian's second, third, and fourth questions, Mr. Smith provided the following

response:

> The specific answers to these questions (2-4) are, for the purposes of
> determining whether the Center is a representative of the news media,
> superfluous to the information already given to you and available to you.
> The Center intends to use the requested records in the conduct of its

investigative journalism mission.  The Center plans to use the requested records in creating 'distinct works' of a character similar to the hundreds of reports its has created since its formation in 1989.  The Center plans to distribute those 'distinct works' as it has distributed all its reports, by publication on its Web site and/or in printed form (e.g., newsletter, pamphlet or book).

The Center will not use the requested records for any commercial purpose.

Id.

## ARGUMENT

## I.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) requires the entry of summary judgment where the materials presented "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  The moving party bears the initial responsibility for identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

"The decision of an agency to grant or deny a fee waiver request is reviewed de novo, looking only to the administrative record before the agency at the time of the decision."  D.C. Tech. Assistance Org. v. HUD, 85 F. Supp. 2d 46, 48 (D.D.C. 2000) (citing 5 U.S.C. § 552(a)(4)(A)(vii)); see also Campbell v. DOJ, 164 F.3d 20, 35 (D.C. Cir. 1998); Rozet v. HUD, 59 F. Supp. 2d 55, 56 (D.D.C. 1999); McClellan Ecological Seepage Situation v. Carlucci, 835 F.2d 1282, 1284 (9th Cir. 1987).  Thus, this Court's review of the administrative record is limited to the record that was before HHS when it rendered its decisions on Plaintiff's fee waiver request.  5 U.S.C. § 552(a)(4)(A)(vii).

The administrative record before the agency at the time it denied Plaintiff's requests to be categorized as a representative of the news media consists of the attached Exhibits A through H.

8

In reviewing this record, "[s]ummary judgement is available to the defendant in a FOIA case when the agency proves that it has fully discharged its obligations under FOIA . . . ." Miller v. Department of State, 779 F.2d 1378, 1382 (8th Cir. 1985) (citation omitted).  Thus, when the pleadings, supplemented by documentation or declarations, show no genuine issue as to any material fact and the defendant is entitled to judgment as a matter of law, summary judgment should be granted to the defendant.  Perry v. Block, 684 F.2d 121, 126 (D.C. Cir. 1982).

## II.   PLAINTIFF DOES NOT SATISFY THE FACTORS SUPPORTING A FINDING THAT IT IS A REPRESENTATIVE OF THE NEWS MEDIA.

Pursuant to the Freedom of Information Reform Act of 1986, the fees applicable to a FOIA request may be reduced "when records are not sought for commercial use and the request is made by . . . a representative of the news media . . . ."  5 U.S.C. § 552(a)(4)(A)(ii)(II).  The FOIA also provides that "each agency shall promulgate regulations . . . specifying the schedule of fees applicable to the processing of requests under this section and establishing procedures and guidelines for determining when such fees should be waived or reduced."  5 U.S.C. § 552(a)(4)(A)(I).  Pursuant to FOIA, HHS has promulgated regulations defining the term "representative of the news media."  In accordance with these regulations, "a representative of the news media"

> means a person actively gathering information for an entity organized and operated to publish or broadcast news to the public.  News media entities include television and radio broadcasters, publishers of periodicals who distribute their products to the general public or who make their products available for purchase or subscription by the general public, and entities that may disseminate news through other media (e.g., electronic dissemination of text).  We will treat freelance journalists as representatives of a new[s] media entity if they can show a likelihood of publication through such an entity.  A publication contract is such a basis, and the requester's past publication record may show such a basis.

9

45 C.F.R. § 5.5.    The statute and the regulations promulgated by the agency must both be taken into consideration when a fee waiver denial is being adjudicated.  See VoteHemp, Inc. v. DEA, 237 F. Supp. 2d 55, 59 (D.D.C. 2002); Campbell v. DOJ, 164 F.3d 20, 35 (D.C. Cir. 1998); Samuel Gruber Educ. Project v. DOJ, 24 F. Supp. 2d 1, 10 (D.D.C. 1998).

In addition to the Agency's regulations, the District of Columbia Circuit has defined the meaning of a "representative of the news media."  For purposes of FOIA,

> [a] representative of the news media is, in essence, a person or entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience.

National Security Archive v. United States Dep't of Defense, 880 F.2d 1381, 1387 (D.C. Cir. 1989).

The sole issue in this case is whether CPI justified its request to be treated as a representative of the news media for FOIA fee purposes.  Because the administrative record demonstrates that CPI wholly failed to substantiate its request, summary judgment in Defendant's favor is warranted.

### A.    Plaintiff Failed to Establish that it Qualifies as a Representative of the News Media.

Upon review of the information Plaintiff provided in support of its request to be categorized as a representative of the news media, it is apparent that Plaintiff failed to justify its requests.

### 1.    Plaintiff's December 21, 2005 Requests.

In each of the five FOIA requests Plaintiff submitted on December 21, 2005, Plaintiff provided identical justifications for why it believed it was entitled to be characterized as a

"representative of the news media."  In particular, CPI stated that (1) it had previously been characterized as a "representative of the news media" by the Department of State and the Central Intelligence Agency; (2) the information would be posted in CPI's newsletter and on its website; (3) the information was "expect[ed]" to be used as "the basis for several press releases and articles that explain the actions and operations of government to the general public[ ]"; (4) information from the request would "also be distributed to the general public via major news organizations."  (Ex. A, at 2).  CPI also stated that it:

> possesses the skills necessary to process the requested information.
> We are investigative journalists.  We write and post an online newsletter.
> Other members of the media consider us to be [a] news organization . . . .

(Ex. A, at 2).

Upon a review of the information provided by Plaintiff in support of its fee waiver requests, Ms. Armstrong concluded that CPI had not met the criteria necessary to establish that it was a representative of the news media.  (Ex. B, at 1).  And rightly so because the record fails to reflect that Plaintiff is entitled to be characterized as a representative of the news media. Plaintiff relies upon the District of Columbia Circuit Court's decision in National Security Archive for its belief that it qualifies as a representative of the news media.  However, that case is clearly distinguishable.  In National Security Archive, the circuit court noted that the Archive had

> expressed a firm intention . . . to publish a number of what it refers to as 'document sets.'  Each of the documents sets it had planned at the time of the administrative proceedings will be devoted to a particular topic of current interest . . . . the Archive's intended distribution of document sets entails the kind of initiative we associate with 'publishing or otherwise disseminating' that information.

880 F.2d at 1386 (emphasis added).  Other members of this court have held that "a firm

intention" to publish "entails a detailed and clear publication plan which, for example, lists the

precise sources to be consulted, describes the manner in which the information will be organized

in the publication, and illustrates the editorial and organizational efforts to be provided by the

'representative of the news media.'" Judicial Watch, Inc. v. United States Dep't of Justice, No.

Civ.A. 99-2315, 2000 WL 33724963, at *4 (D.D.C. Aug. 17, 2000) (citing National Security

Archive, 880 F.2d at 1386).

    It is clear that in its December 21, 2005 requests, CPI did not provide information

establishing that it had a "firm intention" to publish the information it sought.  Rather, CPI

provided vague statements that it "expect[ed] the information produced through this and other

FOIA requests to serve as the basis for several press releases and articles that explain the actions

and operations of government to the general public."  (Ex. A, at 2).  Clearly these statements do

not equate to the "firm intention" to publish that the court held sufficient in National Security

Archive.  CPI did not indicate the precise sources it intended to consult; nor did it indicate when

the information would be published and in what precise form.  CPI's vague statements regarding

its intention to publish the information fail to establish its entitlement to characterization as a

representative of the news media.  See Judicial Watch, Inc., 2000 WL 33724693, at *4 (holding

that organization did not qualify as a representative of the news media where, "[r]ather than

provide a precise plan outlining its publication intentions, [it] simply expressed a broad intent to

publish works similar to the single previous report it described in its administrative appeals. . . .

Judicial Watch conveyed only an indefinite intention to publish future reports based on

'information gleaned from [FOIA] requests like the one at issue here,' but, apparently, not

12

necessarily from this particular request.").  Even when CPI was given a chance to supply

additional information about the so-called "distinct works" it was planning for the precise

records requested, CPI provided vague information that did not address the precise records at

issue.  CPI stated: "The Center plans to use the requested records in creating 'distinct works of a

character similar to the hundreds of reports it has created since its formation in 1989.  The Center

plans to distribute those 'distinct works' as it has distributed all its reports, by publication on its

Web site and/or in printed form (e.g., newsletter, pamphlet or book)."  (Ex. H).  These statements

do not establish a "firm intention" to publish the information at issue.

        Nor does the fact that CPI represented that the information would be "posted to" its

newsletter and website and would "be read by a large number of people[,]" id., render it a

representative of the news media.  "Merely making available information to the public does not

transform a requester into a representative of the news media."  Judicial Watch, Inc. v. United

States Dep't of Justice, 122 F. Supp. 2d 13, 20 (citing National Security Archive, 880 F.2d at

1386).  Rather, to qualify as a representative of the news media, a requester must establish that it

has "a firm intent to disseminate, rather than merely make available, the requested information."

Id.

        Finally, in its December 2005 requests, CPI referred to the fact that it had previously

been determined to be a representative of the news media by other federal agencies and that it

has received numerous journalistic awards from the Society of Professional Journalists and the

Investigative Reports and Editors Inc.  (Ex. A, at 1, 2).  However, CPI's "past record . . . is

simply irrelevant [because] [u]nder FOIA, the analysis focuses on the subject and impact of the

particular disclosure, not the record of the requesting party."  Judicial Watch, Inc., 2000 WL

33724693, at *5 (citing 5 U.S.C. § 552(a)(4)(A)(iii).  Thus, in determining whether CPI qualified

as a representative of the news media, the Agency was entitled to rely upon the information

provided by CPI in support of its request for news media status.

None of the bases alleged by CPI for treatment as a representative of the news media in

its December 21, 2005 requests were sufficient to entitle it to receive such treatment.

Accordingly, the Agency rightfully denied CPI's request for treatment as a representative of the

media.

### 2.      Plaintiff's February 16, 2006, request.

CPI did not provide much more justification for its request for treatment as a

representative of the news media in its February 14, 2006 FOIA request.  Once again, Plaintiff

stated that it had been granted such status by the Department of State and the Central Intelligence

Agency.  (Ex. D, at 1).  Plaintiff stated that:

> The Center for Public Integrity is a nonpartisan, nonprofit investigative
> reporting organization, based in Washington, D.C., whose mission is to
> examine and write about public service and ethics-related issues.  The
> International Consortium of Investigative Journalists was created in
> 1997 as a project of the Center for Public Integrity.  For more information
> on the Center for Public Integrity, ICIJ, and their online publication,
> please refer respectively to http://www.publicintegrity.org,
> http://www.icij.org, and http:www.public-i.org.

Id. at 2.  Plaintiff further pointed to prior stories it had written in the past; the fact that the

information would be posted to its newsletter and on its website; and that the information would

be distributed to major news organizations.  Id.

In denying Plaintiff's request for media status, the Agency relied upon CPI's statement

on its website that it is "a broker of information," in conjunction with CPI's statement that it

"represent[s] the news media . . . ."  to conclude that it was not personally a representative of the

14

news media.  (Ex. E, at 2).  In light of these statements, Ms. Christian concluded that "CPI is a secondary contributor, not a primary news-gathering organization."  See Judicial Watch, Inc., 185 F. Supp. 2d at 54, 59-60 (D.D.C. 2002) ("As the D.C. Circuit has made plain, when a party acts as a private library, information vendor or middleman, the party does not qualify as a 'representative of the news media' for purposes of the FOIA.") (citing National Security Archive, 880 F.2d at 1386-87).

      The Agency properly concluded that Plaintiff's statement that it "represent[s]" the news media did not support finding that Plaintiff itself is a representative of the news media.  Nor does the fact that Plaintiff will distribute the information "to the general public via major news organizations. . . ." support this finding.  Rather, these statements indicate that Plaintiff is a provider of information to news media and do not support a finding that Plaintiff had a firm intention to independently publish and disseminate the information.  See, e.g., Judicial Watch Inc., 185 F. Supp. 2d at 59-60 (holding that organization was "at best a type of middleman or vendor of information that representatives of the news media can utilize when appropriate . . . [and which] does not make Judicial Watch a representative of the news media or entitle it to be considered as such for the purposes of a fee waiver under the FOIA.").  Thus, the fact that CPI may provide information to the news media, who then make it available to the public, did not entitle CPI to news media status.  Rather, "[t]o be considered a representative of the news media, a requester must establish that it has 'a firm intent to disseminate, rather than merely make available, the requested information.'" Id. at 60 (citations omitted).  As stated supra, CPI failed to provide any concrete information about its intent to publish the information at issue.  Accordingly, the Agency was correct in determining that CPI was not a representative of the

15

news media.

## **CONCLUSION**

For the reasons set forth above, Defendant requests that summary judgment be entered in its favor and that Plaintiff's complaint be dismissed with prejudice.

Respectfully submitted,


    /s/ Jeffrey A. Taylor
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


    /s/ Rudolph Contreras
RUDOLPH CONTRERAS, D.C. BAR #  434122
Assistant United States Attorney


    /s/ Michelle N. Johnson
MICHELLE N. JOHNSON, D.C. BAR # 491910
Assistant United States Attorney
United States Attorney's Office
Civil Division
555 4th Street, N.W. – Room E4212
Washington, D.C. 20530
(202) 514-7139

COUNSEL FOR DEFENDANT


Of Counsel:

Patricia Mantoan
Attorney
Office of the General Counsel
General Law Division
Room 4760 Cohen Building
330 Independence Avenue, S.W.
Washington, DC 20201

16

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CENTER FOR PUBLIC INTEGRITY,      ) | |
|      ) | |
|      Plaintiff,      ) | Civil Action No.: 06-1818 (JDB) |
|      ) | |
| v.      ) | |
|      ) | |
| UNITED STATES DEPARTMENT OF      ) | |
| HEALTH & HUMAN SERVICES,      ) | |
|      ) | |
|      ) | |
|      Defendant.      ) | |
|      ) | |
|      ) | |

**[PROPOSED] ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This matter having come before the Court on Defendant's Motion for Summary

Judgment, Plaintiffs' Opposition, if any, and Defendant's Reply, if any, it is hereby

**ORDERED** that Defendant's Motion for Summary Judgment is hereby **GRANTED**. It

is further

**ORDERED** that Plaintiff's Complaint is dismissed in its entirety with prejudice.

**SO ORDERED** on this ___ day of _____, 2007.


_____
UNITED STATES DISTRICT JUDGE

# EXHIBIT A

Attn: FOIA Request

**Armstrong, Lynn**

| | |
|---|---|
| From: | Bogardus, Kevin [kbogardus@publicintegrity.org] |
| Sent: | Wednesday, December 21, 2005 12:08 PM |
| To: | Armstrong, Lynn |
| Subject: | Attn: FOIA Request |

This e-mail is an official Freedom of Information Act request from the Center for Public Integrity. The request follows in the text of this e-mail and in the attached Microsoft Word document.

<<ATSDR Correspondence.doc>>

December 21, 2005

Lynn Armstrong
FOIA Officer
FOI Office, MS-D54
CDC/ATSDR
1600 Clifton Road, N.E.
Atlanta, GA 30333

Dear Ms. Armstrong:

This is a request under the Federal Freedom of Information Act (FOIA), the First Amendment to the United States Constitution, the common law of the United States, the Privacy Act (5 U.S.C.) section 552a, and any statue providing for public access to government information:

I request that I be sent copies of the following documents or, if there is a large number, be permitted to inspect the following documents:

A copy of any and all log(s) of correspondences that include letters from members of Congress and the general public from January 1, 2000 through December 31, 2005 to the Agency for Toxic Substances and Disease Registry. If these logs or records exist electronically, please make us a copy of the data instead of paper copies.

If possible, I would prefer to receive the largest number of records or documents in electronic form.

I am filing this FOIA request as a "representative of the news media," which both the Department of State and the Central Intelligence Agency have granted members of my organization in previous FOIA searches of their archives. This designation entitles me to a waiver of fees accumulated during the actual search and review process. However, if your agency does determine that I should be charged for any part of this request, please contact me before any searches reach an estimate cost of $25.

The Center for Public Integrity is a nonpartisan, nonprofit investigative reporting organization, based in Washington, D.C., whose mission is to examine and write about public service and ethics-related issues. The International Consortium of Investigative Journalists was created in 1997 as a project of the Center for Public Integrity. For more information on the Center for Public Integrity, ICIJ, and their online publication, please refer, respectively, to http://www.publicintegrity.org, http://www.icij.org, and http://www.public-i.org.

12/21/2005

A Request

reference to our request I have provided the following information addressing the points listed in the Department of Justice's FOIA Guide, 2002 Edition: Fees and Fee Waivers, as found online at http://www.usdoj.gov/oip/fees.htm

1. The content from these contracts "is likely to contribute" to the understanding of your agency to the common reader. Our research would not be possible without the specific content garnered by the release of the requested information. Prior to any action on this FOIA request, this information is not in the public domain.

2. Due to the nature of our organization, the Center for Public Integrity, the disclosure under our FOIA request will "contribute to the understanding of the public at large." The information will be posted to our newsletter, *The Public i* and on our website, www.publicintegrity.org, and will be read by a large number of people. We expect the information produced through this and other FOIA requests to serve as the basis for several press releases and articles that explain the actions and operations of government to the general public. Similar stories we have written in the past have increased the understanding of an issue by a large percentages of the public. For example, our organization posted the first stories about the "Lincoln Bedroom" scandal under the Clinton administration, and now the general public knows that campaign contributors to the Democratic Party were allowed to stay at the White House. Other stories, including the Center's exclusive release of Securities and Exchange Commission Records pertaining to President Bush's sale of Harken stock and Vice President Cheney's connections to the Halliburton Corporation have similarly informed the public.

3. In addition to publishing the information on our website, relevant information from this FOIA request will also be distributed to the general public via major news organizations. Among the news organizations that referred to our reports during a recent time period are: CBS, NBC, CNN, NPR, U.S. News & World Report, AP, AFP, Reuters, Knight Ridder, Cox News, New York Times, Washington Post, Los Angeles Times, USA Today, Dallas Morning News, Houston Chronicle, Austin American Statesman, Chicago Tribune, Philadelphia Inquirer, Christian Science Monitor, Atlanta Journal & Constitution, San Francisco Chronicle and the Seattle Times. International newspapers such as The Gazette (Montreal), Daily Telegraph (London), The Guardian, Irish Times, Scotland on Sunday and Hong Kong Mail have also cited the Center reports during a recent time period. We expect that information provided through this FOIA request will similarly result in reporting featured by such national and global news organizations.

The Center for Public Integrity also possesses the skills necessary to process the requested information. We are investigative journalists. We write and post an online newsletter. Other members of the media consider us to be news organization as evidenced by our numerous awards over the years from the Society of Professional Journalists and the Investigative Reporters and Editors Inc. Additionally, many federal agencies have deemed the Center for Public Integrity to be news media for FOIA requests.

i. The disclosures we requested through the Freedom of Information Act do not primarily serve any "commercial interest." Any data derived from our request will be used primarily to educate the public and will be distributed freely. As described in section (3), we represent the news media and plan to distribute this information to the public.

. In reference to any "commercial interest," we do not have any. Almost all of our money comes from grants and donations. The Center for Public Integrity is a non-profit. Almost all of the publications by the Center are made available without charge.

As I am sure you are aware, the Freedom of Information Act, under 32 C.F.R. 806, requires that if part of a record is exempt from disclosure, you must redact and release all segregated parts. Please describe the deleted material in detail and specify the reasons for believing that the alleged statutory justification applies in this instance.

look forward to your decision on our expedited review request within five days, and on granting or denying our request within 20 days as outlined by the statute. Do contact me by telephone or e-mail if you have any questions regarding this request or recommendations on how to streamline or revise it. If my request is denied in whole or in part,

2/21/2005

A Request

...se specify which exemption(s) is (are) claimed for each passage or whole document denied. In addition, please give ...e number of pages in each document and the total number of pages pertaining to this request and the dates of the documents withheld. Please provide copies of any logs, internal tracking numbers or other file-tracking device or system of documents in existence but denied disclosure. Such statements will be helpful in deciding whether to appeal an adverse determination.

I appreciate your attention to this and expect, as the FOIA provides, to hear from your office within 20 days. If you have any questions about the nature or scope of this request, please call me at: 202-481-1203.

Sincerely,

Kevin Bogardus
Reporter
Center for Public Integrity
910 17th Street, NW, 7th Floor
Washington, DC 20006
202-481-1203
kbogardus@publicintegrity.org

2/21/2005

Attn: FOIA Request                                    OG-0226   Page 1 of 3
                                                      12/22 - 1/13
                                                      NCEH/
                                                      ATS DR

## Armstrong, Lynn

From:     Bogardus, Kevin [kbogardus@publicintegrity.org]
Sent:     Wednesday, December 21, 2005 12:11 PM
To:       Armstrong, Lynn
Subject:  Attn: FOIA Request

This e-mail is an official Freedom of Information Act request from the Center for Public Integrity. The request follows in the text of this e-mail and in the attached Microsoft Word document.

<<ATSDR-DOD Correspondence.doc>>


                                    December 21, 2005


Lynn Armstrong
FOIA Officer
FOI Office, MS-D54
CDC/ATSDR
1600 Clifton Road, N.E.
Atlanta, GA 30333

Dear Ms. Armstrong:

This is a request under the Federal Freedom of Information Act (FOIA), the First Amendment to the United States Constitution, the common law of the United States, the Privacy Act (5 U.S.C.) section 552a, and any statue providing for public access to government information:

I request that I be sent copies of the following documents or, if there is a large number, be permitted to inspect the following documents:

A copy of any and all log(s) of correspondences that include the Department of Defense from January 1, 2000 through December 20, 2005 to the Agency for Toxic Substances and Disease Registry. If these logs or records exist electronically, please make us a copy of the data instead of paper copies.

If possible, I would prefer to receive the largest number of records or documents in electronic form.

I am filing this FOIA request as a "representative of the news media," which both the Department of State and the Central Intelligence Agency have granted members of my organization in previous FOIA searches of their archives. This designation entitles me to a waiver of fees accumulated during the actual search and review process. However, if your agency does determine that I should be charged for any part of this request, please contact me before any searches reach an estimate cost of $25.00.

The Center for Public Integrity is a nonpartisan, nonprofit investigative-reporting organization, based in Washington, D.C., whose mission is to examine and write about public-service and ethics-related issues. The International Consortium of Investigative Journalists was created in 1997 as a project of the Center for Public Integrity. For more information on the Center for Public Integrity, ICIJ, and their online publication, please refer, respectively, to http://www.publicintegrity.org, http://www.icij.org, and http://www.public-i.org.


12/21/2005

Attn: FOIA Request                                                                    Page 2 of 3

In reference to our request I have provided the following information addressing the points listed in the Department of Justice's FOIA Guide, 2002 Edition: Fees and Fee Waivers, as found online at http://www.usdoj.gov/oip/fees.htm

1. The content from these contracts "is likely to contribute" to the understanding of your agency to the common reader. Our research would not be possible without the specific content garnered by the release of the requested information. Prior to any action on this FOIA request, this information is not in the public domain.

2. Due to the nature of our organization, the Center for Public Integrity, the disclosure under our FOIA request will "contribute to the understanding of the public at large." The information will be posted to our newsletter, The Public i and on our website, www.publicintegrity.org, and will be read by a large number of people. We expect the information produced through this and other FOIA requests to serve as the basis for several press releases and articles that explain the actions and operations of government to the general public. Similar stories we have written in the past have increased the understanding of an issue by a large percentages of the public. For example, our organization penned the first stories about the "Lincoln Bedroom" scandal under the Clinton administration; and now the general public knows that campaign contributors to the Democratic Party were allowed to stay at the White House. Other stories, including the Center's exclusive release of Securities and Exchange Commission Records pertaining to President Bush's sale of Harken stock and Vice President Cheney's connections to the Halliburton Corporation have similarly informed the public.

3. In addition to publishing the information on our website, relevant information from this FOIA request will also be distributed to the general public via major news organizations. Among the news organizations that referred to our reports during a recent time period are: CBS, NBC, CNN, NPR, U.S. News & World Report, AP, AFP, Reuters, Knight Ridder, Cox News, New York Times, Washington Post, Los Angeles Times, USA Today, Dallas Morning News, Houston Chronicle, Austin American Statesman, Chicago Tribune, Philadelphia Inquirer, Christian Science Monitor, Atlanta Journal & Constitution, San Francisco Chronicle and the Seattle Times; International newspapers such as The Gazette (Montreal), Daily Telegraph (London), The Guardian, Irish Times, Scotland on Sunday and Hong Kong Mail have also cited the Center reports during a recent time period. We expect that information provided through this FOIA request will similarly result in reporting featured by such national and global news organizations.

The Center for Public Integrity also possesses the skills necessary to process the requested information. We are investigative journalists. We write and post an online newsletter. Other members of the media consider us to be news organization as evidenced by our numerous awards over the years from the Society of Professional Journalists and the Investigative Reporters and Editors Inc. Additionally, many federal agencies have deemed the Center for Public Integrity to be news media for FOIA requests.

4. The disclosures we requested through the Freedom of Information Act do not primarily serve any "commercial interest." Any data derived from our request will be used primarily to educate the public and will be distributed freely. As described in section (3), we represent the news media and plan to distribute this information to the public.

5. In reference to any "commercial interest," we do not have any. Almost all of our money comes from grants and donations. The Center for Public Integrity is a non-profit. Almost all of the publications by the Center are made available without charge.

As I am sure you are aware, the Freedom of Information Act, under 32 C.F.R. 806, requires that if part of a record is exempt from disclosure, you must redact and release all segregated parts. Please describe the deleted material in detail and specify the reasons for believing that the alleged statutory justification applies in this instance.

I look forward to your decision on our expedited review request within five days; and on granting or denying our request within 20 days as outlined by the statute. Do contact me by telephone or e-mail if you have any questions regarding this request or recommendations on how to streamline or revise it. If my request is denied in whole or in part,

12/21/2005

Attn: FOIA Request                                                          Page 3 of 3

please specify which exemption(s) is (are) claimed for each passage or whole document denied. In addition, please give
the number of pages in each document and the total number of pages pertaining to this request and the dates of the
documents withheld. Please provide copies of any logs, internal tracking numbers or other file-tracking device or
system of documents in existence but denied disclosure. Such statements will be helpful in deciding whether to appeal
an adverse determination.

I appreciate your attention to this and expect, as the FOIA provides, to hear from your office within 20 days. If you
have any questions about the nature or scope of this request, please call me at: 202-481-1203.

Sincerely,

Kevin Bogardus
Reporter
Center for Public Integrity
910 17th Street, NW, 7th Floor
Washington, DC 20006
202-481-1203
kbogardus@publicintegrity.org

12/21/2005

Attn: FOIA Request                                                                                    Page 1 of 3

06-029
12/22-1/13
NCEH/
ATSDR

**Armstrong, Lynn**

From:      Bogardus, Kevin (kbogardus@publicintegrity.org)
Sent:      Wednesday, December 21, 2005 12:06 PM
To:        Armstrong, Lynn
Subject:   Attn: FOIA Request

This e-mail is an official Freedom of Information Act request from the Center for Public Integrity. The request follows in the text of this e-mail and in the attached Microsoft Word document.

<<ATSDR Trips.doc>>

December 21, 2005

Lynn Armstrong
FOIA Officer
FOI Office, MS-D54
CDC/ATSDR
1600 Clifton Road, N.E.
Atlanta, GA 30333

Dear Ms. Armstrong:

This is a request under the Federal Freedom of Information Act (FOIA), the First Amendment to the United States Constitution, the common law of the United States, the Privacy Act (5 U.S.C.) section 552a, and any statue providing for public access to government information:

I request that I be sent copies of the following documents or, if there is a large number, be permitted to inspect the following documents:

**A copy of electronic data or paper records detailing non-governmental sponsored trips disclosed as "Semiannual Reports of Payment Accepted from Non-Federal Sources Under 31 U.S.C." for the Agency for Toxic Substances and Disease Registry, starting from January 1, 1998 to December 31, 2005.**

If possible, I would prefer to receive the largest number of records or documents in electronic form.

I am filing this FOIA request as a "representative of the news media," which both the Department of State and the Central Intelligence Agency have granted members of my organization in previous FOIA searches of their archives. This designation entitles me to a waiver of fees accumulated during the actual search and review process. However, if your agency does determine that I should be charged for any part of this request, please contact me before any searches reach an estimate cost of $25.

The Center for Public Integrity is a nonpartisan, nonprofit investigative reporting organization, based in Washington, D.C., whose mission is to examine and write about public service and ethics-related issues. The International Consortium of Investigative Journalists was created in 1997 as a project of the Center for Public Integrity. For more information on the Center for Public Integrity, ICIJ, and their online publication, please refer, respectively, to http://www.publicintegrity.org, http://www.icij.org, and http://www.public-i.org.

12/21/2005

Attn: FOIA Request                                                    Page 2 of 3

In reference to our request I have provided the following information addressing the points listed in the Department of Justice's FOIA Guide, 2002 Edition: Fees and Fee Waivers, as found online at http://www.usdoj.gov/oip/fees.htm.

1. The content from these contracts "is likely to contribute" to the understanding of your agency to the common reader. Our research would not be possible without the specific content garnered by the release of the requested information. Prior to any action on this FOIA request, this information is not in the public domain.

2. Due to the nature of our organization, the Center for Public Integrity, the disclosure under our FOIA request will "contribute to the understanding of the public at large." The information will be posted to our newsletter, *The Public i* and on our website, www.publicintegrity.org, and will be read by a large number of people. We expect the information produced through this and other FOIA requests to serve as the basis for several press releases and articles that explain the actions and operations of government to the general public. Similar stories we have written in the past have increased the understanding of an issue by a large percentages of the public. For example, our organization posted the first stories about the "Lincoln Bedroom" scandal under the Clinton administration, and now the general public knows that campaign contributors to the Democratic Party were allowed to stay at the White House. Other stories, including the Center's exclusive release of Securities and Exchange Commission Records pertaining to President Bush's sale of Harken stock and Vice President Cheney's connections to the Halliburton Corporation have similarly informed the public.

3. In addition to publishing the information on our website, relevant information from this FOIA request will also be distributed to the general public via major news organizations. Among the news organizations that referred to our reports during a recent time period are: CBS, NBC, CNN, NPR, U.S. News & World Report, AP, AFP, Reuters, Knight Ridder, Cox News, New York Times, Washington Post, Los Angeles Times, USA Today, Dallas Morning News, Houston Chronicle, Austin American Statesman, Chicago Tribune, Philadelphia Inquirer, Christian Science Monitor, Atlanta Journal & Constitution, San Francisco Chronicle and the Seattle Times. International newspapers such as The Gazette (Montreal), Daily Telegraph (London), The Guardian, Irish Times, Scotland on Sunday and Hong Kong Mail have also cited the Center reports during a recent time period. We expect that information provided through this FOIA request will similarly result in reporting featured by such national and global news organizations.

The Center for Public Integrity also possesses the skills necessary to process the requested information. We are investigative journalists. We write and post an online newsletter. Other members of the media consider us to be news organization as evidenced by our numerous awards over the years from the Society of Professional Journalists and the Investigative Reporters and Editors Inc. Additionally, many federal agencies have deemed the Center for Public Integrity to be news media for FOIA requests.

4. The disclosures we requested through the Freedom of Information Act do not primarily serve any "commercial interest." Any data derived from our request will be used primarily to educate the public and will be distributed freely. As described in section (3), we represent the news media and plan to distribute this information to the public.

5. In reference to any "commercial interest," we do not have any. Almost all of our money comes from grants and donations. The Center for Public Integrity is a non-profit. Almost all of the publications by the Center are made available without charge.

As I am sure you are aware, the Freedom of Information Act, under 32 C.F.R. 806, requires that if part of a record is exempt from disclosure, you must redact and release all segregated parts. Please describe the deleted material in detail and specify the reasons for believing that the alleged statutory justification applies in this instance.

I look forward to your decision on our expedited review request within five days, and on granting or denying our request within 20 days as outlined by the statute. Do contact me by telephone or e-mail if you have any questions regarding this request or recommendations on how to streamline or revise it. If my request is denied in whole or in part,

12/21/2005

Attn: FOIA Request                                              Page 3 of 3

please specify which exemption(s) is (are) claimed for each passage or whole document denied. In addition, please give the number of pages in each document and the total number of pages pertaining to this request and the dates of the documents withheld. Please provide copies of any logs, internal tracking numbers or other file-tracking device or system of documents in existence but denied disclosure. Such statements will be helpful in deciding whether to appeal an adverse determination.

I appreciate your attention to this and expect, as the FOIA provides, to hear from your office within 20 days. If you have any questions about the nature or scope of this request, please call me at: 202-481-1203.

Sincerely,


Kevin Bogardus
Reporter
Center for Public Integrity
910 17th Street, NW, 7th Floor
Washington, DC 20006
202-481-1203
kbogardus@publicintegrity.org

12/21/2005

Attn: FOIA Request                                                        Page 1 of 3

                                                          06-0222
                                                          12/23 - 1/13
Armstrong, Lynn                                           NCE#/
                                                                 ATSDR

**From:**     Bogardus, Kevin [kbogardus@publicintegrity.org]
**Sent:**     Wednesday, December 21, 2005 12:14 PM
**To:**       Armstrong, Lynn
**Subject:**  Attn: FOIA Request

This e-mail is an official Freedom of Information Act request from the Center for Public Integrity. The request follows in the text of this e-mail and in the attached Microsoft Word document.

<<ASTDR-EPA Correspondence.doc>>


                                December 21, 2005


Lynn Armstrong
FOIA Officer
FOI Office, MS-D54
CDC/ATSDR
1600 Clifton Road, N.E.
Atlanta, GA 30333

Dear Ms. Armstrong:

This is a request under the Federal Freedom of Information Act (FOIA), the First Amendment to the United States Constitution, the common law of the United States, the Privacy Act (5 U.S.C.) section 552a, and any statue providing for public access to government information:

I request that I be sent copies of the following documents or, if there is a large number, be permitted to inspect the following documents:

A copy of any and all log(s) of correspondences that include letters from the Environmental Protection Agency from January 1, 2000 through December 31, 2005 to the Agency for Toxic Substances and Disease Registry. If these logs or records exist electronically, please make us a copy of the data instead of paper copies.

If possible, I would prefer to receive the largest number of records or documents in electronic form.

I am filing this FOIA request as a "representative of the news media," which both the Department of State and the Central Intelligence Agency have granted members of my organization in previous FOIA searches of their archives. This designation entitles me to a waiver of fees accumulated during the actual search and review process. However, if your agency does determine that I should be charged for any part of this request, please contact me before any searches reach an estimate cost of $25.

The Center for Public Integrity is a nonpartisan, nonprofit investigative reporting organization, based in Washington, D.C., whose mission is to examine and write about public service and ethics-related issues. The International Consortium of Investigative Journalists was created in 1997 as a project of the Center for Public Integrity. For more information on the Center for Public Integrity, ICIJ, and their online publication, please refer, respectively, to http://www.publicintegrity.org, http://www.icij.org, and http://www.public-i.org.


12/21/2005

Attn: FOIA Request                                                                Page 2 of 3

In reference to our request I have provided the following information addressing the points listed in the Department of Justice's FOIA Guide, 2002 Edition: Fees and Fee Waivers, as found online at http://www.usdoj.gov/oip/fees.htm.

1. The content from these contracts "is likely to contribute" to the understanding of your agency to the common reader. Our research would not be possible without the specific content garnered by the release of the requested information. Prior to any action on this FOIA request, this information is not in the public domain.

2. Due to the nature of our organization, the Center for Public Integrity, the disclosure under our FOIA request will "contribute to the understanding of the public at large." The information will be posted to our newsletter, The Public i and on our website, www.publicintegrity.org, and will be read by a large number of people. We expect the information produced through this and other FOIA requests to serve as the basis for several press releases and articles that explain the actions and operations of government to the general public. Similar stories we have written in the past have increased the understanding of an issue by a large percentages of the public. For example, our organization posted the first stories about the "Lincoln Bedroom" scandal under the Clinton administration, and now the general public knows that campaign contributions to the Democratic Party were allowed to stay at the White House. Other stories, including the Center's exclusive release of Securities and Exchange Commission Records pertaining to President Bush's sale of Harken stock and Vice President Cheney's connections to the Halliburton Corporation have similarly informed the public.

3. In addition to publishing the information on our website, relevant information from this FOIA request will also be distributed to the general public via major news organizations. Among the news organizations that referred to our reports during a recent time period are: CBS, NBC, CNN, NPR, U.S. News & World Report, AP, AFP, Reuters, Knight Ridder, Cox News, New York Times, Washington Post, Los Angeles Times, USA Today, Dallas Morning News, Houston Chronicle, Austin American Statesman, Chicago Tribune, Philadelphia Inquirer, Christian Science Monitor, Atlanta Journal & Constitution, San Francisco Chronicle and the Seattle Times. International newspapers such as The Gazette (Montreal), Daily Telegraph (London), The Guardian, Irish Times, Scotland on Sunday and Hong Kong Mail have also cited the Center reports during a recent time period. We expect that information provided through this FOIA request will similarly result in reporting featured by such national and global news organizations.

The Center for Public Integrity also possesses the skills necessary to process the requested information. We are investigative journalists. We write and post an online newsletter. Other members of the media consider us to be news organization as evidenced by our numerous awards over the years from the Society of Professional Journalists and the Investigative Reporters and Editors Inc. Additionally, many federal agencies have deemed the Center for Public Integrity to be news media for FOIA requests.

4. The disclosures we requested through the Freedom of Information Act do not primarily serve any "commercial interest." Any data derived from our request will be used primarily to educate the public and will be distributed freely. As described in section (3), we represent the news media and plan to distribute this information to the public.

5. In reference to any "commercial interest," we do not have any. Almost all of our money comes from grants and donations. The Center for Public Integrity is a non-profit. Almost all of the publications by the Center are made available without charge.

As I am sure you are aware, the Freedom of Information Act, under 32 C.F. R. 806, requires that if part of a record is exempt from disclosure, you must redact and release all segregable parts. Please describe the deleted material in detail and specify the reasons for believing that the alleged statutory justification applies in this instance.

I look forward to your decision on our expedited review request within five days, and on granting or denying our request within 20 days as outlined by the statute. Do contact me by telephone or e-mail if you have any questions regarding this request or recommendations on how to streamline or revise it. If my request is denied in whole or in part,

12/21/2005

Attn: FOIA Request                                                    Page 3 of 3

please specify which exemption(s) is (are) claimed for each passage or whole document denied. In addition, please give
the number of pages in each document and the total number of pages pertaining to this request and the dates of the
documents withheld. Please provide copies of any logs, internal tracking numbers or other file-tracking device or
system of documents in existence but denied disclosure. Such statements will be helpful in deciding whether to appeal
an adverse determination.

I appreciate your attention to this and expect, as the FOIA provides, to hear from your office within 20 days. If you
have any questions about the nature or scope of this request, please call me at 202-481-1203.

Sincerely,


Kevin Bogardus
Reporter
Center for Public Integrity
910 17th Street, NW, 7th Floor
Washington, DC 20006
202-481-1203
kbogardus@publicintegrity.org


12/21/2005

Attn: FOIA Request

## Armstrong, Lynn

| | |
|---|---|
| From: | Bogardus, Kevin [kbogardus@publicintegrity.org] |
| Sent: | Wednesday, December 21, 2005 12:10 PM |
| To: | Armstrong, Lynn |
| Subject: | Attn: FOIA Request |

This e-mail is an official Freedom of Information Act request from the Center for Public Integrity. The request follows in the text of this e-mail and in the attached Microsoft Word document.

<<ATSDR-CEQ Correspondence.doc>>

December 21, 2005

Lynn Armstrong
FOIA Officer
FOI Office, MS-D54
CDC/ATSDR
1600 Clifton Road, N.E.
Atlanta, GA 30333

Dear Ms. Armstrong:

This is a request under the Federal Freedom of Information Act (FOIA), the First Amendment to the United States Constitution, the common law of the United States, the Privacy Act (5 U.S.C.) section 552a, and any statue providing for public access to government information.

I request that I be sent copies of the following documents or, if there is a large number, be permitted to inspect the following documents:

A copy of any and all log(s) of correspondences that include letters from the White House Council on Environmental Quality from January 1, 2000 through December 31, 2005 to the Agency for Toxic Substances and Disease Registry. If these logs or records exist electronically, please make us a copy of the data instead of paper copies.

If possible, I would prefer to receive the largest number of records or documents in electronic form.

I am filing this FOIA request as a representative of the news media, which both the Department of State and the Central Intelligence Agency have granted members of my organization in previous FOIA searches of their archives. This designation entitles me to a waiver of fees accumulated during the actual search and review process. However, if your agency does determine that I should be charged for any part of this request, please contact me before any searches reach an estimated cost of $25.

The Center for Public Integrity is a nonpartisan, nonprofit investigative reporting organization, based in Washington, D.C., whose mission is to examine and write about public service and ethics-related issues. The International Consortium of Investigative Journalists was created in 1997 as a project of the Center for Public Integrity. For more information on the Center for Public Integrity, ICIJ, and their online publication, please refer, respectively, to

12/21/2005

http://www.publicintegrity.org, http://www.icij.org, and http://www.public-i.org.

In reference to our request I have provided the following information addressing the points listed in the Department of Justice's FOIA Guide, 2002 Edition: Fees and Fee Waivers, as found online at http://www.usdoj.gov/oip/foia.htm.

1. The content from these contracts "is likely to contribute" to the understanding of your agency to the common reader. Our research would not be possible without the specific content garnered by the release of the requested information. Prior to any action on this FOIA request, this information is not in the public domain.

2. Due to the nature of our organization, the Center for Public Integrity, the disclosure under our FOIA request will "contribute to the understanding of the public at large." The information will be posted to our newsletter, The Public I and on our website, www.publicintegrity.org, and will be read by a large number of people. We expect the information produced through this and other FOIA requests to serve as the basis for several press releases and articles that explain the actions and operations of government to the general public. Similar stories we have written in the past have increased the understanding of an issue by a large percentages of the public. For example, our organization posted the first stories about the "Lincoln Bedroom" scandal under the Clinton administration, and now the general public knows that campaign contributors to the Democratic Party were allowed to stay at the White House. Other stories, including the Center's exclusive release of Securities and Exchange Commission Records pertaining to President Bush's sale of Harken stock and Vice President Cheney's connections to the Halliburton Corporation have similarly informed the public.

3. In addition to publishing the information on our website, relevant information from this FOIA request will also be distributed to the general public via major news organizations. Among the news organizations that referred to our reports during a recent time period are: CBS, NBC, CNN, NPR, U.S. News & World Report, AP, AFP, Reuters, Knight Ridder, Cox News, New York Times, Washington Post, Los Angeles Times, USA Today, Dallas Morning News, Houston Chronicle, Austin American Statesman, Chicago Tribune, Philadelphia Inquirer, Christian Science Monitor, Atlanta Journal & Constitution, San Francisco Chronicle and the Seattle Times. International newspapers such as The Gazette (Montreal), Daily Telegraph (London), The Guardian, Irish Times, Scotland on Sunday and Hong Kong Mail have also cited the Center reports during a recent time period. We expect that information provided through this FOIA request will similarly result in reporting featured by such national and global news organizations.

The Center for Public Integrity also possesses the skills necessary to process the requested information. We are investigative journalists. We write and post an online newsletter. Other members of the media consider us to be news organization as evidenced by our numerous awards over the years from the Society of Professional Journalists and the Investigative Reporters and Editors Inc. Additionally, many federal agencies have deemed the Center for Public Integrity to be news media for FOIA requests.

4. The disclosures we requested through the Freedom of Information Act do not primarily serve any "commercial interest." Any data derived from our request will be used primarily to educate the public and will be distributed freely. As described in section (3), we represent the news media and plan to distribute this information to the public.

5. In reference to any "commercial interest," we do not have any. Almost all of our money comes from grants and donations. The Center for Public Integrity is a non-profit. Almost all of the publications by the Center are made available without charge.

As I am sure you are aware, the Freedom of Information Act, under 32 C.F.R. 806, requires that if part of a record is exempt from disclosure, you must redact and release all segregated parts. Please describe the deleted material in detail and specify the reasons for believing that the alleged statutory justification applies in this instance.

I look forward to your decision on our expedited review request within five days, and on granting or denying our

12/21/2005

request within 20 days as outlined by the statute. Do contact me by telephone or e-mail if you have any questions regarding this request or recommendations on how to streamline or revise it. If my request is denied in whole or in part, please specify which exemption(s) is (are) claimed for each passage or whole document denied. In addition, please give the number of pages in each document and the total number of pages pertaining to this request and the dates of the documents withheld. Please provide copies of any logs, internal tracking numbers or other file-tracking devices or system of documents in existence but denied disclosure. Such statements will be helpful in deciding whether to appeal an adverse determination.

I appreciate your attention to this and expect, as the FOIA provides, to hear from your office within 20 days. If you have any questions about the nature or scope of this request, please call me at: 202-481-1203.

Sincerely,

Kevin Bogardus
Reporter
Center for Public Integrity
910 17th Street, NW, 7th Floor
Washington, DC 20006
202-481-1203
kbogardus@publicintegrity.org

12/21/2005

# EXHIBIT B

Fax sent by : 2026192922                OGC.GLD                12-14-06 10:54        Pg: 24/31
12/12/2006  11:27  3014430925    Document 8-3  PHS FOIA  Filed 01/10/2007  Page 2 of 3  PAGE 09/10
Case 1:06-cv-00191-JDB  From: Center for Public Integrity  To: 3014430925  Page: 6/7  Date: 10/18/2006 3:01:45 PM



**DEPARTMENT OF HEALTH & HUMAN SERVICES**

Public Health Service

Centers for Disease Control
and Prevention
October 5, 2006

Kevin Bogardus
Reporter
Center for Public Integrity
910 17th Street, N.W., 7th Floor
Washington, DC 20006

Dear Mr. Bogardus:

This letter is another interim response to your Freedom of Information Act (FOIA) requests of December 21.

We have carefully considered your request for a fee waiver but do not believe you meet the criteria as set forth in the Department of Justice FOIA Reference Guide, or the Department's implementing regulations at 45 CFR Part 5.45, therefore, we are denying your request.

You have the right to appeal this decision. Should you wish to do so, send your appeal, within 30 days from the date you receive this letter, to the Deputy Assistant Secretary for Public Affairs (Media), U.S. Department of Health and Human Services, Room 17A-46, 5600 Fishers Lane, Rockville, Maryland 20857. Please mark both your appeal letter and envelope "FOIA Appeal."

As stated in our January 6 correspondence to you, we are aggregating your requests numbered 06-0219 through 06-0223. Program officials stated that the estimated cost to process your requests is $6,898.00 (see enclosed invoice). In accordance with the Department's implementing regulations, 45 CFR Part 5, all charges over $5.00 must be paid in advance. Mailing instructions are on the invoice; incorrectly addressed payments will delay processing. Upon receipt of your check, we will complete processing your request.

If we do not hear from you within thirty days, we will assume you are no longer interested in receiving these records and will consider your requests withdrawn.

Sincerely yours,

*Nelda Robinson*

Lynn Armstrong
for  CDC/ATSDR FOIA Officer
Office of the Chief of Staff
(404) 639-7270
Fax: (404) 639-7395

Enclosure

Fax sent by : 2026192922          OGC.GLD                    12-14-06 10:54     Pg: 25/31
12/12/2006 Case 1:06-cv-30140992DB     Document 8-3HS Filed 01/10/2007     Page 3 of 3 PAGE 10/10
From: Center for Public Integrity     To: 3014430925     Page: 7/7     Date: 10/18/2006 3:01:48 PM

| Case No.: 06-0219,0220,0221,0222,0223 | Invoice of Fees for Freedom of Information Act Services | CDC |
|---|---|---|
| Date of Invoice: 10/05/2006 | | DEPARTMENT OF HEALTH & Human Services |

Requesters Name, Organization, and Address:

Kevin Bogardus
Reporter
Center for Public Integrity
910 17th Street, N.W., 7th Floor
Washington, DC 20006

Instructions:
1. Please write the case number shown at the top of this form on your check or money order.
2. Make your check or money order payable to: United States, Department of Treasury
3. Return one copy of this form with your remittance.
4. Mail to: Centers for Disease Control and Prevention FOIA Office 1600 Clifton Rd., NE, MS D54 Atlanta, GA, 30333
5. Payment is due within 30 days from the date of this invoice. Interest will be charged after this date.

Category: ☐ I   ☐ II   ☑ III

| Service | | No. of Items or Hours | Price per Item or Hour | Subtotal | Allowance (if applicable) | Total |
|---|---|---|---|---|---|---|
| Reproduction | Standard Pages (8 1/2 x 11) or (8 1/2 x 14) | | $ .10/page | | 100 Free Pages | |
| | Other Reproduction | | | | | |
| Search Costs | Rate 1 (GS 1-8) | | $20.00/hr. | | | |
| | Rate 2 (GS 9-14) | 129.25 | $40.00/hr. | $5,170.00 | | $5,170.00 |
| | Rate 3 (GS 15 & above) | 24.00 | $72.00/hr. | $1,728.00 | | $1,728.00 |
| Review Costs | Rate 1 (GS 1-8) | | $20.00/hr. | | | |
| | Rate 2 (GS 9-14) | | $40.00/hr. | | | |
| | Rate 3 (GS 15 & above) | | $72.00/hr. | | | |
| Computer Costs | Machine Time, Materials | | | | | |
| | Operator's Time or Search Time — Rate 1 | | $20.00/hr. | | | |
| | Rate 2 | | $40.00/hr. | | | |
| | Rate 3 | | $72.00/hr. | | | |
| Certification | | | $10.00/ea. | | | |
| Special Mailing Charges | | | | | | |

| | Pay Total of ⟶ | $6,898.00 |
|---|---|---|
| Person Preparing Invoice: | Phone No. (404) 639-7270 | |

Notes:

"**This is only an estimate the actual cost may vary**"

CDC 0.1227 (E), Rev. 5/2003, CDC Adobe Acrobat 5.0 Electronic Version, 5/2003

# EXHIBIT C

2K7-A-008

# THE CENTER FOR PUBLIC INTEGRITY

October 18, 2006

RECEIVED BY
PHSFOI OFFICE
2006 OCT 18  PM 3:19

**By First-Class Mail and Fax to 301-443-0925**
Deputy Assistant Secretary for Public Affairs (Media)
U.S. Department of Health and Human Services
Room 17A-46
5600 Fishers Lane
Rockville, MD 20857

Re:    FOIA Appeal
        Case Nos. 06-0219, 0220, 0221, 0222, 0223

Dear Madam:

I am an attorney and represent the requester, the Center for Public Integrity, in this matter.

By this letter, the Center appeals the decision of CDC/ATSDR FOIA Officer Lynn Armstrong (copy enclosed). The Center is entitled to fee classification as a representative of the media.

The Court of Appeals for the D.C. Circuit has held that, for purposes of FOIA's fee classifications, a "representative of the news media" is "a person or entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." *National Security Archive v. DOD*, 880 F.2d 1381, 1387 (D.C. Cir. 1989). The Center for Public Integrity clearly falls within this definition, and I invite you to review our recent publications, at http://www.publicintegrity.org/archives.aspx, to satisfy yourself of this fact. I am also enclosing a list (from http://www.publicintegrity.org/about/about.aspx?act=awards) of journalism awards won by the Center, conferred on us by other representatives of the news media who consider us to be one of their own.

For these reasons, I ask that you grant the Center for Public Integrity the fee reductions due to a representative of the news media under the Freedom of Information Act.

Sincerely,

Peter Newbatt Smith
Research Editor and counsel in this matter
Center for Public Integrity
910 17th Street, N.W., 7th Floor
Washington, DC, 20006-2606
202-481-1239
psmith@publicintegrity.org



# The Center for Public Integrity List of Awards

Awards as of August 21, 2006, are listed by year received, not necessarily by year work was published.

## 2006

- **CAPITOLBEAT: ASSOCIATION OF CAPITOL REPORTERS AND EDITORS**
  - Winner, In-depth Reporting Online
    "Pushing Prescriptions in the States" and "Well Connected in the States". *Staff*

- **SOCIETY OF PROFESSIONAL JOURNALISTS**
  - Winner, Sigma Delta Chi Award for Public Service in Online Journalism (Independent)
    "Well Connected in the States", *John Dunbar and Leah Rush*

## 2005

- **CAPITOLBEAT: ASSOCIATION OF CAPITOL REPORTERS AND EDITORS**
  - Winner, In-depth Reporting Online
    "Personal Politics", *Leah Rush, Susan Scheab, Daniel Lathrop and David Degen*

- **INVESTIGATIVE REPORTERS AND EDITORS**
  - Finalist, Online
    "The Politics of Oil", *Bob Williams, Kevin Bogardus, Laura Peterson, Paul Radu, Daniel Lathrop, Teo Furtado and Aron Pilhofer*
  - Winner, Online Certificate
    "Outsourcing the Pentagon", *Larry Makinson, Elizabeth Brown, Dan Guttman, M. Asif Ismail, and Alex Knott*

- **ONLINE NEWS ASSOCIATION AND THE USC ANNENBERG SCHOOL FOR COMMUNICATION**
  - Finalist, Online Journalism Award Enterprise (Small Sites)
    "Outsourcing the Pentagon". *Staff*
  - Finalist, Online Journalism Award for General Excellence (Small Sites)
    www.publicintegrity.org, *Staff*

- **SOCIETY OF ENVIRONMENTAL JOURNALISTS**
  - Winner, Outstanding Online Reporting
    "The Politics of Oil". *Bob Williams, Kevin Bogardus, Daniel Lathrop, Alexander Cohen and Aron Pilhofer*

- **SOCIETY OF PROFESSIONAL JOURNALISTS**
  - Winner, Sigma Delta Chi Award for Investigative Reporting Online (Independent)
    "The Politics of Oil", *Bob Williams, Kevin Bogardus, Aron Pilhofer and Alex Cohen*
  - Winner, Sigma Delta Chi Award for Public Service in Online Journalism (Independent)
    "Personal Politics", *Staff*

Fax sent by : 2026192922                                    12-14-06 10:54      Pg: 21/31

12/12/2006  11:27  3014430925  OGC.GLD  FHS FOIA  12-14-06 10:54  PAGE 20/18
Case 1:06-cv-01935-DB  Document 8-4  Filed 01/10/2007  Page 4 of 6

From: Center for Public Integrity    To: 3014430925    Page: 3/7    Date: 10/18/2006 3:01:44 PM

About Us - The Center for Public Integrity                          Page 2 of 4

# 2004

- **CAPITOLBEAT: ASSOCIATION OF CAPITAL REPORTERS AND EDITORS**
  - o Winner, In-depth Reporting Online
    "Silent Partners", *Derek Willis and Aron Pilhofer*

- **INVESTIGATIVE REPORTS AND EDITORS**
  - o Finalist, Online
    "Well Connected", *John Dunbar, Bob Williams, Morgan Jindrich and Scott Singleton*
  - o Winner, Online Certificate
    "The Water Barons", *William Marsden, Maud Beelman, Bill Allison, Erika Hobbs, Daniel Politi, Aron Pilhofer, Andre Verloy, Laura Peterson and Samiya Edwards*

- **LONG ISLAND UNIVERSITY**
  - o Winner, George Polk Award for Internet Reporting
    "Windfalls of War", *Maud S. Beelman, Andre Verloy, Bill Allison, Teo Furtado, Kevin Baron, Neil Gordon, Laura Peterson, Daniel Politi, André Verlöy, Bob Williams, Brooke Williams, Aron Pilhofer and Han Nguyen*

- **ONLINE NEWS ASSOCIATION AND USC ANNENBERG SCHOOL FOR COMMUNICATION**
  - o Finalist, Online Journalism Award for General Excellence (Small Sites)
    www.publicintegrity.org, *Staff*
  - o Winner, Online Journalism Award for Enterprise (Small Sites)
    "Silent Partners", *Staff*

- **PEN USA**
  - o First Amendment Award
    "Charles Lewis."

- **SOCIETY OF PROFESSIONAL JOURNALISTS**
  - o Winner, Sigma Delta Chi Award for Public Service in Online Journalism (Independent)
    "Silent Partners", *Derek Willis and Aron Pilhofer*

- **SONOMA STATE UNIVERSITY**
  - o 2nd Place, Project Censored Award for Top 25 Censored News Stories of 2002-2003
    "Justice Department Drafts Sweeping Expansion of Terrorism Act", *Charles Lewis and Adam Mayle*

# 2003

- **CAPITOLBEAT: ASSOCIATION OF CAPITOL REPORTERS AND EDITORS**
  - o Winner, In-depth Reporting Online
    "State Secrets", *Mary Jo Sylwester, Leah Rush, John Dunbar and Robert Moore*

- **INVESTIGATIVE REPORTERS AND EDITORS**
  - o Finalist, Online
    "Enron€™s Big Political Donors", *John Dunbar, Robert Moore and MaryJo Sylwester*

- **ONLINE NEWS ASSOCIATION AND THE USC ANNENBERG SCHOOL FOR COMMUNICATION**
  - o Finalist, Online Journalism Award for Enterprise Journalism (Independent)
    "The Water Barons", *William Marsden, Maud S. Beelman, Bill Allison, Samiya Edwards, Erika Hobbs, Aron Pilhofer, Daniel Politi and Andre Verloy*
  - o Finalist, Online Journalism Award for General Excellence (Independent Small Sites)
    www.publicintegrity.org, *Staff*

Case 1:06-cv-01817-JDB    Document 8-4    Filed 01/10/2007    Page 5 of 6

About Us - The Center for Public Integrity                              Page 3 of 4

- o Finalist, Online Journalism Awards, Enterprise Reporting (Independent)
  "**Making a Killing: The Business of War**", Philip von Niekerk, Maud S. Beelman, Iqbal Athas,
  Duncan Campbell, Sunday Dare, Samiya Edwards, Julio Godoy, Alain Lallemand, Yossi
  Melman, Laura Peterson, Mungo Soggot and Andre Verloy
- o Winner, Online Journalism Award for Enterprise Journalism (Independent)
  "**Well Connected**", John Dunbar, Bob Williams, Morgan Jindrich, Bill Allison and Teo Furtado

- **SOCIETY OF PROFESSIONAL JOURNALISTS**
  - o Winner, Sigma Delta Chi Award for Investigative Reporting Online (Independent)
    "**Making a Killing: The Business of War**", Staff and International Consortium of Investigative
    Journalists
  - o Winner, Sigma Delta Chi Award for Public Service in Online Journalism (Independent)
    "**State Secrets**", Mary Jo Sylwester, Leah Rush, John Dunbar and Robert Moore

## 2002

- **INVESTIGATIVE REPORTERS AND EDITORS**
  - o Finalist, Online
    "**Tobacco Companies Linked to Criminal Organizations in Lucrative Cigarette
    Smuggling**", International Consortium of Investigative Journalists, Maud S. Beelman, Bill
    Birnbauer, Duncan Campbell, William Marsden, Erik Schelzig, and Leo Sisti

- **SOCIETY OF PROFESSIONAL JOURNALISTS**
  - o Winner, Sigma Delta Chi Award for Public Service in Online Journalism (Independent)
    "**Watchdogs on Short Leashes**", Kenneth Vogel and Leah Rush

## 2001

- **INVESTIGATIVE REPORTERS AND EDITORS**
  - o Finalist, Books
    "**The Buying of the President 2000**", Charles Lewis
  - o Finalist, Online
    "**Money, Influence and Integrity in the 2000 Election Year**", Staff
  - o Winner, Online Certificate
    "**Our Private Legislatures - Public Service, Personal Gain**", Diane Renzulli, Meleah Rush,
    John Dunbar, Alex Knott, Robert Moore, Ken Vogel

## 2000

- **INVESTIGATIVE REPORTERS AND EDITORS**
  - o Finalist, Online
    "**U.S. Support for Tobacco Overseas: Going Out of Business?**", Maud S. Beelman
  - o Winner, Books Certificate
    "**Animal Underworld: Inside America's Black Market for Rare and Exotic Species**", Alan
    Green

## 1999

- **INVESTIGATIVE REPORTERS AND EDITORS**

http://www.publicintegrity.org/about/about.aspx?act=awards

o Finalist, Books
"The Buying of Congress: How Special Interests Have Stolen Your Right to Life, Liberty and the Pursuit of Happiness". *Charles Lewis*

## 1998

- **INVESTIGATIVE REPORTERS AND EDITORS**
  - o Finalist, Books
    "Toxic Deception: How the Chemical Industry Manipulates Science, Bends the Law, and Endangers Your Health". *Dan Fagin and Marianne Lavelle*

## 1997

- **INVESTIGATIVE REPORTERS AND EDITORS**
  - o Finalist, Books
    "The Buying of the President 1996". *Charles Lewis*

- **SOCIETY OF PROFESSIONAL JOURNALISTS**
  - o Winner, Sigma Delta Chi Award for Public Service in Newsletter Journalism
    "Fat Cat Hotel". *Margaret Ebrahim*

© 2006 The Center for Public Integrity. All rights reserved.
IMPORTANT: Read our privacy policy and the terms under which this service is provided to you.
910 17th Street, NW · 7th Floor · Washington, DC 20006 · Tel. (202) 466-1300

# EXHIBIT D

Darlene Christian
Public Health Service (PHS)
Freedom of Information Office
Room 17-A-46, Parklawn Building
5600 Fishers Lane
Rockville, MD 20857

Dear Ms. Christian:                               February 14, 2006

This is a request under the Federal Freedom of Information Act (FOIA), the First
Amendment to the United States Constitution, the common law of the United States, the
Privacy Act (5 U.S.C.) section 552a, and any statue providing for public access to
government information:

I request that I be sent copies of the following documents:

- All and any grants, contracts and/or agreements that have been made
  through the Department of Health and Human Services in relation to the
  President's Emergency Plan for Aids Relief (Pepfar) since the creation of the
  plan in 2003 to the date on which you process this request. These contracts
  should include but not be limited to all program areas of Pepfar: prevention,
  treatment and care. By "in relation" we mean both those projects funded in
  full or in part by PEPFAR funds and those projects funded by other monies
  allocated by, through or in consultation with the Office of the Global Aids
  Coordinator (OGAC).

We first requested these contracts to the Office of the US Global Aids
Coordinator. On February 3, 2006, we received the following response from
the State Department Office of Information Programs and Services: "The
primary implementing agencies (Department of Health and Human Services,
US Agency for International Development, Department of Defense,
Department of Labor and Peace Corps) enter into contracts that may be
necessary for the programmatic functions of the Pepfar program. (...)
Therefore if what you seek is limited to contracts of a programmatic nature,
you should direct your request for such contracts to those other agencies..."

According to Pepfar's Second Annual Report to Congress, the agencies
within HHS that are implementing Pepfar programs are: the Centers for
Disease Control and Prevention, National Institutes of Health, Health
Resources and Services Administration, Food and Drug Administration, and
Substance Abuse and Mental Health Services Administration.

I am filing this FOIA request as a "representative of the news media," which both the
Department of State and the Central Intelligence Agency have granted members of my
organization in previous FOIA searches of their archives. This designation entitles me to

a waiver of fees accumulated during the actual search and review process. However, if your agency does determine that I should be charged for any part of this request, please contact me before any searches reach an estimate cost of $25.

The Center for Public Integrity is a nonpartisan, nonprofit investigative reporting organization, based in Washington, D.C., whose mission is to examine and write about public service and ethics-related issues. The International Consortium of Investigative Journalists was created in 1997 as a project of the Center for Public Integrity. For more information on the Center for Public Integrity, ICIJ, and their online publication, please refer, respectively, to http://www.publicintegrity.org, http://www.icij.org, and http://www.public-i.org.

In reference to our request I have provided the following information addressing the points listed in the Department of Justice's FOIA Guide, 2002 Edition: Fees and Fee Waivers, as found online at http://www.usdoj.gov/oip/fees.htm.

1. The content from this information "is likely to contribute" to the understanding of your agency to the common reader. Our research would not be possible without the specific content garnered by the release of the requested information. Prior to any action on this FOIA request, this information is not in the public domain.

2. Due to the nature of our organization, the Center for Public Integrity, the disclosure under our FOIA request will "contribute to the understanding of the public at large." The information will be posted to our newsletter, *The Public i* and on our website, www.publicintegrity.org, and will be read by a large number of people. We expect the information produced through this and other FOIA requests to serve as the basis for several press releases and articles that explain the actions and operations of government to the general public. Similar stories we have written in the past have increased the understanding of an issue by a large percentages of the public. For example, our organization posted the first stories about the "Lincoln Bedroom" scandal under the Clinton administration, and now the general public knows that campaign contributors to the Democratic Party were allowed to stay at the White House. Other stories, including the Center's exclusive release of Securities and Exchange Commission Records pertaining to President Bush's sale of Harken stock and Vice President Cheney's connections to the Halliburton Corporation have similarly informed the public.

3. In addition to publishing the information on our website, relevant information from this FOIA request will also be distributed to the general public via major news organizations. Among the news organizations that referred to our reports during a recent time period are: CBS, NBC, CNN, NPR, U.S. News & World Report, AP, AFP, Reuters, Knight Ridder, Cox News, New York Times, Washington Post, Los Angeles Times, USA Today, Dallas Morning News, Houston Chronicle, Austin American Statesman, Chicago Tribune, Philadelphia Inquirer, Christian Science Monitor, Atlanta Journal & Constitution, San Francisco Chronicle and the Seattle Times. International newspapers such as The Gazette (Montreal), Daily Telegraph (London), The Guardian, Irish Times, Scotland on Sunday and Hong Kong Mail have also cited the Center reports during a

recent time period. We expect that information provided through this FOIA request will similarly result in reporting featured by such national and global news organizations.

The Center for Public Integrity also possesses the skills necessary to process the requested information. We are investigative journalists. We write and post an online newsletter. Other members of the media consider us to be news organization as evidenced by our numerous awards over the years from the Society of Professional Journalists and the Investigative Reporters and Editors Inc. Additionally, many federal agencies have deemed the Center for Public Integrity to be news media for FOIA requests.

4. The disclosures we requested through the Freedom of Information Act do not primarily serve any "commercial interest." Any data derived from our request will be used primarily to educate the public and will be distributed freely. As described in section (3), we represent the news media and plan to distribute this information to the public.

5. In reference to any "commercial interest," we do not have any. Almost all of our money comes from grants and donations. The Center for Public Integrity is a non-profit. Almost all of the publications by the Center are made available without charge.

As I am sure you are aware, the Freedom of Information Act, under 32 C.F. R. 806, requires that if part of a record is exempt from disclosure, you must redact and release all segregated parts. Please describe the deleted material in detail and specify the reasons for believing that the alleged statutory justification applies in this instance.

I look forward to your decision on granting or denying our request within 20 days as outlined by the statute. As I am making this request as a journalist and this information is of timely value, I would appreciate your communicating with me by telephone or email, rather than by mail, if you have questions regarding this request. If my request is denied in whole or in part, please specify which exemption(s) is (are) claimed for each passage or whole document denied. In addition, please give the number of pages in each document and the total number of pages pertaining to this request and the dates of the documents withheld. Please provide copies of any logs, internal tracking numbers or other file-tracking device or system of documents in existence but denied disclosure. Such statements will be helpful in deciding whether to appeal an adverse determination.

I appreciate your attention to this and expect, as the FOIA provides, to hear from your office within 20 days. If you have any questions about the nature or scope of this request, please call me at: 202-481-1211.

Sincerely,

Marina Walker Guevara
The Center for Public Integrity
910 17th Street, NW, Suite 700
Washington, DC 20006
202-481-1211// mwalker@icij.org

# EXHIBIT E

Public Health Service
Freedom of Information Office
Parklawn Building, Room 17A-46
5600 Fishers Lane
Rockville, Maryland 20857
PH: 301-443-5252
Fax: 301-443-0925

FOIA CASE NUMBER: PHS2K6-212
April 19, 2006

Ms. Marina Walker Guevara
The Center for Public Integrity
910 17th Street, NW, Suite 700
Washington, DC 20006

Dear Ms. Walker Guevara:

This is in response to your February 14 Freedom of Information Act (FOIA)
request for a copy of any and all grants, contracts and/or agreements through
the Department of Health and Human Services (DHHS) regarding the President's
Emergency Plan for Aids Relief (Pepfar) since 2003. You also requested a fee
classification change from Category III Other, to Category II Media Requester.

You wrote that The Center for Public Integrity (CPI) is a nonpartisan, nonprofit
investigative reporting organization. You also wrote that release is likely to
contribute to the understanding of the common reader; the information will be
published in your newsletter; be used for press releases and articles that
explain the actions and operations of the government; and distributed to the
public by major news organizations. Finally, you wrote that other Federal
agencies granted media status to CPI.

It is the policy of this Department to waive or reduce fees if disclosure of the
information meets both the following tests: (1) it is in the public interest
because it is likely to contribute significantly to public understanding of the
operations or activities of the government; and (2) it is not primarily in the
commercial interest of the requester.

Your statements do not support the likelihood of contributing significantly to
public understanding of government operations or activities that are not
already public knowledge. Pepfar provides annual reports to Congress, and the

Page 2 – Ms. Marina Walker Guevara

Government has already published information concerning Pepfar on its web sites, including press releases. The requested information is grant-specific and narrowly focused. Therefore, it would not significantly contribute to the general public understanding of the operations or activities of the Government.

You stated that your organization "represent[s]" the news media and other Federal agencies have granted CPI media status. DHHS fee classifications are determined on a case-by-case basis for each FOIA request.   The CPI web site acknowledges that it is a broker of information.  Therefore, CPI is a secondary contributor, not a primary news-gathering organization. As such, your statements are not convincing and do not provide substantial information to indicate that release of the information, in this instance, would not further the commercial, trade, or profit interests of your organization. After review, I am unable to grant your request for fee classification change.

My decision is based upon the Department's implementing public information regulations. See 45 CFR 5.45 of the enclosed regulations.

You, of course, have the right to appeal this decision to deny you a change of fee category. Should you wish to do so, send your appeal, within 30 days from the date you receive this letter, to the Deputy Assistant Secretary for Public Affairs (Media), U.S. Department of Health and Human Services, Room 17A-46, 5600 Fishers Lane, Rockville, Maryland 20857, following the procedures outlined in Subpart C of the enclosed Regulations. Please mark both your appeal letter and envelope "FOIA Appeal".

Finally, you asked to be advised if the cost to respond to your request would exceed $25.00. As a Category III requester, you will be charged for search and duplication costs after the waiver of the first two hours of search, and 100 pages of duplication. Current charges for search are at the rates of $19, $38, and $69 per hour, depending on the grade of the employee performing the search. Duplication is at ten cents per page. I am advised by the Health Resources and Services Administration, and the Centers for Disease Control and Prevention, that the search for records is expected to exceed 12 hours, at the $38 and $69 rates, and that the number of pages is in excess of 5,000. At this time, I am unable to determine the total estimated cost to reply because we have not yet received a cost estimate from the Food and Drug Administration (FDA).

Page 3 – Ms. Marina Walker Guevara

Please contact me with your approval to proceed, and your agreement to pay all charges associated with the processing of your request. At that time we can discuss any pre-payment requirements. Or, you may wish to discuss narrowing the scope of your request. If I do not hear from you, or receive an appeal of my decision by May 26, I will consider your request withdrawn and take no further action.

Sincerely yours,

Darlene Christian
Freedom of Information Officer
Public Health Service

Enclosures

# EXHIBIT F

Fax sent by : 2026192922          OGC.GLD          01-09-07 16:15     Pg: 7/29
11/03/2006   18:81   301-443-9925                                          03/25
From: Center for Public Integrity   To: 3014430925   Page: 2/11   Date: 5/26/2006 2:18:53 PM
Case 1:06-cv-01818-JDB   Document 8-7   Filed 01/10/2007   Page 2 of 8

# THE CENTER FOR PUBLIC INTEGRITY

**Board of Directors**

Roberta Baskin
Hodding Carter III
Bill Kovach
Susan Loewenberg
Paula Madison
John E. Newman, Jr.
Geneva Overholser
Charles Piller
Alice Pusey
Ben Sherwood
Pearl Stewart
Marianne Szegedy-Maszak

**Advisory Board**

James MacGregor Burns
Joel Chaseman
Alan J. Dworsky
Edith Everett
Bruce A. Finzen
Gustavo Godoy
Jacie Goytisolo
Herbert Huff
Rev. Theodore Flesburgh
Kathleen Hall Jamieson
Sonia Jarvis
Bevis Longstreth
Charles Ogletree
Arthur Schlesinger, Jr.
Harold M. Williams
William Julius Wilson

**Executive Director**

Roberta Baskin

**Founder**

Charles Lewis

May 26, 2006

**By First-Class Mail and Fax to 301-443-9925**
Deputy Assistant Secretary for Public Affairs (Media)
U.S. Department of Health and Human Services
Room 17A-46
5600 Fishers Lane
Rockville, MD 20857

PHS-246-A- 063

Re:     FOIA Appeal
        Case No. PHS2K6-212

Dear Madam:

I am an attorney and represent the requester, the Center for Public Integrity, in this matter.

By this letter, the Center appeals the decision of Darlene Christian, Freedom of Information Officer, Public Health Service, denying the Center fee classification as a representative of the media (copy enclosed).

Ms. Christian's decision is mistaken in saying that "[t]he CPI web site acknowledges that it is a broker of information," and in inferring "that release of the information [could] further the commercial, trade, or profit interests of your organization." Ms. Christian does not quote from the Center's Web site or indicate the specific basis for this characterization, but perhaps she was referring to statements that "Through objective and thorough analysis, the Center hopes to serve as an honest broker of information and to inspire a better-informed citizenry that can demand a higher level of accountability from its government and elected leaders." See, e.g., http://www.publicintegrity.org/about/release.aspx?aid=36. Such a statement obviously does not imply that the Center charges or receives payment for information. In fact, almost all of the Center's reports and analyses are freely available to the public on our Web site, although some printed publications (not "brokered information") are offered for sale.

The Court of Appeals for the D.C. Circuit has held that, for purposes of FOIA's fee classifications, a "representative of the news media" is "a person or entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." *National Security Archive v. DOD*, 880 F.2d 1381, 1387 (D.C. Cir. 1989). The Center for Public Integrity clearly falls

Fax sent by : 2026192922          OGC.GLD                    01-09-07 16:15     Pg: 8/29

11/03/2006  14:46  2014430925  Case 1:06-cv-01818-DB   Document 8-8   Filed 01/10/2007    Page 3 of 6  PAGE  04/25
From: Center for Public Integrity    To: 3014430925    Page: 3/11    Date: 5/28/2006 2:18:54 PM

within this definition, and I invite you to review our recent publications, at http://www.publicintegrity.org/archives.aspx, to satisfy yourself of this fact. I am also enclosing a list (from http://www.publicintegrity.org/about/about.aspx?act=awards, supplemented with additional awards for 2005) of journalism awards won by the Center, conferred on us by other representatives of the news media who consider us to be one of their own.

For these reasons, I ask that you grant the Center for Public Integrity the fee reductions due to a representative of the news media under the Freedom of Information Act.

Sincerely,

Peter Newbatt Smith
Research Editor
And counsel in this matter
202-481-1239

2

Fax sent by : 2026192922          OGC.GLD                    01-09-07 16:15    Pg: 9/29

Case Proc-Center-For-Public-Integrity    Document 8-7    Filed 01/10/2007    Page 4 of 8    PAGE 05/25
To: 3014430826    Page: 4/11    Date: 8/29/2008 2:18:54 PM

# CENTER FOR PUBLIC INTEGRITY
## AWARDS RECEIVED - 2005

- **ASSOCIATION OF CAPITAL REPORTERS AND EDITORS**
  - Online Publications: In-depth reporting
    "Personal Politics", Leah Rush, Susan Scheab, Daniel Lathrop, David Dagan

- **INVESTIGATIVE REPORTERS AND EDITORS**
  - IRE Certificate, Other Media: Online
    "Outsourcing the Pentagon", Elizabeth Brown, M. Asif Ismail, Alex Knott, Dan Guttman and Larry Makinson
  - Finalist, Other Media: Online
    "The Politics of Oil", Bob Williams, Kevin Bogardus, Laura Peterson, Paul Radu, Daniel Lathrop, Teo Furtado and Aron Pilhofer

- **ONLINE NEWS ASSOCIATION AND THE USC ANNENBERG SCHOOL FOR COMMUNICATION**
  - Online Journalism Awards, General Excellence (Small) [finalist]
    The Center for Public Integrity
  - Online Journalism Awards, Enterprise Reporting (Small) [finalist]
    "Outsourcing the Pentagon", Elizabeth Brown, M. Asif Ismail, Alex Knott, Dan Guttman and Larry Makinson

- **SOCIETY OF ENVIRONMENTAL JOURNALISTS**
  - National Award for Outstanding Online Reporting
    "The Politics of Oil", Bob Williams, Kevin Bogardus, Laura Peterson, Paul Radu, Daniel Lathrop, Teo Furtado, and Aron Pilhofer

- **SOCIETY OF PROFESSIONAL JOURNALISTS**
  - Public Service in Online Journalism (Independent)
    "Personal Politics", Leah Rush, Susan Scheab, Daniel Lathrop, David Dagan
  - Online Reporting: Investigative Reporting (Independent)
    "Politics of Oil", Bob Williams, Kevin Bogardus, Aron Pilhofer, Alex Cohen

- **RADIO-TELEVISION NEWS DIRECTORS ASSOCIATION**
  - Edward R. Murrow Award, Website—non-broadcast affiliated (Small Market)
    The Center for Public Integrity



# The Center for Public Integrity List of Awards

## 2005

- INVESTIGATIVE REPORTERS AND EDITORS
  - IRE Certificate, 2004, Other Media: Online
    *"Outsourcing the Pentagon: Who's winning the big contracts"*, Larry Makinson, Elizabeth Brown, Dan Guttman, M. Asif Ismail, and Alex Knott

## 2004

- ASSOCIATION OF CAPITAL REPORTERS AND EDITORS
  - Online In-Depth Reporting
    *"Silent Partners: How political non-profits work the system"*, Derek Willis & Aron Pilhofer

- INFORMATION TODAY
  - 2004 Buddie Award for Best Unknown Database
    The Center for Public Integrity

- INVESTIGATIVE REPORTERS AND EDITORS
  - Other Media: Online [finalist]
    *"The Politics of Oil: How one of the world's richest industries influences government and policy"*, Bob Williams, Kevin Bogardus, Laura Peterson, Paul Radu, Daniel Lathrop, Teo Furtado, and Aron Pilhofer

- ONLINE JOURNALISM AWARDS, USC ANNENBERG SCHOOL FOR COMMUNICATION
  - Enterprise Journalism, small sites
    *"Silent Partners: How political non-profits work the system"*, Derek Willis & Aron Pilhofer
  - General Excellence, small sites [finalist]
    The Center for Public Integrity

- PEN USA *(composed of poets, playwrights, essayists, novelists and others interested in protecting the rights of writers round the world)*
  - First Amendment Award
    Charles Lewis and the Center for Public Integrity

- SOCIETY OF ENVIRONMENTAL JOURNALISTS
  - National Award for Outstanding Online Reporting
    *"The Politics of Oil: How one of the world's richest industries influences government and policy"*, Bob Williams, Kevin Bogardus, Laura Peterson, Paul Radu, Daniel Lathrop, Teo Furtado, and Aron Pilhofer

## 2003

- **ASSOCIATION OF CAPITAL REPORTERS AND EDITORS**
  - Online Reporting: Public Service In-Depth Reporting
    "State Secrets: An Investigation of Political Party Money in the States", Mary Jo Sylwester, Leah Rush, John Dunbar, and Robert Moore

- **INVESTIGATIVE REPORTERS AND EDITORS**
  - Finalist, Other Media: Online
    "Well Connected", John Dunbar, Bob Williams, Morgen Jindrich and Scott Singleton
  - IRE Certificate, Other Media: Online
    "The Water Barons", William Marsden, Maud S. Beelman, Bill Allison, Samiya Edwards, Erika Hobbs, Aron Pilhofer, Daniel Politi and Andre Verloy

- **LONG ISLAND UNIVERSITY**
  - Online Journalism Awards, Features Journalism (Independent)
    "Windfalls of War: U.S. Contractors in Iraq and Afghanistan", Maud S. Beelman, Andre Verloy, Bill Allison, Teo Furtado, Kevin Baron, Neil Gordon, Laura Peterson, Daniel Politi, André Verloy, Bob Williams, Brooke Williams, Aron Pilhofer and Han Nguyen

- **ONLINE NEWS ASSOCIATION AND THE USC ANNENBERG SCHOOL FOR COMMUNICATION**
  - Online Journalism Awards, Enterprise Reporting (Independent) [finalist]
    "The Water Barons", William Marsden, Maud S. Beelman, Bill Allison, Samiya Edwards, Erika Hobbs, Aron Pilhofer, Daniel Politi and Andre Verloy
  - Online Journalism Awards, Enterprise Reporting (Independent)
    "Well Connected", John Dunbar, Bob Williams, Morgen Jindrich, Bill Allison and Teo Furtado
  - Online Journalism Awards, Features Journalism (Independent) [finalist]
    "Making a Killing: The Business of War", Philip van Niekerk, Maud S. Beelman, Iqbal Athas, Duncan Campbell, Sunday Dare, Samiya Edwards, Julio Godoy, Alain Lallemand, Yossef Melman, Laura Peterson, Mungo Soggot and Andre Verloy
  - Online Journalism Awards, General Excellence [finalist]
    The Center for Public Integrity

- **PROJECT CENSORED**
  - National Award: Top 25 Censored News Stories of 2002-2003 [2nd Place Ranking]
    "Justice Department Drafts Sweeping Expansion of Terrorism Act", Charles Lewis and Adam Mayle

- **SOCIETY OF PROFESSIONAL JOURNALISTS**
  - Public Service in Online Journalism (Independent)
    "Silent Partners: How political nonprofits work the system", Derek Willis and Aron Pilhofer

# 2002

- **INVESTIGATIVE REPORTERS AND EDITORS**
  - National Book Award
    "Capitol Offenders: How Private Interests Govern Our States", Diane Renzulli, John Dunbar, Alex Knott, Robert Moore, and Leah Rush
  - Online Reporting Award Finalist
    "Enron's Big Political Donors", John Dunbar, Robert Moore, and Mary Jo Sylwester

- **SOCIETY OF PROFESSIONAL JOURNALISTS**
  - Sigma Delta Chi Award: Online Investigative Reporting (Independent)
    "Making a Killing: The Business of War", Philip van Niekerk, Maud S. Beelman, Iqbal Athas, Duncan Campbell, Sunday Dare, Samiya Edwards, Julio Godoy, Alain Lallemand, Yossef Melman, Laura Peterson, Mungo Soggot and Andre Verloy
  - Sigma Delta Chi Award: Public Service in Online Journalism (Independent)

"State Secrets: An Investigation of Political Party Money in the States", *Mary Jo Sylwester, Leah Rush, John Dunbar, and Robert Moore*

## 2001

- **INVESTIGATIVE REPORTERS AND EDITORS**
  - Online Reporting Award Finalist
    "Tobacco Companies Linked to Criminal Organizations in Lucrative Cigarette Smuggling", *Maud S. Beelman, Bill Birnbauer, Duncan Campbell, William Marsden, Erik Schelzig, and Leo Sisti*
- **SOCIETY OF PROFESSIONAL JOURNALISTS**
  - Sigma Delta Chi Award; Public Service in Online Journalism (Independent)
    "Watchdogs on Short Leashes", *Kenneth Vogel and Leah Rush*

## 2000

- **INVESTIGATIVE REPORTERS AND EDITORS**
  - National Book Award Finalist
    "The Buying of the President 2000", *Charles Lewis*
  - Online Reporting Award
    "Our Private Legislatures - Public Service, Personal Gain", *Diane Renzulli, Leah Rush, John Dunbar, Alex Knott, Robert Moore, and Ken Vogel*
  - Online Reporting Award Finalist
    "Money, Influence and Integrity in the 2000 Election Year", *The Public i Staff*

## 1999

- **INVESTIGATIVE REPORTERS AND EDITORS**
  - National Book Award
    "Animal Underworld: Inside America's Black Market for Rare and Exotic Species", *Alan Green*
  - Online Reporting Award Finalist
    "US Support for Tobacco Overseas: Going Out of Business", *The Public i Staff and Maud S. Beelman*

## 1998

- **INVESTIGATIVE REPORTERS AND EDITORS**
  - National Book Award Finalist
    "The Buying of Congress: How Special Interests Have Stolen Your Right to Life, Liberty, and the Pursuit of Happiness", *Charles Lewis*

## 1997

- **INVESTIGATIVE REPORTERS AND EDITORS**
  - National Book Award Finalist
    "Toxic Deception: How the Chemical Industry Manipulates Science, Bends the Law, and

Fax sent by : 2026192922          OGC.GLD                    01-09-07 16:16       Pg: 13/29
Case 1:06-cv-01818-JDR   Document 8-7   Filed 01/10/2007   Page 8 of 8   PAGE  09/25
From Center for Public Integrity   To: 3014430925   Page: 8/11   Date: 5/26/2006 2:18:55 PM

About Us · The Center for Public Integrity
                                                                    Page 4 of 4

*Endangers Your Health*, Dan Fagin and Marianne Lavelle

## 1996

- INVESTIGATIVE REPORTERS AND EDITORS
  - National Book Award Finalist
    *"The Buying of the President 1996"*, Charles Lewis

- SOCIETY OF PROFESSIONAL JOURNALISTS
  - Sigma Delta Chi Award: Public Service in Online Journalism (Independent)
    *"Fat Cat Hotel: How Democratic High-Rollers are Rewarded with Overnight Stays at the White House"*, Public I Staff and Margaret Ebrahim

© 2006, The Center for Public Integrity. All rights reserved.
IMPORTANT: Read our privacy policy and the terms under which this service is provided to you.
910 17th Street, NW · 7th Floor · Washington, DC 20006 · Tel. (202) 466-1300

# EXHIBIT G

Fax sent by : 2026192922          OGC.GLD          12-14-86 10:55    Pg: 26/31
12/12/2006  11.53     3814438342     PHS FOIA                         PAGE  01/04
Case 1:06-cv-01818-JDB     Document 8-8     Filed 01/10/2007     Page 2 of 3

**DEPARTMENT OF HEALTH & HUMAN SERVICES**     Program Support Center

Division of FOIA Services
Administrative Operations Service
Parklawn Building, Room 17A-46
5600 Fishers Lane
Rockville, Maryland 20857
PH: 301-443-5252
Fax 301-443-0925

FOIA Case Number: PHS2K6-A-063 and PHS2K7-A-008
November 30, 2006

Peter Newbatt Smith, Esq.
Center for Public Integrity
910 17th Street, N.W., 7th Floor
Washington, D.C. 20006-2606

Dear Mr. Smith:

My office is currently processing the above referenced administrative appeals filed by the Center for Public Integrity (CPI), which are currently at issue in the pending matter of *Center for Public Integrity v. U.S. Department of Health and Human Services*, Civil Action No. 06-1818(JDB) ECF. In each of the appeals, you appealed the initial determination to classify CPI as a Category II, representative of the news media for fee purposes. As yet, there has been no formal determination on your appeals. The purpose of this letter is to obtain additional information from CPI in order to complete processing and issue a final agency determination.

The definition of a "representative of the news media" is, in essence, a person or entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience. You wrote that CPI clearly falls into this category in that almost all of CPI's reports and analyses are freely available to the public on your website, as well as through printed publications that are offered for sale. You further provided links to your website and a listing of awards conferred upon CPI by other news media.

Providing documents to the public through a website and through the sale of publications is not sufficient to qualify a FOIA requester as a representative of the news media. Further, receiving awards from news media sources, serving as a type of middleman or vendor of information that representatives of the news media can utilize when necessary, or

Page 2 - Peter Newbatt Smith, Esq.

providing documents collected from government agencies to media sources, does not qualify an organization as news media. An organization must demonstrate its editorial skills to turn the raw materials into a distinct work that is distributed.

As such, I am asking CPI to provide additional information to address the below questions:

1. Please explain what CPI means by the term "broker of information" in its 2004 Annual Report that appeared on your website. This same characterization as "broker of information" was used by CPI to describe itself on your website under "About Us" in March, 2006.

2. What does CPI intend to do with the records that are requested under the two FOIA requests at issue.

3. Please explain how CPI will use its editorial skills to turn the requested records for the two FOIA requests at issue into distinct works.

4. If a distinct work is created, please explain how CPI will distribute that work.

I look forward to receiving the additional information so that we may render a decision on your appeals, and complete the processing of your FOIA requests. If you have any questions, please feel free to contact Patricia Mantoan, Esquire, U.S. Department of Health and Human Services, Office of the General Counsel, Information Law Division. Ms. Mantoan's contact information is as follows: Room 4760 Cohen Building, Washington, D.C. 20201; 202-619-0153.

Sincerely yours,

Darlene Christian
Director
Division of FOIA Services

cc: Michelle Johnson, Esq. (by fax)

# EXHIBIT H

# THE CENTER FOR PUBLIC INTEGRITY

December 6, 2006

**By First-Class Mail and Fax to 301-443-0925**
Ms. Darlene Christian
Director, Division of FOIA Services
U.S. Department of Health and Human Services
Parklawn Building, Room 17A-46
5600 Fishers Lane
Rockville, MD 20857

Re:     FOIA Case Nos. PHS2K6-A-063 and
PHS2K7-A-008

Dear Ms. Christian:

I write in response to your letter dated November 30, 2006.

It has never been my contention that the Center qualifies for media requester status merely because it maintains a public Web site and sells publications. Referencing the D.C. Circuit's definition of a "representative of the news media" in *National Security Archive v. DOD*, 880 F.2d 1381 (D.C. Cir. 1989), my appeals letter in each of these cases invited HHS "to review our recent publications, at http://www.publicintegrity.org/archives.aspx, to satisfy yourself" that the Center falls within that definition. If you examine the content of those publications, I believe it will be obvious that the Center "gathers information of potential interest to a segment of the public [and] uses its editorial skills to turn the raw materials into [] distinct work[s]" (880 F.2d at 1387). The Web site is the primary means by which the Center "distributes [those] work[s] to an audience." (*Id.*)

Turning to your specific questions:

1. Please explain what CPI means by the term "broker of information" in its 2004 Annual Report that appeared on your website. This same characterization as "broker of information" was used by CPI to describe itself on your website under "About Us" in March, 2006.

The passage from which you quote in the 2004 Annual Report says:

The Center's work is based on the conviction that the public has a right to know what its government, public officials and corporate leaders are doing. Its mission includes providing the American people with information – often not available elsewhere – about how these entities are performing their duties. By providing thorough, thoughtful and objective analyses, the Center serves as an honest broker of information, which in turn helps citizens demand a higher level of accountability from their government and elected leaders.

The *American Heritage Dictionary* defines "honest broker" as "A neutral agent, as in mediation." ((4th ed. 2004) http://dictionary.reference.com/browse/honest%20broker). I have no information to suggest that the Center intended by this expression any other meaning.

2. What does CPI intend to do with the records that are requested under the two FOIA requests at issue.

3. Please explain how CPI will use its editorial skills to turn the requested records for the two FOIA requests at issue into distinct works.

4. If a distinct work is created, please explain how CPI will distribute that work.

The specific answers to these questions (2-4) are, for the purposes of determining whether the Center is a representative of the news media, superfluous to the information already given to you and available to you.

The Center intends to use the requested records in the conduct of its investigative journalism mission. The Center plans to use the requested records in creating "distinct works" of a character similar to the hundreds of reports it has created since its formation in 1989. The Center plans to distribute those "distinct works" as it has distributed all its reports, by publication on its Web site and/or in printed form (e.g., newsletter, pamphlet or book).

The Center will not use the requested records for any commercial purpose.

_____

Please note that the Center's first appeal has been pending since May 26, 2006, whereas FOIA generally requires that such appeals be decided within twenty working days (5 U.S.C. § 552(a)(6)(A)(ii)). I hope that both the appeals and the pending litigation can be resolved promptly and in the Center's favor.

Sincerely,

/S/

Peter Newbatt Smith
Research Editor and counsel in this matter
Center for Public Integrity
910 17th Street, N.W., 7th Floor
Washington, DC, 20006-2606
202-481-1239
psmith@publicintegrity.org

copy to: Michelle Johnson, AUSA (by e-mail)