# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

Center for Public Integrity,      |

          |

        Plaintiff,       |

          |

v.          |   Civil Action No. 06-1818 (JDB)

          |   ECF

U.S. Department of Health and Human Services,|

          |

        Defendant.     |

## PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, Center for Public Integrity, respectfully asks the Court to enter summary judgment in its favor, pursuant to Federal Rule of Civil Procedure 56, on the grounds that there is no genuine issue as to any material fact and that Plaintiff is entitled to judgment as a matter of law. Plaintiff opposes Defendant's Motion for Summary Judgment.

Plaintiff submits the accompanying statement of material facts as to which there is no genuine dispute (incorporating Plaintiff's response to Defendant's statement of facts), a memorandum of points and authorities, exhibits, and a proposed order.

Respectfully submitted,


_____/s/_____

Peter Newbatt Smith
D.C. Bar #458244
Center for Public Integrity
910 17th Street, N.W., 7th Floor
Washington, DC 20006-2606
202-481-1239
psmith@publicintegrity.org

Attorney for Plaintiff

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Center for Public Integrity,       |

                              |

       Plaintiff,             |

                              |

v.                               |    Civil Action No. 06-1818 (JDB)

                              |    ECF

U.S. Department of Health and Human Services,|

                              |

       Defendant.         |

## PLAINTIFF'S STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE AND RESPONSE TO DEFENDANT'S STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE

Pursuant to Local Civil Rules 7.1(h) and 56.1, Plaintiff, Center for Public Integrity, hereby responds to Defendant's Statement of Material Facts As to Which There Is No Genuine Issue and also submits a list of "Supplemental Facts." Plaintiff's Supplemental Facts, together with Plaintiff's Response to Defendant's Facts, constitute Plaintiff's Statement of Material Facts As to Which There Is No Genuine Dispute.

## PLAINTIFF'S RESPONSE TO DEFENDANT'S FACTS

1.      Plaintiff does not dispute this statement.

2.      Plaintiff does not dispute this statement, with the exception of the final sentence and block quotation. "Finally" does not accurately portray the position of the quoted passage within Mr. Bogardus' letter, and the quotation is truncated. The full passage is:

> The Center for Public Integrity also possesses the skills necessary to process the requested information. We are investigative journalists. We write and post an online newsletter. Other members of the media consider us to be news organization as evidenced by our numerous awards over the years from the Society of Professional Journalists and the Investigative Reporters and Editors Inc.

Exh. A, at 3

3.    Plaintiff does not dispute this statement.

4.    Plaintiff disputes paragraph 4 of Defendant's Facts to the extent that it represents

that Ms. Armstrong's letter contained statements to the effect that "the disclosure

of [the requested] information was not in the public interest and CPI did not

qualify as a representative of the news media." The letter contains no such

statements. Exh. B.

5.    Plaintiff does not dispute this statement.

6.    Plaintiff does not dispute this statement.

7.    Plaintiff does not dispute this statement.

8.    Plaintiff does not dispute this statement.

9.    Plaintiff disputes paragraph 9 of Defendant's Facts to the extent that it represents

that Ms. Christian's letter contained a statement to the effect that "disclosure of

the [requested] information would not be in the public interest." The letter

contains no such statement. Exh. E.

10.   Plaintiff does not dispute this statement.

11.   Plaintiff does not dispute this statement.

12.   Plaintiff does not dispute this statement.

13.   Plaintiff does not dispute this statement.

14.   Plaintiff does not dispute this statement.

15.   Plaintiff does not dispute this statement.

## **PLAINTIFF'S SUPPLEMENTAL FACTS**

16.     On several occasions, Plaintiff suggested and requested that Defendant review

relevant information on Plaintiff's Web sites, including

http://www.publicintegrity.org, http://www.icij.org, and http://www.public-i.org.

Exh. A, at 2; Exh. C, at 1; Exh. D, at 2; Exh. F, at 1-2; and Exh. H, at 1.

17.     Defendant did review information on Plaintiff's Web sites. *See* Exh. E, at 2; and

Exh. G, at 2 (citing the phrase "broker of information").

18.     Plaintiff regularly produces news reports that are its original work. *See*

reports/articles listed at http://www.publicintegrity.org/archives.aspx?year=2006

and at http://www.publicintegrity.org/archives.aspx?year=2005.

19.     Plaintiff disseminates its news reports to the public through its Web sites (*see*

http://www.publicintegrity.org), through its newsletters (*see*

http://ga6.org/publicintegrity/join.html and

http://www.publicintegrity.org/about/publici.aspx), through its online store

(http://store.publicintegrity.org/ecom/store/) and through major booksellers (see

http://store.publicintegrity.org/ecom/store/default.aspx?act=details&type=book&i

ID=55).

Respectfully submitted,


_____/s/_____
Peter Newbatt Smith
D.C. Bar #458244
Center for Public Integrity
910 17th Street, N.W., 7th Floor
Washington, DC 20006-2606
202-481-1239
psmith@publicintegrity.org

Attorney for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Center for Public Integrity,                    |
                                                |
            Plaintiff,                          |
                                                |
v.                                              |    Civil Action No. 06-1818 (JDB)
                                                |    ECF
U.S. Department of Health and Human Services,   |
                                                |
            Defendant.                          |

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
ITS CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

FACTUAL AND PROCEDURAL BACKGROUND

By letter dated February 14, 2006, to the Public Health Service ("PHS"), a component of

Defendant, U.S. Department of Health and Human Services ("HHS"), Plaintiff, the Center for

Public Integrity ("the Center," or "CPI"), requested copies of grants, contracts and/or agreements

made through HHS in relation to the President's Emergency Plan for Aids Relief (PEPFAR)

since 2003. Exh. D, at 1.[1] In its request letter, the Center noted it was "filing this FOIA request as

a 'representative of the news media.'" *Id.* The request letter included the information that "The

Center for Public Integrity is a nonpartisan, nonprofit, investigative reporting organization, based

in Washington, D.C., whose mission is to examine and write about public service and ethics-

related issues. The International Consortium of Investigative Journalists was created in 1997 as a

project of the Center for Public Integrity. For more information on the Center for Public

Integrity, ICIJ and their online publication, please refer, respectively, to

http://www.publicintegrity.org, http://www.icij.org, and http://www.public-i.org." *Id.*, at 2,

---

[1] Plaintiff is submitting duplicate copies of the Defendant's exhibits which should be more legible. Plaintiff has given them the same exhibit labels and is not aware of any substantive differences between the two sets of documents.

By letter to the Center dated February 22, 2006, PHS acknowledged receipt of the Center's FOIA request and stated that it had classified the Center as "Category III – Other Requestors." The effect of this classification, it said, was that "we will waive fees for the first 100 pages of duplication and the first two hours of search time. You will, however, be responsible for additional search and duplication charges." The Center repeated its request to PHS for classification as a representative of the news media, and by letter to The Center dated April 19, 2006, PHS responded to The Center's FOIA request, asserting that it was "unable to grant your request for fee classification change," citing HHS's public information regulations, which implement FOIA, and specifically 45 C.F.R. § 5.45. PHS advised that, based upon the "Category III" classification, "Current charges for search are at the rates of $19, $38, and $69 per hour, depending on the grade of the employee performing the search. … [T]he search for records is expected to exceed 12 hours, at the $38 and $69 rates." Exh. E.

By letter to defendant HHS dated May 26, 2006, The Center appealed the denial of its request to receive classification "as a representative of the media" under FOIA. Exh. F. HHS had contended in its response letter that "[t]he CPI web site acknowledges that it is a broker of information. Therefore, CPI is a secondary contributor, not a primary news-gathering organization." Exh. E. In its appeal the Center contested these statements, pointing out that the Center is not "a broker of information," and that its Web site states that "Through objective and thorough analyses, the Center hopes to serve as an honest broker of information and to inspire a better-informed citizenry that can demand a higher level of accountability from its government and elected leaders." See, e.g., http://www.publicintegrity.org/about/release.aspx?aid=36. With its appeal letter, the Center supplied a list of nine major journalism awards it received in 2005 and 32 additional awards received from 1996 through 2004. The appeal letter noted that these

awards were "conferred on us by other representatives of the news media who consider us to be one of their own." Exh. F.

Earlier, by five separate letters dated December 21, 2005, to the Agency for Toxic Substances and Disease Registry ("ATSDR"), a component agency of PHS, plaintiff requested certain records (1) detailing non-governmental sponsored trips and certain correspondence logs that include letters (2) from members of Congress and the general public, (3) from the Environmental Protection Agency, (4) from the White House Council on Environmental Quality, and (5) from the Department of Defense. Exh. A. The agency aggregated these five requests and treated them as one for processing purposes. In each request letter, the Center noted it was "filing this FOIA request as a 'representative of the news media.'" FOIA provides that for a representative of the news media, fees may include duplication charges but not search charges, "when records are not sought for commercial use." 5 U.S.C. § 552(a)(4)(A)(ii). In addition, the Center requested a public-interest fee waiver pursuant to FOIA. 5 U.S.C. § 552(a)(4)(iii). Each request letter included this information: "The Center for Public Integrity is a nonpartisan, nonprofit, investigative reporting organization, based in Washington, D.C., whose mission is to examine and write about public service and ethics-related issues. The International Consortium of Investigative Journalists was created in 1997 as a project of the Center for Public Integrity. For more information on the Center for Public Integrity, ICIJ and their online publication, please refer, respectively, to http://www.publicintegrity.org, http://www.icij.org, and http://www.public-i.org." Exh. A.

By letter to the Center dated October 5, 2006, defendant HHS responded to the Center's FOIA request, denying the fee waiver request and invoicing $6,898.00 for "search costs." This letter did not address the Center's claim that it is a representative of the news media. Exh. B.

By letter to defendant HHS dated October 18, 2006, the Center appealed defendant's response and asked for classification as a representative of the media under FOIA. The Center's appeal noted that a review of the Center's recent publications, at http://www.publicintegrity.org/archives.aspx, would establish the Center's entitlement to this classification. With its appeal letter, the Center supplied a list of 38 major journalism awards it received 1996 through 2006. The appeal letter noted that these awards were "conferred on us by other representatives of the news media who consider us to be one of their own." Exh. C.

On November 30, 2006, HHS requested additional information from the Center (see Exh. G), and the Center responded on December 6, 2006 (see Exh. H).

## ARGUMENT

### I.    STANDARD AND SCOPE OF REVIEW

Summary judgment is appropriate and required when the pleadings and the evidence establish that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. *See* Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

#### A.    *De Novo* **Review Is the Appropriate Standard.**

The Center agrees with HHS (Def.'s Memo, at 8) that the Court must review the agency's determination "de novo, but limited to the record before the agency." Campbell v. U.S. Dep't of Justice, 164 F.3d 20, 35 (D.C. Cir. 1998) (citing 5 U.S.C. § 552(a)(4)(A)(vii). This is the standard applied to determinations of FOIA fee waiver requests and, under the predominant view, also to FOIA fee category determinations. *See* Electronic Privacy Information Center v. Dep't of Defense, 241 F. Supp 2d 5, 8-9 (D.D.C. 2003) (not deciding this issue, but citing

additional cases); and <u>Judicial Watch, Inc. v. U.S. Dep't of Justice</u>, 185 F. Supp. 2d 54, 59 (D.D.C. 2002) (citing additional cases).

     **B.**     <u>**The Administrative Record in This Case Incorporates by Reference Information from Plaintiff's Web Sites.**</u>

The correspondence in the administrative record contains repeated references to information on the Center's Web sites. These sites comprise several distinct domain names, all of which direct visitors to http://www.publicintegrity.org/ or to a subsidiary page within that domain.

In fact, every letter from the Center to HHS – each FOIA request, each administrative appeal, and the Center's response to HHS' request for additional information – asked HHS to consider information on these Web sites.

- The Center's FOIA requests, December 21, 2005, and February 14, 2006, each stated: "For more information on the Center for Public Integrity, ICIJ, and their online publication, please refer, respectively, to http://www.publicintegrity.org, http://www.icij.org, and http://www.public-i.org." Exh. A, at 2; Exh. D, at 2.

- The Center's administrative appeals, May 26, 2006, and October 18, 2006, each stated: "The Center for Public Integrity clearly falls within [the <u>National Security Archive</u> case's] definition [of a representative of the news media], and I invite you to review our recent publications, at http://www.publicintegrity.org/archives.aspx, to satisfy yourself of this fact." Exh. F, at 1-2; Exh. C, at 1.

- The Center's letter dated December 6, 2006, in response to HHS' request for additional information reiterated that the

> appeals letter in each of these cases invited HHS "to review [the Center's] recent publications, at http://www.publicintegrity.org/archives.aspx, to satisfy yourself" that

> the Center falls within [the <u>National Security Archive</u> case's] definition. If you examine the content of those publications, I believe it will be obvious that the Center "gathers information of potential interest to a segment of the public [and] uses its editorial skills to turn the raw materials into [] distinct work[s]" (880 F.2d at 1387). The Web site is the primary means by which the Center "distributes [those] work[s] to an audience." (*Id.*)

Exh. H, at 1.

In addition, the record makes clear that HHS did in fact review information from the Center's Web sites, as HHS wrote:

- "The CPI web site acknowledges that it is a broker of information." (Exh. E, at 2) (not citing a particular Web page); and

- "Please explain what CPI means by the term 'broker of information' in its 2004 Annual Report that appeared on your website. This same characterization as 'broker of information' was used by CPI to describe itself on your website under 'About Us' in March, 2006." (Exh. G, at 2)

Likewise, Defendant's Memorandum (at 14) cites "CPI's statement on its website that it is 'a broker of information.' [sic]"[2]

There is thus no bar to the Court's consideration of information on the Center's Web sites in reviewing HHS' determinations in this case. Plaintiff in this memorandum will make citations to this information, especially to information that was previously specifically called to HHS' attention.[3]

## II.   <u>DEFENDANT'S CONTENTION THAT PLAINTIFF IS A COMMERCIAL INFORMATION BROKER IS MISTAKEN AND WITHOUT FOUNDATION.</u>

---

[2] HHS here misquotes the passage to a slight extent, by omission. Verbatim, the clause reads "the Center serves as an honest broker of information." *See* Exh. H, at 1. HHS could have properly shortened this instead to "a[] broker of information." For discussion of HHS' mistaken interpretation of this passage, see below, at [TK].
[3] Barring technical complications, this filing, in its PDF format, will contain hypertext links to the Web pages cited.

HHS' April 19, 2006, response to the PEPFAR Request contained these surprising

claims:

> The CPI Web site acknowledges that it is a broker of information. Therefore, CPI
> is a secondary contributor, not a primary news-gathering organization. As such,
> your statements are not convincing and do not provide substantial information to
> indicate that release of the information, in this instance, would not further the
> commercial, trade, or profit interests of your organization. After review, I am
> unable to grant your request for fee classification change.

Exh. E, at 2.

The phrase to which HHS referred, "broker of information," was used in the Center's

2004 Annual Report as follows:

> The Center's work is based on the conviction that the public has a right to
> know what its government, public officials and corporate leaders are doing. Its
> mission includes providing the American people with information – often not
> available elsewhere – about how these entities are performing their duties. By
> providing thorough, thoughtful and objective analyses, *the Center serves as an
> honest broker of information*, which in turn helps citizens demand a higher level
> of accountability from their government and elected leaders.

http://www.publicintegrity.org/docs/annualreports/2004_CPI_Annual_Report.pdf, at 1; also

quoted in Exh. H, at 1 (emphasis added). Similar language for a time appeared on the "About

Us" page on the Center's Web site and in several of the Center's news releases.

In context, the Center's claim to serve "as an honest broker of information" undermines

any suggestion of a commercial interest. As the Center found it necessary to explain to HHS

(Exh. H, at 2), an "honest broker" is "[a] neutral agent, as in mediation." *American Heritage

Dictionary* (4th ed. 2004). By providing nonpartisan, objective information to the public, the

Center is furthering its mission, which is "to produce original investigative journalism about

significant public issues to make institutional power more transparent and accountable."

http://www.publicintegrity.org/about/about.aspx?act=mission.

HHS has not pointed to any other evidence or suggestion that the Center has a commercial interest in the subject of its FOIA requests or that it is a commercial broker of information. For example, one would suppose that a commercial information vendor would, on its Web site, provide information to potential customers on how to place orders. HHS cannot point to such information, because there is none. In addition, it seems unlikely that there would be any detectable commercial demand for copies of grants and contracts related to PEPFAR, the subject of the particular FOIA request.

Other than its (mistaken) belief that the Center is a commercial broker of information, HHS has not identified any grounds for judging the Center's statements "not convincing." In the absence of any substantial reason for doubt, the Center's statements in its correspondence with HHS should enjoy a presumption of sincerity. *See*, *e.g.*, National Security Archive v. U.S. Dep't of Defense, 880 F.2d 1381, 1388 (D.C. Cir. 1989) (giving credence to requester's submissions where agency has offered no reason for doubt).

## III.    THE RECORD AMPLY DEMONSTRATES THAT PLAINTIFF IS "A REPRESENTATIVE OF THE NEWS MEDIA."

The Freedom of Information Reform Act of 1986 amended FOIA's fee provisions, providing *inter alia* that each agency must adopt regulations under which "fees shall be limited to reasonable standard charges for document duplication when records are not sought for commercial use and the request is made by … a representative of the news media." 5 U.S.C. § 552(a)(4)(A)(ii)(II). The applicable HHS regulation defines a "[r]epresentative of the news media" as

> a person actively gathering information for an entity organized and operated to publish or broadcast news to the public. News media entities include television and radio broadcasters, publishers of periodicals who distribute their products to the general public or who make their products available for purchase or subscription by the general public, and entities that may disseminate news through

> other media (e.g., electronic dissemination of text). We will treat freelance journalists as representatives of a new media entity if they can show a likelihood of publication through such an entity. A publication contract is such a basis, and the requester's past publication record may show such a basis.

45 C.F.R. § 5.5.

The District of Columbia Circuit has also instructed that, in applying this statute,

> [a] representative of the news media is, in essence, a person or entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience.

National Security Archive v. U.S. Dep't of Defense, 880 F.2d 1381, 1387 (D.C. Cir. 1989).

Under either definition – the regulation or the National Security Archive standard – the Center is a representative of the news media.

### A.    Plaintiff Uses Its Editorial Skills and Resources to Produce Distinct, Original News Reports.

The Center has repeatedly asked HHS to examine the contents of its reports. *See* Exh. C, at 1; Exh. F, at 2; and Exh. H, at 1. HHS has not refused to do so, but neither is there any indication in the record that it has done so. A few examples, the first two selected from the list of award-winning Center reports attached to each administrative appeal (Exhs. C and F), demonstrate that the Center "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." National Security Archive, 880 F.2d at 1387.

- "Windfalls of War," initially comprising seven articles released on October 30, 2003 (*see* http://www.publicintegrity.org/wow/default.aspx?act=archives), reported on the billions of dollars awarded to American companies for reconstruction work in Iraq and Afghanistan. For this project, the Center filed 73 FOIA requests and appeals with the Department of Defense, the Department of State and the U.S. Agency for

International Development. "Methodology,"

http://www.publicintegrity.org/wow/default.aspx?act=methodology. The Center also

compiled the contractors' campaign contributions, lobbying expenditures and

government contracting history at the federal level. *Id.* This project won the George

Polk Award for Internet Reporting in 2004. Exh. C or

http://www.publicintegrity.org/about/about.aspx?act=awards.

- "Personal Politics" (main report at

    http://www.publicintegrity.org/oi/report.aspx?aid=377, with links to subsidiary

    articles), September 24, 2004, analyzed the financial disclosure statements filed by

    6,516 state legislators during 2002, including potential and apparent conflicts of

    interest. In 2005, this report won a Society of Professional Journalists Award for

    Public Service in Online Journalism and an award from the Association of Capitol

    Reporters and Editors for In-Depth Reporting Online. Exh. C or

    http://www.publicintegrity.org/about/about.aspx?act=awards.

- More recently, "Power Trips," initially fifteen reports released during June 2006 (*see*

    http://www.publicintegrity.org/powertrips/ and

    http://www.publicintegrity.org/powertrips/default.aspx?act=archives), examined

    privately funded travel by members of Congress and staffers. The Center, in

    collaboration with two other news organizations, reviewed 30,000 pages of disclosure

    forms, representing about 23,000 trips. *See* "Methodology"

    http://www.publicintegrity.org/powertrips/default.aspx?act=methodology.

Each of these projects had significant data elements. But in addition to assembling the

data into a useful form, the Center also analyzes the data, highlighting the most significant

findings, and conducts additional reporting to explain what the results mean and examine individual cases. This is central to the Center's investigative journalism mission. The reporting evident in these projects is completely inconsistent with HHS' characterization of the Center (Def.'s Memo, at 15) as "a secondary contributor, not a primary news-gathering organization," analogous to "a private library, information vendor or middleman" (citing <u>Judicial Watch, Inc. v. U.S. Dep't of Justice</u>, 185 F. Supp. 2d 54, 59-60 (D.D.C. 2002)).

    **B.**    <u>**Plaintiff's Publishing History Demonstrates That It Is Organized and Operated To Disseminate News to the Public.**</u>

The Center's primary publishing medium is the Internet. Its Web site contains literally hundreds of news reports: 74 released in 2006 (http://www.publicintegrity.org/archives.aspx?year=2006) (48 before the filing of this lawsuit), 72 in 2005 (http://www.publicintegrity.org/archives.aspx?year=2005), and more, extending back to 1997.

Some of these reports, in printed form, can be purchased from the Center, as can additional short reports (primarily from 1998 and earlier) and several books. http://store.publicintegrity.org/ecom/store/. *The Buying of the President 2004* was a *New York Times* bestseller for several weeks and is sold through major booksellers. http://store.publicintegrity.org/ecom/store/default.aspx?act=details&type=book&iID=55.

The Center notifies subscribers about its reports through free e-mail newsletters (*see* http://ga6.org/publicintegrity/join.html) and through a printed newsletter (http://www.publicintegrity.org/about/publici.aspx) mailed to donating members.

In examining the legislative history of the 1986 amendments, the District of Columbia Circuit cited with approval statements by Congressional sponsors that "[i]n fact, any person or organization or organization which regularly publishes or disseminates information to the public

… should qualify for waivers as a 'representative of the news media'" and that "[a] request by a reporter or other person affiliated with a newspaper, magazine, television or radio station, or other entity that is in the business of publishing or otherwise disseminating information to the public qualifies under this provision." <u>National Security Archive v. U.S. Dep't of Defense</u>, 880 F.2d 1381, 1386 (D.C. Cir. 1989) (quoting 132 Cong. Rec. S14298 (daily ed. Sept. 30, 1986) and 132 Cong. Rec. H9463 (Oct. 8, 1986)) (the court's added emphasis removed). The Center regularly disseminates information to the public as part of its "business" or mission.

Like the plaintiffs in <u>National Security Archive</u> and <u>Electronic Privacy Information Center v. Dep't of Defense</u>, 241 F. Supp 2d 5 (D.D.C. 2003), the Center is a nonprofit organization. As outlined in the paragraphs just above, the Center's publishing record is at least as substantial as that which qualified the Electronic Privacy Information Center as a representative of the news media, which, in turn, "far surpasse[d] the publishing plan that was, standing alone, sufficient in <u>National Security Archive</u> to conclude" that the Archive was entitled to news media status. <u>Electronic Privacy Information Center</u>, 241 F. Supp. 2d at 12.

**C.      Plaintiff is Under No Obligation To Detail Its Future Publishing Plans, When It Has Demonstrated Its Entitlement to Media Status by Other Means.**

HHS' letter to the Center dated November 30, 2006, included several questions about the Center's future intentions, including "What does CPI intend to do with the records that are requested under the two FOIA requests at issue[?]" Exh. G, at 2. The Center declined to answer in any great detail. *See* Exh. H.[4]

---

[4] The Center resists answering such questions for reasons of principle. A fundamental purpose of FOIA, to "check against corruption and to hold the governors accountable to the governed" (<u>Multnomah County Med. Soc'y v. Scott</u>, 825 F.2d 1410, 1415 (9th Cir. 1987) (quoting <u>NLRB v. Robbins Tire & Rubber Co.</u>, 437 U.S. 214, 242 (1978)), would likely be impaired if government agencies succeed in demands to be informed in advance of any investigation that members of the news media decide to undertake. FOIA represents the right of the public to receive information from the government, not the other way around.

HHS now argues that, to receive media status, a requester must demonstrate a "firm intention" to publish the requested information, by "indicat[ing] the precise sources it intended to consult … when the information would be published and in what precise form." Def.'s Memo, at 12. In citing <u>National Security Archive</u> for this proposition, HHS misunderstands the court's reasoning. There, the District of Columbia Circuit said, "The Archive *has previously published only one book* … but it has expressed a firm intention … to publish a number of what it refers to as 'document sets.'" 880 F.2d at 1386 (emphasis added). The court was clarifying that an entity not already established as a representative of the news media must be allowed to demonstrate its intentions and plans for disseminating the requested information. If specifying a plan for future publication were a uniform requirement, it would be irrelevant that the requester already "*regularly* publishes or disseminates information to the public" or "is *in the business* of publishing or otherwise disseminating information to the public." 132 Cong. Rec. S14298 (daily ed. Sept. 30, 1986) and 132 Cong. Rec. H9463 (Oct. 8, 1986) (emphasis added) (quoted with approval in <u>National Security Archive</u>, 880 F.2d at 1386). Rather, these are alternate paths or conditions for receiving recognition as a representative of the news media.

HHS also cites <u>Judicial Watch, Inc. v. U.S. Dep't of Justice</u>, Civ. A. No. 99-2315 (D.D.C. Aug. 17, 2000), in support of its position. There, the Court noted, "Rather than provide a precise plan outlining its publication intentions, Judicial Watch simply expressed a broad intent to publish works similar to *the single previous report* it described in its administrative appeals." Slip op. at 7 (emphasis added). As in <u>National Security Archive</u>, Judicial Watch had no significant publishing record to rely on as an alternative to "precise[ly] outlining its publication intentions."

A further citation of <u>Judicial Watch</u> in Defendant's Memorandum wrenches a passage completely out of its context, with misleading effect. The cited section of the opinion discusses Judicial Watch's request for a "public interest" waiver of all fees pursuant to 5 U.S.C. § 552(a)(4)(A)(iii), noting that a requester's "past record … is simply irrelevant [because] [u]nder FOIA, the analysis focuses on the subject and impact of the particular disclosure, not the record of the requesting party." Slip op., at 9, as quoted in Def.'s Memo, at 13-14. Defendant's Memorandum strongly suggests that this passage applies to a request for news media status, but the legal standard for a public interest waiver is completely inapplicable here.[5]

In contrast to HHS' suggestion that a requester's history is irrelevant, this Court in <u>Electronic Privacy Information Center</u> noted seven books previously produced by that plaintiff and found that "EPIC's publication and sale of numerous books in the areas of privacy and civil liberties qualify it as 'a representative of the news media.'" 241 F. Supp. 2d at 12. EPIC's future publishing plan was far from specific; it had stated:

> EPIC publishes a biweekly electronic newsletter, issues regular public reports and analyses, and maintains a free online electronic library. EPIC staff members are also regular contributors to numerous newspapers, newsletters, magazines, and law reviews. Any information that is obtained as a result of this request will be disseminated through these publications and others.

*Id.* at 7. The Center has made a somewhat similar statement in this case:

> The Center intends to use the requested records in the conduct of its investigative journalism mission. The Center plans to use the requested records in creating "distinct works" of a character similar to the hundreds of reports it has created since its formation in 1989. The Center plans to distribute those "distinct works" as it has distributed all its reports, by publication on its Web site and/or in printed form (e.g., newsletter, pamphlet or book).

Exh. H, at 2.

---

[5] The Center included a request for a public interest waiver in each of its initial FOIA requests (Exhs. A and D) but chose to appeal only the denial of news media status (Exhs. C and F).

The Center for Public Integrity has made as strong a case as did EPIC for news media status, if not stronger. HHS' refusal to recognize the Center as a representative of the news media is without any reasonable basis and must be overturned.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Summary Judgment should be granted and Defendant's Motion should be denied.

Respectfully submitted,


_____/s/_____
Peter Newbatt Smith
D.C. Bar #458244
Center for Public Integrity
910 17th Street, N.W., 7th Floor
Washington, DC 20006-2606
202-481-1239
psmith@publicintegrity.org

Attorney for Plaintiff

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

Center for Public Integrity,        |

           |

        Plaintiff,         |

           |

v.                   |    Civil Action No. 06-1818 (JDB)

           |    ECF

U.S. Department of Health and Human Services,|

           |

        Defendant.      |

## [PROPOSED] ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

Upon consideration of the parties cross-motions for summary judgment, the memoranda of the parties, and the entire record herein, it is hereby

ORDERED that Defendant's Motion for Summary Judgment is hereby DENIED; further

ORDERED that Plaintiff's Motion for Summary Judgment is hereby GRANTED; and further

ORDERED that the Department of Health and Human Services must classify Plaintiff as a "representative of the news media" for preferred fee status under the Freedom of Information Act ("FOIA") with respect to the FOIA requests that Plaintiff submitted on December 21, 2005, and February 14, 2006.

IT IS SO ORDERED on this _____ day of _____, 2007.


_____
John D. Bates
United States District Judge

# EXHIBIT A

December 21, 2005

Lynn Armstrong
FOIA Officer
FOI Office, MS-D54
CDC/ATSDR
1600 Clifton Road, N.E.
Atlanta, GA 30333

Dear Ms. Armstrong:

This is a request under the **Federal Freedom of Information Act** (FOIA), the First Amendment to the United States Constitution, the common law of the United States, the Privacy Act (5 U.S.C.) section 552a, and any statue providing for public access to government information:

I request that I be sent copies of the following documents or, if there is a large number, be permitted to inspect the following documents:

**A copy of any and all log(s) of correspondences that include letters from members of Congress and the general public from January 1, 2000 through December 31, 2005 to the Agency for Toxic Substances and Disease Registry. If these logs or records exist electronically, please make us a copy of the data instead of paper copies.**

If possible, I would prefer to receive the largest number of records or documents in electronic form.

I am filing this FOIA request as a "representative of the news media," which both the Department of State and the Central Intelligence Agency have granted members of my organization in previous FOIA searches of their archives. This designation entitles me to a waiver of fees accumulated during the actual search and review process. However, if your agency does determine that I should be charged for any part of this request, please contact me before any searches reach an estimate cost of $25.

The Center for Public Integrity is a nonpartisan, nonprofit investigative reporting organization, based in Washington, D.C., whose mission is to examine and write about public service and ethics-related issues.  The International Consortium of Investigative Journalists was created in 1997 as a project of the Center for Public Integrity. For more information on the Center for Public Integrity, ICIJ, and their online publication, please refer, respectively, to

http://www.publicintegrity.org, http://www.icij.org, and http://www.public-i.org.

In reference to our request I have provided the following information addressing the points listed in the Department of Justice's FOIA Guide, 2002 Edition: Fees and Fee Waivers, as found online at http://www.usdoj.gov/oip/fees.htm.

**1**. The content from these contracts "is likely to contribute" to the understanding of your agency to the common reader. Our research would not be possible without the specific content garnered by the release of the requested information. Prior to any action on this FOIA request, this information is not in the public domain.

**2**. Due to the nature of our organization, the Center for Public Integrity, the disclosure under our FOIA request will "contribute to the understanding of the public at large." The information will be posted to our newsletter, *The Public i* and on our website, www.publicintegrity.org, and will be read by a large number of people. We expect the information produced through this and other FOIA requests to serve as the basis for several press releases and articles that explain the actions and operations of government to the general public. Similar stories we have written in the past have increased the understanding of an issue by a large percentages of the public. For example, our organization posted the first stories about the "Lincoln Bedroom" scandal under the Clinton administration, and now the general public knows that campaign contributors to the Democratic Party were allowed to stay at the White House. Other stories, including the Center's exclusive release of Securities and Exchange Commission Records pertaining to President Bush's sale of Harken stock and Vice President Cheney's connections to the Halliburton Corporation have similarly informed the public.

**3.** In addition to publishing the information on our website, relevant information from this FOIA request will also be distributed to the general public via major news organizations. Among the news organizations that referred to our reports during a recent time period are: CBS, NBC, CNN, NPR, U.S. News & World Report, AP, AFP, Reuters, Knight Ridder, Cox News, New York Times, Washington Post, Los Angeles Times, USA Today, Dallas Morning News, Houston Chronicle, Austin American Statesman, Chicago Tribune, Philadelphia Inquirer, Christian Science Monitor, Atlanta Journal & Constitution, San Francisco Chronicle and the Seattle Times. International newspapers such as The Gazette (Montreal), Daily Telegraph (London), The Guardian, Irish Times, Scotland on Sunday and Hong Kong Mail have also cited the Center reports during a recent time period. We expect that information provided through this FOIA request will similarly result in reporting featured by such national and global news organizations.

The Center for Public Integrity also possesses the skills necessary to process the requested information. We are investigative journalists. We write and post an online newsletter. Other members of the media consider us to be news organization as evidenced by our numerous awards over the years from the Society of Professional Journalists and the Investigative Reporters and Editors Inc. Additionally, many federal agencies have deemed the Center for Public Integrity to be news media for FOIA requests.

**4**. The disclosures we requested through the Freedom of Information Act do not primarily serve any "commercial interest." Any data derived from our request will be used primarily to educate the public and will be distributed freely. As described in section (3), we represent the news media and plan to distribute this information to the public.

**5**. In reference to any "commercial interest," we do not have any. Almost all of our money comes from grants and donations. The Center for Public Integrity is a non-profit. Almost all of the publications by the Center are made available without charge.

As I am sure you are aware, the Freedom of Information Act, under 32 C.F. R. 806, requires that if part of a record is exempt from disclosure, you must redact and release all segregated parts. Please describe the deleted material in detail and specify the reasons for believing that the alleged statutory justification applies in this instance.

I look forward to your decision on our expedited review request within five days, and on granting or denying our request within 20 days as outlined by the statute. Do contact me by telephone or e-mail if you have any questions regarding this request or recommendations on how to streamline or revise it. If my request is denied in whole or in part, please specify which exemption(s) is (are) claimed for each passage or whole document denied. In addition, please give the number of pages in each document and the total number of pages pertaining to this request and the dates of the documents withheld. Please provide copies of any logs, internal tracking numbers or other file-tracking device or system of documents in existence but denied disclosure. Such statements will be helpful in deciding whether to appeal an adverse determination.

I appreciate your attention to this and expect, as the FOIA provides, to hear from your office within 20 days. If you have any questions about the nature or scope of this request, please call me at: 202-481-1203.

Sincerely,


Kevin Bogardus

Reporter
Center for Public Integrity
910 17th Street, NW, 7th Floor
Washington, DC 20006
202-481-1203
kbogardus@publicintegrity.org

December 21, 2005

Lynn Armstrong
FOIA Officer
FOI Office, MS-D54
CDC/ATSDR
1600 Clifton Road, N.E.
Atlanta, GA 30333

Dear Ms. Armstrong:

This is a request under the **Federal Freedom of Information Act** (FOIA), the First Amendment to the United States Constitution, the common law of the United States, the Privacy Act (5 U.S.C.) section 552a, and any statue providing for public access to government information:

I request that I be sent copies of the following documents or, if there is a large number, be permitted to inspect the following documents:

**A copy of any and all log(s) of correspondences that include letters from the Department of Defense from January 1, 2000 through December 31, 2005 to the Agency for Toxic Substances and Disease Registry. If these logs or records exist electronically, please make us a copy of the data instead of paper copies.**

If possible, I would prefer to receive the largest number of records or documents in electronic form.

I am filing this FOIA request as a "representative of the news media," which both the Department of State and the Central Intelligence Agency have granted members of my organization in previous FOIA searches of their archives. This designation entitles me to a waiver of fees accumulated during the actual search and review process. However, if your agency does determine that I should be charged for any part of this request, please contact me before any searches reach an estimate cost of $25.

The Center for Public Integrity is a nonpartisan, nonprofit investigative reporting organization, based in Washington, D.C., whose mission is to examine and write about public service and ethics-related issues.  The International Consortium of Investigative Journalists was created in 1997 as a project of the Center for Public Integrity. For more information on the Center for Public Integrity, ICIJ, and their online publication, please refer, respectively, to

http://www.publicintegrity.org, http://www.icij.org, and http://www.public-i.org.

In reference to our request I have provided the following information addressing the points listed in the Department of Justice's FOIA Guide, 2002 Edition: Fees and Fee Waivers, as found online at http://www.usdoj.gov/oip/fees.htm.

**1**. The content from these contracts "is likely to contribute" to the understanding of your agency to the common reader.  Our research would not be possible without the specific content garnered by the release of the requested information. Prior to any action on this FOIA request, this information is not in the public domain.

**2**. Due to the nature of our organization, the Center for Public Integrity, the disclosure under our FOIA request will "contribute to the understanding of the public at large."  The information will be posted to our newsletter, *The Public i* and on our website, www.publicintegrity.org, and will be read by a large number of people. We expect the information produced through this and other FOIA requests to serve as the basis for several press releases and articles that explain the actions and operations of government to the general public. Similar stories we have written in the past have increased the understanding of an issue by a large percentages of the public.  For example, our organization posted the first stories about the "Lincoln Bedroom" scandal under the Clinton administration, and now the general public knows that campaign contributors to the Democratic Party were allowed to stay at the White House. Other stories, including the Center's exclusive release of Securities and Exchange Commission Records pertaining to President Bush's sale of Harken stock and Vice President Cheney's connections to the Halliburton Corporation have similarly informed the public.

**3.** In addition to publishing the information on our website, relevant information from this FOIA request will also be distributed to the general public via major news organizations. Among the news organizations that referred to our reports during a recent time period are: CBS, NBC, CNN, NPR, U.S. News & World Report, AP, AFP, Reuters, Knight Ridder, Cox News, New York Times, Washington Post, Los Angeles Times, USA Today, Dallas Morning News, Houston Chronicle, Austin American Statesman, Chicago Tribune, Philadelphia Inquirer, Christian Science Monitor, Atlanta Journal & Constitution, San Francisco Chronicle and the Seattle Times. International newspapers such as The Gazette (Montreal), Daily Telegraph (London), The Guardian, Irish Times, Scotland on Sunday and Hong Kong Mail have also cited the Center reports during a recent time period. We expect that information provided through this FOIA request will similarly result in reporting featured by such national and global news organizations.

The Center for Public Integrity also possesses the skills necessary to process the requested information. We are investigative journalists. We write and post an online newsletter. Other members of the media consider us to be news organization as evidenced by our numerous awards over the years from the Society of Professional Journalists and the Investigative Reporters and Editors Inc. Additionally, many federal agencies have deemed the Center for Public Integrity to be news media for FOIA requests.

**4**. The disclosures we requested through the Freedom of Information Act do not primarily serve any "commercial interest." Any data derived from our request will be used primarily to educate the public and will be distributed freely. As described in section (3), we represent the news media and plan to distribute this information to the public.

**5**. In reference to any "commercial interest," we do not have any. Almost all of our money comes from grants and donations. The Center for Public Integrity is a non-profit. Almost all of the publications by the Center are made available without charge.

As I am sure you are aware, the Freedom of Information Act, under 32 C.F. R. 806, requires that if part of a record is exempt from disclosure, you must redact and release all segregated parts. Please describe the deleted material in detail and specify the reasons for believing that the alleged statutory justification applies in this instance.

I look forward to your decision on our expedited review request within five days, and on granting or denying our request within 20 days as outlined by the statute. Do contact me by telephone or e-mail if you have any questions regarding this request or recommendations on how to streamline or revise it. If my request is denied in whole or in part, please specify which exemption(s) is (are) claimed for each passage or whole document denied. In addition, please give the number of pages in each document and the total number of pages pertaining to this request and the dates of the documents withheld.  Please provide copies of any logs, internal tracking numbers or other file-tracking device or system of documents in existence but denied disclosure. Such statements will be helpful in deciding whether to appeal an adverse determination.

I appreciate your attention to this and expect, as the FOIA provides, to hear from your office within 20 days.  If you have any questions about the nature or scope of this request, please call me at: 202-481-1203.

Sincerely,


Kevin Bogardus

Reporter
Center for Public Integrity
910 17th Street, NW, 7th Floor
Washington, DC 20006
202-481-1203
kbogardus@publicintegrity.org

December 21, 2005

Lynn Armstrong
FOIA Officer
FOI Office, MS-D54
CDC/ATSDR
1600 Clifton Road, N.E.
Atlanta, GA 30333

Dear Ms. Armstrong:

This is a request under the **Federal Freedom of Information Act** (FOIA), the First Amendment to the United States Constitution, the common law of the United States, the Privacy Act (5 U.S.C.) section 552a, and any statue providing for public access to government information:

I request that I be sent copies of the following documents or, if there is a large number, be permitted to inspect the following documents:

**A copy of electronic data or paper records detailing non-governmental sponsored trips disclosed as "Semiannual Reports of Payment Accepted from Non-Federal Sources Under 31 U.S.C." for the Agency for Toxic Substances and Disease Registry, starting from January 1, 1998 to December 31, 2005.**

If possible, I would prefer to receive the largest number of records or documents in electronic form.

I am filing this FOIA request as a "representative of the news media," which both the Department of State and the Central Intelligence Agency have granted members of my organization in previous FOIA searches of their archives. This designation entitles me to a waiver of fees accumulated during the actual search and review process. However, if your agency does determine that I should be charged for any part of this request, please contact me before any searches reach an estimate cost of $25.

The Center for Public Integrity is a nonpartisan, nonprofit investigative reporting organization, based in Washington, D.C., whose mission is to examine and write about public service and ethics-related issues. The International Consortium of Investigative Journalists was created in 1997 as a project of the Center for Public Integrity. For more information on the Center for Public Integrity, ICIJ, and their online publication, please refer, respectively, to

http://www.publicintegrity.org, http://www.icij.org, and http://www.public-i.org.

In reference to our request I have provided the following information addressing the points listed in the Department of Justice's FOIA Guide, 2002 Edition: Fees and Fee Waivers, as found online at http://www.usdoj.gov/oip/fees.htm.

**1**. The content from these contracts "is likely to contribute" to the understanding of your agency to the common reader.  Our research would not be possible without the specific content garnered by the release of the requested information. Prior to any action on this FOIA request, this information is not in the public domain.

**2**. Due to the nature of our organization, the Center for Public Integrity, the disclosure under our FOIA request will "contribute to the understanding of the public at large."  The information will be posted to our newsletter, *The Public i* and on our website, www.publicintegrity.org, and will be read by a large number of people. We expect the information produced through this and other FOIA requests to serve as the basis for several press releases and articles that explain the actions and operations of government to the general public. Similar stories we have written in the past have increased the understanding of an issue by a large percentages of the public.  For example, our organization posted the first stories about the "Lincoln Bedroom" scandal under the Clinton administration, and now the general public knows that campaign contributors to the Democratic Party were allowed to stay at the White House. Other stories, including the Center's exclusive release of Securities and Exchange Commission Records pertaining to President Bush's sale of Harken stock and Vice President Cheney's connections to the Halliburton Corporation have similarly informed the public.

**3.** In addition to publishing the information on our website, relevant information from this FOIA request will also be distributed to the general public via major news organizations. Among the news organizations that referred to our reports during a recent time period are: CBS, NBC, CNN, NPR, U.S. News & World Report, AP, AFP, Reuters, Knight Ridder, Cox News, New York Times, Washington Post, Los Angeles Times, USA Today, Dallas Morning News, Houston Chronicle, Austin American Statesman, Chicago Tribune, Philadelphia Inquirer, Christian Science Monitor, Atlanta Journal & Constitution, San Francisco Chronicle and the Seattle Times. International newspapers such as The Gazette (Montreal), Daily Telegraph (London), The Guardian, Irish Times, Scotland on Sunday and Hong Kong Mail have also cited the Center reports during a recent time period. We expect that information provided through this FOIA request will similarly result in reporting featured by such national and global news organizations.

The Center for Public Integrity also possesses the skills necessary to process the requested information. We are investigative journalists. We write and post an online newsletter. Other members of the media consider us to be news organization as evidenced by our numerous awards over the years from the Society of Professional Journalists and the Investigative Reporters and Editors Inc. Additionally, many federal agencies have deemed the Center for Public Integrity to be news media for FOIA requests.

**4**. The disclosures we requested through the Freedom of Information Act do not primarily serve any "commercial interest." Any data derived from our request will be used primarily to educate the public and will be distributed freely. As described in section (3), we represent the news media and plan to distribute this information to the public.

**5**. In reference to any "commercial interest," we do not have any. Almost all of our money comes from grants and donations. The Center for Public Integrity is a non-profit. Almost all of the publications by the Center are made available without charge.

As I am sure you are aware, the Freedom of Information Act, under 32 C.F. R. 806, requires that if part of a record is exempt from disclosure, you must redact and release all segregated parts. Please describe the deleted material in detail and specify the reasons for believing that the alleged statutory justification applies in this instance.

I look forward to your decision on our expedited review request within five days, and on granting or denying our request within 20 days as outlined by the statute. Do contact me by telephone or e-mail if you have any questions regarding this request or recommendations on how to streamline or revise it. If my request is denied in whole or in part, please specify which exemption(s) is (are) claimed for each passage or whole document denied. In addition, please give the number of pages in each document and the total number of pages pertaining to this request and the dates of the documents withheld.  Please provide copies of any logs, internal tracking numbers or other file-tracking device or system of documents in existence but denied disclosure. Such statements will be helpful in deciding whether to appeal an adverse determination.

I appreciate your attention to this and expect, as the FOIA provides, to hear from your office within 20 days.  If you have any questions about the nature or scope of this request, please call me at: 202-481-1203.

Sincerely,


Kevin Bogardus

Reporter
Center for Public Integrity
910 17th Street, NW, 7th Floor
Washington, DC 20006
202-481-1203
kbogardus@publicintegrity.org

December 21, 2005

Lynn Armstrong
FOIA Officer
FOI Office, MS-D54
CDC/ATSDR
1600 Clifton Road, N.E.
Atlanta, GA 30333

Dear Ms. Armstrong:

This is a request under the **Federal Freedom of Information Act** (FOIA), the First Amendment to the United States Constitution, the common law of the United States, the Privacy Act (5 U.S.C.) section 552a, and any statue providing for public access to government information:

I request that I be sent copies of the following documents or, if there is a large number, be permitted to inspect the following documents:

**A copy of any and all log(s) of correspondences that include letters from the Environmental Protection Agency from January 1, 2000 through December 31, 2005 to the Agency for Toxic Substances and Disease Registry. If these logs or records exist electronically, please make us a copy of the data instead of paper copies.**

If possible, I would prefer to receive the largest number of records or documents in electronic form.

I am filing this FOIA request as a "representative of the news media," which both the Department of State and the Central Intelligence Agency have granted members of my organization in previous FOIA searches of their archives. This designation entitles me to a waiver of fees accumulated during the actual search and review process. However, if your agency does determine that I should be charged for any part of this request, please contact me before any searches reach an estimate cost of $25.

The Center for Public Integrity is a nonpartisan, nonprofit investigative reporting organization, based in Washington, D.C., whose mission is to examine and write about public service and ethics-related issues.  The International Consortium of Investigative Journalists was created in 1997 as a project of the Center for Public Integrity. For more information on the Center for Public Integrity, ICIJ, and their online publication, please refer, respectively, to

http://www.publicintegrity.org, http://www.icij.org, and http://www.public-i.org.

In reference to our request I have provided the following information addressing the points listed in the Department of Justice's FOIA Guide, 2002 Edition: Fees and Fee Waivers, as found online at http://www.usdoj.gov/oip/fees.htm.

**1**. The content from these contracts "is likely to contribute" to the understanding of your agency to the common reader. Our research would not be possible without the specific content garnered by the release of the requested information. Prior to any action on this FOIA request, this information is not in the public domain.

**2**. Due to the nature of our organization, the Center for Public Integrity, the disclosure under our FOIA request will "contribute to the understanding of the public at large." The information will be posted to our newsletter, *The Public i* and on our website, www.publicintegrity.org, and will be read by a large number of people. We expect the information produced through this and other FOIA requests to serve as the basis for several press releases and articles that explain the actions and operations of government to the general public. Similar stories we have written in the past have increased the understanding of an issue by a large percentages of the public. For example, our organization posted the first stories about the "Lincoln Bedroom" scandal under the Clinton administration, and now the general public knows that campaign contributors to the Democratic Party were allowed to stay at the White House. Other stories, including the Center's exclusive release of Securities and Exchange Commission Records pertaining to President Bush's sale of Harken stock and Vice President Cheney's connections to the Halliburton Corporation have similarly informed the public.

**3.** In addition to publishing the information on our website, relevant information from this FOIA request will also be distributed to the general public via major news organizations. Among the news organizations that referred to our reports during a recent time period are: CBS, NBC, CNN, NPR, U.S. News & World Report, AP, AFP, Reuters, Knight Ridder, Cox News, New York Times, Washington Post, Los Angeles Times, USA Today, Dallas Morning News, Houston Chronicle, Austin American Statesman, Chicago Tribune, Philadelphia Inquirer, Christian Science Monitor, Atlanta Journal & Constitution, San Francisco Chronicle and the Seattle Times. International newspapers such as The Gazette (Montreal), Daily Telegraph (London), The Guardian, Irish Times, Scotland on Sunday and Hong Kong Mail have also cited the Center reports during a recent time period. We expect that information provided through this FOIA request will similarly result in reporting featured by such national and global news organizations.

The Center for Public Integrity also possesses the skills necessary to process the requested information. We are investigative journalists. We write and post an online newsletter. Other members of the media consider us to be news organization as evidenced by our numerous awards over the years from the Society of Professional Journalists and the Investigative Reporters and Editors Inc. Additionally, many federal agencies have deemed the Center for Public Integrity to be news media for FOIA requests.

**4**. The disclosures we requested through the Freedom of Information Act do not primarily serve any "commercial interest." Any data derived from our request will be used primarily to educate the public and will be distributed freely. As described in section (3), we represent the news media and plan to distribute this information to the public.

**5**. In reference to any "commercial interest," we do not have any. Almost all of our money comes from grants and donations. The Center for Public Integrity is a non-profit. Almost all of the publications by the Center are made available without charge.

As I am sure you are aware, the Freedom of Information Act, under 32 C.F. R. 806, requires that if part of a record is exempt from disclosure, you must redact and release all segregated parts. Please describe the deleted material in detail and specify the reasons for believing that the alleged statutory justification applies in this instance.

I look forward to your decision on our expedited review request within five days, and on granting or denying our request within 20 days as outlined by the statute. Do contact me by telephone or e-mail if you have any questions regarding this request or recommendations on how to streamline or revise it. If my request is denied in whole or in part, please specify which exemption(s) is (are) claimed for each passage or whole document denied. In addition, please give the number of pages in each document and the total number of pages pertaining to this request and the dates of the documents withheld.  Please provide copies of any logs, internal tracking numbers or other file-tracking device or system of documents in existence but denied disclosure. Such statements will be helpful in deciding whether to appeal an adverse determination.

I appreciate your attention to this and expect, as the FOIA provides, to hear from your office within 20 days.  If you have any questions about the nature or scope of this request, please call me at: 202-481-1203.

Sincerely,


Kevin Bogardus

Reporter
Center for Public Integrity
910 17th Street, NW, 7th Floor
Washington, DC 20006
202-481-1203
kbogardus@publicintegrity.org

December 21, 2005

Lynn Armstrong
FOIA Officer
FOI Office, MS-D54
CDC/ATSDR
1600 Clifton Road, N.E.
Atlanta, GA 30333

Dear Ms. Armstrong:

This is a request under the **Federal Freedom of Information Act** (FOIA), the First Amendment to the United States Constitution, the common law of the United States, the Privacy Act (5 U.S.C.) section 552a, and any statue providing for public access to government information:

I request that I be sent copies of the following documents or, if there is a large number, be permitted to inspect the following documents:

**A copy of any and all log(s) of correspondences that include letters from the White House Council on Environmental Quality from January 1, 2000 through December 31, 2005 to the Agency for Toxic Substances and Disease Registry. If these logs or records exist electronically, please make us a copy of the data instead of paper copies.**

If possible, I would prefer to receive the largest number of records or documents in electronic form.

I am filing this FOIA request as a "representative of the news media," which both the Department of State and the Central Intelligence Agency have granted members of my organization in previous FOIA searches of their archives. This designation entitles me to a waiver of fees accumulated during the actual search and review process. However, if your agency does determine that I should be charged for any part of this request, please contact me before any searches reach an estimate cost of $25.

The Center for Public Integrity is a nonpartisan, nonprofit investigative reporting organization, based in Washington, D.C., whose mission is to examine and write about public service and ethics-related issues.  The International Consortium of Investigative Journalists was created in 1997 as a project of the Center for Public Integrity. For more information on the Center for Public Integrity, ICIJ, and their online publication, please refer, respectively, to

http://www.publicintegrity.org, http://www.icij.org, and http://www.public-i.org.

In reference to our request I have provided the following information addressing the points listed in the Department of Justice's FOIA Guide, 2002 Edition: Fees and Fee Waivers, as found online at http://www.usdoj.gov/oip/fees.htm.

**1**. The content from these contracts "is likely to contribute" to the understanding of your agency to the common reader.  Our research would not be possible without the specific content garnered by the release of the requested information. Prior to any action on this FOIA request, this information is not in the public domain.

**2**. Due to the nature of our organization, the Center for Public Integrity, the disclosure under our FOIA request will "contribute to the understanding of the public at large."  The information will be posted to our newsletter, *The Public i* and on our website, www.publicintegrity.org, and will be read by a large number of people. We expect the information produced through this and other FOIA requests to serve as the basis for several press releases and articles that explain the actions and operations of government to the general public. Similar stories we have written in the past have increased the understanding of an issue by a large percentages of the public.  For example, our organization posted the first stories about the "Lincoln Bedroom" scandal under the Clinton administration, and now the general public knows that campaign contributors to the Democratic Party were allowed to stay at the White House. Other stories, including the Center's exclusive release of Securities and Exchange Commission Records pertaining to President Bush's sale of Harken stock and Vice President Cheney's connections to the Halliburton Corporation have similarly informed the public.

**3.** In addition to publishing the information on our website, relevant information from this FOIA request will also be distributed to the general public via major news organizations. Among the news organizations that referred to our reports during a recent time period are: CBS, NBC, CNN, NPR, U.S. News & World Report, AP, AFP, Reuters, Knight Ridder, Cox News, New York Times, Washington Post, Los Angeles Times, USA Today, Dallas Morning News, Houston Chronicle, Austin American Statesman, Chicago Tribune, Philadelphia Inquirer, Christian Science Monitor, Atlanta Journal & Constitution, San Francisco Chronicle and the Seattle Times. International newspapers such as The Gazette (Montreal), Daily Telegraph (London), The Guardian, Irish Times, Scotland on Sunday and Hong Kong Mail have also cited the Center reports during a recent time period. We expect that information provided through this FOIA request will similarly result in reporting featured by such national and global news organizations.

The Center for Public Integrity also possesses the skills necessary to process the requested information. We are investigative journalists. We write and post an online newsletter. Other members of the media consider us to be news organization as evidenced by our numerous awards over the years from the Society of Professional Journalists and the Investigative Reporters and Editors Inc. Additionally, many federal agencies have deemed the Center for Public Integrity to be news media for FOIA requests.

**4**. The disclosures we requested through the Freedom of Information Act do not primarily serve any "commercial interest." Any data derived from our request will be used primarily to educate the public and will be distributed freely. As described in section (3), we represent the news media and plan to distribute this information to the public.

**5**. In reference to any "commercial interest," we do not have any. Almost all of our money comes from grants and donations. The Center for Public Integrity is a non-profit. Almost all of the publications by the Center are made available without charge.

As I am sure you are aware, the Freedom of Information Act, under 32 C.F. R. 806, requires that if part of a record is exempt from disclosure, you must redact and release all segregated parts. Please describe the deleted material in detail and specify the reasons for believing that the alleged statutory justification applies in this instance.

I look forward to your decision on our expedited review request within five days, and on granting or denying our request within 20 days as outlined by the statute. Do contact me by telephone or e-mail if you have any questions regarding this request or recommendations on how to streamline or revise it. If my request is denied in whole or in part, please specify which exemption(s) is (are) claimed for each passage or whole document denied. In addition, please give the number of pages in each document and the total number of pages pertaining to this request and the dates of the documents withheld.  Please provide copies of any logs, internal tracking numbers or other file-tracking device or system of documents in existence but denied disclosure. Such statements will be helpful in deciding whether to appeal an adverse determination.

I appreciate your attention to this and expect, as the FOIA provides, to hear from your office within 20 days.  If you have any questions about the nature or scope of this request, please call me at: 202-481-1203.

Sincerely,


Kevin Bogardus

Reporter
Center for Public Integrity
910 17th Street, NW, 7th Floor
Washington, DC 20006
202-481-1203
kbogardus@publicintegrity.org

# EXHIBIT B



**DEPARTMENT OF HEALTH & HUMAN SERVICES**                    Public Health Service

Centers for Disease Control
and Prevention
October 5, 2006

Kevin Bogardus
Reporter
Center for Public Integrity
910 17th Street, N.W., 7th Floor
Washington, DC 20006

Dear Mr. Bogardus:

This letter is another interim response to your Freedom of Information Act (FOIA)
requests of December 21.

We have carefully considered your request for a fee waiver but do not believe you meet
the criteria as set forth in the Department of Justice FOIA Reference Guide, or the
Department's implementing regulations at 45 CFR Part 5.45, therefore, we are denying
your request.

You have the right to appeal this decision. Should you wish to do so, send your appeal,
within 30 days from the date you receive this letter, to the Deputy Assistant Secretary for
Public Affairs (Media), U.S. Department of Health and Human Services, Room 17A-46,
5600 Fishers Lane, Rockville, Maryland 20857. **Please mark both your appeal letter
and envelope "FOIA Appeal."**

As stated in our January 6 correspondence to you, we are aggregating your requests
numbered 06-0219 through 06-0223. Program officials stated that the estimated cost to
process your requests is $6,898.00 (see enclosed invoice). In accordance with the
Department's implementing regulations, 45 CFR Part 5, all charges over $5.00 must be
paid in advance. Mailing instructions are on the invoice; incorrectly addressed payments
will delay processing. Upon receipt of your check, we will complete processing your
request.

**If we do not hear from you within thirty days, we will assume you are no longer
interested in receiving these records and will consider your requests withdrawn.**

Sincerely yours,

*Nelda Robinson*

Lynn Armstrong
CDC/ATSDR FOIA Officer
Office of the Chief of Staff
(404) 639-7270
Fax: (404) 639-7395

Enclosure

| Case No.:<br>06-0219,0220,0221,0222,0223 | **Invoice of Fees for**<br>**Freedom of Information Act**<br>**Services** |  |
|---|---|---|
| Date of Invoice:<br>10/05/2006 | | DEPARTMENT OF HEALTH & HUMAN SERVICES |

| Requester's Name, Organization, and Address:<br><br>Kevin Bogardus<br>Reporter<br>Center for Public Integrity<br>910 17th Street, N.W., 7th Floor<br>Washington, DC 20006 | **Instructions:**<br>1. **Please write the case number,** shown at the top of this form, on your check or money order.<br>2. Make your check or money order payable to:<br>  **United States Department of Treasury.**<br>3. Return one copy of this form with your remittance.<br>4. Mail to:  **Centers for Disease Control and Prevention**<br>  **FOIA Office**<br>  **1600 Clifton Rd., NE,  M/S D54**<br>  **Atlanta, GA  30333**<br>5. Payment is due within 30 days from the date of this invoice. Interest will be charged after the due date. |

Category:  ☐ I  ☐ II  ☑ III

| | Service | No. of Items or Hours | Price per Item or Hour | Subtotal | Allowance (if applicable) | Total |
|---|---|---|---|---|---|---|
| **Reproduction** | Standard Pages (8 1/2 x 11) or (8 1/2 x 14) | | $  .10/page | | 100 Free Pages | |
| | Other Reproduction | | | | | |
| **Search Costs** | Rate 1 (GS 1-8) | | $20.00/hr. | | | |
| | Rate 2 (GS 9-14) | 129.25 | $40.00/hr. | $5,170.00 | | $5,170.00 |
| | Rate 3 (GS 15 & above) | 24.00 | $72.00/hr. | $1,728.00 | | $1,728.00 |
| **Review Costs** | Rate 1 (GS 1-8) | | $20.00/hr. | | | |
| | Rate 2 (GS 9-14) | | $40.00/hr. | | | |
| | Rate 3 (GS 15 & above) | | $72.00/hr. | | | |
| **Computer Costs** | Machine Time, Materials | | | | | |
| | Operator's Time or Search Time — Rate 1 | | $20.00/hr. | | | |
| | Operator's Time or Search Time — Rate 2 | | $40.00/hr. | | | |
| | Operator's Time or Search Time — Rate 3 | | $72.00/hr. | | | |
| **Certification** | | | $10.00/ea. | | | |
| **Special Mailing Charges** | | | | | | |
| | | | | Pay Total of ➤ | | $6,898.00 |

| Person Preparing Invoice | Phone No.<br>(404) 639-7270 | |
|---|---|---|

**Notes**

***This is only an estimate the actual cost may vary***

CDC 0.1227 (E), Rev. 3/2003, CDC Adobe Acrobat 5.0 Electronic Version, 5/2006

# EXHIBIT C

# THE CENTER FOR PUBLIC INTEGRITY

October 18, 2006

**By First-Class Mail and Fax to 301-443-0925**
Deputy Assistant Secretary for Public Affairs (Media)
U.S. Department of Health and Human Services
Room 17A-46
5600 Fishers Lane
Rockville, MD 20857

<div style="margin-left:40%">

Re:    FOIA Appeal
       Case Nos. 06-0219, 0220, 0221, 0222, 0223

</div>

Dear Madam:

I am an attorney and represent the requester, the Center for Public Integrity, in this matter.

By this letter, the Center appeals the decision of CDC/ATSDR FOIA Officer Lynn Armstrong (copy enclosed). The Center is entitled to fee classification as a representative of the media.

The Court of Appeals for the D.C. Circuit has held that, for purposes of FOIA's fee classifications, a "representative of the news media" is "a person or entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." *National Security Archive v. DOD*, 880 F.2d 1381, 1387 (D.C. Cir. 1989). The Center for Public Integrity clearly falls within this definition, and I invite you to review our recent publications, at http://www.publicintegrity.org/archives.aspx, to satisfy yourself of this fact. I am also enclosing a list (from http://www.publicintegrity.org/about/about.aspx?act=awards) of journalism awards won by the Center, conferred on us by other representatives of the news media who consider us to be one of their own.

For these reasons, I ask that you grant the Center for Public Integrity the fee reductions due to a representative of the news media under the Freedom of Information Act.

<div style="margin-left:40%">

Sincerely,

Peter Newbatt Smith
Research Editor and counsel in this matter
Center for Public Integrity
910 17th Street, N.W., 7th Floor
Washington, DC, 20006-2606
202-481-1239
psmith@publicintegrity.org

</div>



# The Center for Public Integrity List of Awards

Awards as of August 21, 2006, are listed by year received, not necessarily by year work was published.

## 2006

- **CAPITOLBEAT: ASSOCIATION OF CAPITOL REPORTERS AND EDITORS**
  - ○ Winner, In-depth Reporting Online
    **"Pushing Prescriptions in the States" and "Well Connected in the States"** , *Staff*

- **SOCIETY OF PROFESSIONAL JOURNALISTS**
  - ○ Winner, Sigma Delta Chi Award for Public Service in Online Journalism (Independent)
    **"Well Connected in the States"**, *John Dunbar and Leah Rush*

## 2005

- **CAPITOLBEAT: ASSOCIATION OF CAPITOL REPORTERS AND EDITORS**
  - ○ Winner, In-depth Reporting Online
    **"Personal Politics"**, *Leah Rush, Susan Schaab, Daniel Lathrop and David Dagan*

- **INVESTIGATIVE REPORTERS AND EDITORS**
  - ○ Finalist, Online
    **"The Politics of Oil"**, *Bob Williams, Kevin Bogardus, Laura Peterson, Paul Radu, Daniel Lathrop, Teo Furtado and Aron Pilhofer*
  - ○ Winner, Online Certificate
    **"Outsourcing the Pentagon"**, *Larry Makinson, Elizabeth Brown, Dan Guttman, M. Asif Ismail, and Alex Knott*

- **ONLINE NEWS ASSOCIATION AND THE USC ANNENBERG SCHOOL FOR COMMUNICATION**
  - ○ Finalist, Online Journalism Award Enterprise (Small Sites)
    **"Outsourcing the Pentagon"**, *Staff*
  - ○ Finalist, Online Journalism Award for General Excellence (Small Sites)
    **www.publicintegrity.org**, *Staff*

- **SOCIETY OF ENVIRONMENTAL JOURNALISTS**
  - ○ Winner, Outstanding Online Reporting
    **"The Politics of Oil"**, *Bob Williams, Kevin Bogardus, Daniel Lathrop, Alexander Cohen and Aron Pilhofer*

- **SOCIETY OF PROFESSIONAL JOURNALISTS**
  - ○ Winner, Sigma Delta Chi Award for Investigative Reporting Online (Independent)
    **"The Politics of Oil"**, *Bob Williams, Kevin Bogardus, Aron Pilhofer and Alex Cohen*
  - ○ Winner, Sigma Delta Chi Award for Public Service in Online Journalism (Independent)
    **"Personal Politics"**, *Staff*

# 2004

- **CAPITOLBEAT: ASSOCIATION OF CAPITAL REPORTERS AND EDITORS**
  - Winner, In-depth Reporting Online
    **"Silent Partners"**, *Derek Willis and Aron Pilhofer*

- **INVESTIGATIVE REPORTS AND EDITORS**
  - Finalist, Online
    **"Well Connected"**, *John Dunbar, Bob Williams, Morgan Jindrich and Scott Singleton*
  - Winner, Online Certificate
    **"The Water Barons"**, *William Marsden, Maud Beelman, Bill Allison, Erika Hobbs, Daniel Politi, Aron Pilhofer, Andre Verloy, Laura Peterson and Samiya Edwards*

- **LONG ISLAND UNIVERSITY**
  - Winner, George Polk Award for Internet Reporting
    **"Windfalls of War"**, *Maud S. Beelman, Andre Verloy, Bill Allison, Teo Furtado, Kevin Baron, Neil Gordon, Laura Peterson, Daniel Politi, André Verlöy, Bob Williams, Brooke Williams, Aron Pilhofer and Han Nguyen*

- **ONLINE NEWS ASSOCIATION AND USC ANNENBERG SCHOOL FOR COMMUNICATION**
  - Finalist, Online Journalism Award for General Excellence (Small Sites)
    **www.publicintegrity.org**, *Staff*
  - Winner, Online Journalism Award for Enterprise (Small Sites)
    **"Silent Partners"**, *Staff*

- **PEN USA**
  - First Amendment Award
    **"Charles Lewis "**

- **SOCIETY OF PROFESSIONAL JOURNALISTS**
  - Winner, Sigma Delta Chi Award for Public Service in Online Journalism (Independent)
    **"Silent Partners"**, *Derek Willis and Aron Pilhofer*

- **SONOMA STATE UNIVERSITY**
  - 2nd Place, Project Censored Award for Top 25 Censored News Stories of 2002-2003
    **"Justice Department Drafts Sweeping Expansion of Terrorism Act"**, *Charles Lewis and Adam Mayle*

# 2003

- **CAPITOLBEAT: ASSOCIATION OF CAPITOL REPORTERS AND EDITORS**
  - Winner, In-depth Reporting Online
    **"State Secrets"**, *Mary Jo Sylwester, Leah Rush, John Dunbar and Robert Moore*

- **INVESTIGATIVE REPORTERS AND EDITORS**
  - Finalist, Online
    **"Enron's Big Political Donors"**, *John Dunbar, Robert Moore and MaryJo Sylwester*

- **ONLINE NEWS ASSOCIATION AND THE USC ANNENBERG SCHOOL FOR COMMUNICATION**
  - Finalist, Online Journalism Award for Enterprise Journalism (Independent)
    **"The Water Barons"**, *William Marsden, Maud S. Beelman, Bill Allison, Samiya Edwards, Erika Hobbs, Aron Pilhofer, Daniel Politi and Andre Verloy*
  - Finalist, Online Journalism Award for General Excellence (Independent Small Sites)
    **www.publicintegrity.org**, *Staff*

- o Finalist, Online Journalism Awards, Enterprise Reporting (Independent)
  **"Making a Killing: The Business of War"**, *Philip van Niekerk, Maud S. Beelman, Iqbal Athas, Duncan Campbell, Sunday Dare, Samiya Edwards, Julio Godoy, Alain Lallemand, Yossi Melman, Laura Peterson, Mungo Soggot and Andre Verloy*
- o Winner, Online Journalism Award for Enterprise Journalism (Independent)
  **"Well Connected"**, *John Dunbar, Bob Williams, Morgan Jindrich, Bill Allison and Teo Furtado*

- **SOCIETY OF PROFESSIONAL JOURNALISTS**
  - o Winner, Sigma Delta Chi Award for Investigative Reporting Online (Independent)
    **"Making a Killing: The Business of War"**, *Staff and International Consortium of Investigative Journalists*
  - o Winner, Sigma Delta Chi Award for Public Service in Online Journalism (Independent)
    **"State Secrets"**, *Mary Jo Sylwester, Leah Rush, John Dunbar and Robert Moore*

# 2002

- **INVESTIGATIVE REPORTERS AND EDITORS**
  - o Finalist, Online
    **"Tobacco Companies Linked to Criminal Organizations in Lucrative Cigarette Smuggling"**, *International Consortium of Investigative Journalists, Maud S. Beelman, Bill Birmbauer, Duncan Campbell, William Marsden, Erik Schelzig, and Leo Sisti*

- **SOCIETY OF PROFESSIONAL JOURNALISTS**
  - o Winner, Sigma Delta Chi Award for Public Service in Online Journalism (Independent)
    **"Watchdogs on Short Leashes"**, *Kenneth Vogel and Leah Rush*

# 2001

- **INVESTIGATIVE REPORTERS AND EDITORS**
  - o Finalist, Books
    **"The Buying of the President 2000"**, *Charles Lewis*
  - o Finalist, Online
    **"Money, Influence and Integrity in the 2000 Election Year"**, *Staff*
  - o Winner, Online Certificate
    **"Our Private Legislatures - Public Service, Personal Gain"**, *Diane Renzulli, Meleah Rush, John Dunbar, Alex Knott, Robert Moore, Ken Vogel*

# 2000

- **INVESTIGATIVE REPORTERS AND EDITORS**
  - o Finalist, Online
    **"U.S. Support for Tobacco Overseas: Going Out of Business?"**, *Maud S. Beelman*
  - o Winner, Books Certificate
    **"Animal Underworld: Inside America's Black Market for Rare and Exotic Species"**, *Alan Green*

# 1999

- **INVESTIGATIVE REPORTERS AND EDITORS**

- o Finalist, Books
  **"The Buying of Congress: How Special Interests Have Stolen Your Right to Life, Liberty and the Pursuit of Happiness"**, *Charles Lewis*

# 1998

- • **INVESTIGATIVE REPORTERS AND EDITORS**
  - o Finalist, Books
    **"Toxic Deception: How the Chemical Industry Manipulates Science, Bends the Law, and Endangers Your Health"**, *Dan Fagin and Marianne Levelle*

# 1997

- • **INVESTIGATIVE REPORTERS AND EDITORS**
  - o Finalist, Books
    **"The Buying of the President 1996"**, *Charles Lewis*

- • **SOCIETY OF PROFESSIONAL JOURNALISTS**
  - o Winner, Sigma Delta Chi Award for Public Service in Newsletter Journalism
    **"Fat Cat Hotel"**, *Margaret Ebrahim*

© 2006, The Center for Public Integrity. All rights reserved.
**IMPORTANT:** Read our privacy policy and the terms under which this service is provided to you.
910 17th Street, NW · 7th Floor · Washington, DC 20006 · Tel. (202) 466-1300

# EXHIBIT D

Darlene Christian
Public Health Service (PHS)
Freedom of Information Office
Room 17-A-46, Parklawn Building
5600 Fishers Lane
Rockville, MD 20857

06-2831
**RECEIVED**
FEB 2 4 2006
**FDA DFOI (HFI-35)**



February 14, 2006

Dear Ms. Christian:

This is a request under the **Federal Freedom of Information Act (FOIA)**, the First
Amendment to the United States Constitution, the common law of the United States, the
Privacy Act (5 U.S.C.) section 552a, and any statue providing for public access to
government information:

I request that I be sent copies of the following documents:

- **All and any grants, contracts and/or agreements that have been made
  through the Department of Health and Human Services in relation to the
  President's Emergency Plan for Aids Relief (Pepfar) since the creation of the
  plan in 2003 to the date on which you process this request. These contracts
  should include but not be limited to all program areas of Pepfar: prevention,
  treatment and care. By "in relation" we mean both those projects funded in
  full or in part by PEPFAR funds and those projects funded by other monies
  allocated by, through or in consultation with the Office of the Global Aids
  Coordinator (OGAC).**

  **We first requested these contracts to the Office of the US Global Aids
  Coordinator. On February 3, 2006, we received the following response from
  the State Department Office of Information Programs and Services: "The
  primary implementing agencies (Department of Health and Human Services,
  US Agency for International Development, Department of Defense,
  Department of Labor and Peace Corps) enter into contracts that may be
  necessary for the programmatic functions of the Pepfar program. (...)
  Therefore if what you seek is limited to contracts of a programmatic nature,
  you should direct your request for such contracts to those other agencies..."**

  **According to Pepfar's Second Annual Report to Congress, the agencies
  within HHS that are implementing Pepfar programs are: the Centers for
  Disease Control and Prevention, National Institutes of Health, Health
  Resources and Services Administration, Food and Drug Administration, and
  Substance Abuse and Mental Health Services Administration.**

I am filing this FOIA request as a "representative of the news media," which both the
Department of State and the Central Intelligence Agency have granted members of my
organization in previous FOIA searches of their archives. This designation entitles me to

2006 FEB 22 PM 4:38
RECEIVED
IPS/FOI OPR

DIVISION OF FOI

REQUESTER TYPE: _____ N
REQUESTER CATEGORY: _____ D

HFA-500

a waiver of fees accumulated during the actual search and review process. However, if your agency does determine that I should be charged for any part of this request, please contact me before any searches reach an estimate cost of $25.

The Center for Public Integrity is a nonpartisan, nonprofit investigative reporting organization, based in Washington, D.C., whose mission is to examine and write about public service and ethics-related issues. The International Consortium of Investigative Journalists was created in 1997 as a project of the Center for Public Integrity. For more information on the Center for Public Integrity, ICIJ, and their online publication, please refer, respectively, to http://www.publicintegrity.org, http://www.icij.org, and http://www.public-i.org.

In reference to our request I have provided the following information addressing the points listed in the Department of Justice's FOIA Guide, 2002 Edition: Fees and Fee Waivers, as found online at http://www.usdoj.gov/oip/fees.htm.

1. The content from this information "is likely to contribute" to the understanding of your agency to the common reader. Our research would not be possible without the specific content garnered by the release of the requested information. Prior to any action on this FOIA request, this information is not in the public domain.

2. Due to the nature of our organization, the Center for Public Integrity, the disclosure under our FOIA request will "contribute to the understanding of the public at large." The information will be posted to our newsletter, *The Public i* and on our website, www.publicintegrity.org, and will be read by a large number of people. We expect the information produced through this and other FOIA requests to serve as the basis for several press releases and articles that explain the actions and operations of government to the general public. Similar stories we have written in the past have increased the understanding of an issue by a large percentages of the public. For example, our organization posted the first stories about the "Lincoln Bedroom" scandal under the Clinton administration, and now the general public knows that campaign contributors to the Democratic Party were allowed to stay at the White House. Other stories, including the Center's exclusive release of Securities and Exchange Commission Records pertaining to President Bush's sale of Harken stock and Vice President Cheney's connections to the Halliburton Corporation have similarly informed the public.

3. In addition to publishing the information on our website, relevant information from this FOIA request will also be distributed to the general public via major news organizations. Among the news organizations that referred to our reports during a recent time period are: CBS, NBC, CNN, NPR, U.S. News & World Report, AP, AFP, Reuters, Knight Ridder, Cox News, New York Times, Washington Post, Los Angeles Times, USA Today, Dallas Morning News, Houston Chronicle, Austin American Statesman, Chicago Tribune, Philadelphia Inquirer, Christian Science Monitor, Atlanta Journal & Constitution, San Francisco Chronicle and the Seattle Times. International newspapers such as The Gazette (Montreal), Daily Telegraph (London), The Guardian, Irish Times, Scotland on Sunday and Hong Kong Mail have also cited the Center reports during a

recent time period. We expect that information provided through this FOIA request will similarly result in reporting featured by such national and global news organizations.

The Center for Public Integrity also possesses the skills necessary to process the requested information. We are investigative journalists. We write and post an online newsletter. Other members of the media consider us to be news organization as evidenced by our numerous awards over the years from the Society of Professional Journalists and the Investigative Reporters and Editors Inc. Additionally, many federal agencies have deemed the Center for Public Integrity to be news media for FOIA requests.

4. The disclosures we requested through the Freedom of Information Act do not primarily serve any "commercial interest." Any data derived from our request will be used primarily to educate the public and will be distributed freely. As described in section (3), we represent the news media and plan to distribute this information to the public.

5. In reference to any "commercial interest," we do not have any. Almost all of our money comes from grants and donations. The Center for Public Integrity is a non-profit. Almost all of the publications by the Center are made available without charge.

As I am sure you are aware, the Freedom of Information Act, under 32 C.F. R. 806, requires that if part of a record is exempt from disclosure, you must redact and release all segregated parts. Please describe the deleted material in detail and specify the reasons for believing that the alleged statutory justification applies in this instance.

I look forward to your decision on granting or denying our request within 20 days as outlined by the statute. As I am making this request as a journalist and this information is of timely value, I would appreciate your communicating with me by telephone or email, rather than by mail, if you have questions regarding this request. If my request is denied in whole or in part, please specify which exemption(s) is (are) claimed for each passage or whole document denied. In addition, please give the number of pages in each document and the total number of pages pertaining to this request and the dates of the documents withheld. Please provide copies of any logs, internal tracking numbers or other file-tracking device or system of documents in existence but denied disclosure. Such statements will be helpful in deciding whether to appeal an adverse determination.

I appreciate your attention to this and expect, as the FOIA provides, to hear from your office within 20 days. If you have any questions about the nature or scope of this request, please call me at: 202-481-1211.

Sincerely,

Marina Walker Guevara
The Center for Public Integrity
910 17th Street, NW, Suite 700
Washington, DC 20006
202-481-1211// mwalker@icij.org

# EXHIBIT E



Public Health Service
Freedom of Information Office
Parklawn Building, Room 17A-46
5600 Fishers Lane
Rockville, Maryland 20857
PH: 301-443-5252
Fax: 301-443-0925

FOIA CASE NUMBER: PHS2K6-212
April 19, 2006

Ms. Marina Walker Guevara
The Center for Public Integrity
910 17th Street, NW, Suite 700
Washington, DC 20006

Dear Ms. Walker Guevara:

This is in response to your February 14 Freedom of Information Act (FOIA)
request for a copy of any and all grants, contracts and/or agreements through
the Department of Health and Human Services (DHHS) regarding the President's
Emergency Plan for Aids Relief (Pepfar) since 2003.  You also requested a fee
classification change from Category III Other, to Category II Media Requester.

You wrote that The Center for Public Integrity (CPI) is a nonpartisan, nonprofit
investigative reporting organization.  You also wrote that release is likely to
contribute to the understanding of the common reader; the information will be
published in your newsletter; be used for press releases and articles that
explain the actions and operations of the government; and distributed to the
public by major news organizations.  Finally, you wrote that other Federal
agencies granted media status to CPI.

It is the policy of this Department to waive or reduce fees if disclosure of the
information meets both the following tests: (1) it is in the public interest
because it is likely to contribute significantly to public understanding of the
operations or activities of the government; and (2) it is not primarily in the
commercial interest of the requester.

Your statements do not support the likelihood of contributing significantly to
public understanding of government operations or activities that are not
already public knowledge.  Pepfar provides annual reports to Congress, and the

Page 2 – Ms. Marina Walker Guevara

Government has already published information concerning Pepfar on its web sites, including press releases. The requested information is grant-specific and narrowly focused. Therefore, it would not significantly contribute to the general public understanding of the operations or activities of the Government.

You stated that your organization "represent[s]" the news media and other Federal agencies have granted CPI media status. DHHS fee classifications are determined on a case-by-case basis for each FOIA request.   The CPI web site acknowledges that it is a broker of information. Therefore, CPI is a secondary contributor, not a primary news-gathering organization. As such, your statements are not convincing and do not provide substantial information to indicate that release of the information, in this instance, would not further the commercial, trade, or profit interests of your organization. After review, I am unable to grant your request for fee classification change.

My decision is based upon the Department's implementing public information regulations. See 45 CFR 5.45 of the enclosed regulations.

You, of course, have the right to appeal this decision to deny you a change of fee category. Should you wish to do so, send your appeal, within 30 days from the date you receive this letter, to the Deputy Assistant Secretary for Public Affairs (Media), U.S. Department of Health and Human Services, Room 17A-46, 5600 Fishers Lane, Rockville, Maryland 20857, following the procedures outlined in Subpart C of the enclosed Regulations. Please mark both your appeal letter and envelope "FOIA Appeal".

Finally, you asked to be advised if the cost to respond to your request would exceed $25.00. As a Category III requester, you will be charged for search and duplication costs after the waiver of the first two hours of search, and 100 pages of duplication. Current charges for search are at the rates of $19, $38, and $69 per hour, depending on the grade of the employee performing the search. Duplication is at ten cents per page. I am advised by the Health Resources and Services Administration, and the Centers for Disease Control and Prevention, that the search for records is expected to exceed 12 hours, at the $38 and $69 rates, and that the number of pages is in excess of 5,000. At this time, I am unable to determine the total estimated cost to reply because we have not yet received a cost estimate from the Food and Drug Administration (FDA).

Page 3 – Ms. Marina Walker Guevara

Please contact me with your approval to proceed, and your agreement to pay all charges associated with the processing of your request.  At that time we can discuss any pre-payment requirements.  Or, you may wish to discuss narrowing the scope of your request.  If I do not hear from you, or receive an appeal of my decision by May 26, I will consider your request withdrawn and take no further action.

Sincerely yours,

Darlene Christian
Freedom of Information Officer
Public Health Service

Enclosures

# EXHIBIT F

# THE CENTER FOR PUBLIC INTEGRITY

**Board of Directors**

Roberta Baskin
Hodding Carter III
Bill Kovach
Susan Loewenberg
Paula Madison
John E. Newman, Jr.
Geneva Overholser
Charles Piller
Allen Pusey
Ben Sherwood
Pearl Stewart
Marianne Szegedy-Maszak

**Advisory Board**

James MacGregor Burns
Joel Chaseman
Alan J. Dworsky
Edith Everett
Bruce A. Finzen
Gustavo Godoy
Josie Goytisolo
Herbert Hafif
Rev. Theodore Hesburgh
Kathleen Hall Jamieson
Sonia Jarvis
Bevis Longstreth
Charles Ogletree
Arthur Schlesinger, Jr.
Harold M. Williams
William Julius Wilson

**Executive Director**

Roberta Baskin

**Founder**

Charles Lewis

May 26, 2006

**By First-Class Mail and Fax to 301-443-0925**
Deputy Assistant Secretary for Public Affairs (Media)
U.S. Department of Health and Human Services
Room 17A-46
5600 Fishers Lane
Rockville, MD 20857

Re:    FOIA Appeal
       Case No. PHS2K6-212

Dear Madam:

I am an attorney and represent the requester, the Center for Public Integrity, in this matter.

By this letter, the Center appeals the decision of Darlene Christian, Freedom of Information Officer, Public Health Service, denying the Center fee classification as a representative of the media (copy enclosed).

Ms. Christian's decision is mistaken in saying that "[t]he CPI web site acknowledges that it is a broker of information," and in inferring "that release of the information [could] further the commercial, trade, or profit interests of your organization." Ms. Christian does not quote from the Center's Web site or indicate the specific basis for this characterization, but perhaps she was referring to statements that "Through objective and thorough analyses, the Center hopes to serve as an honest broker of information and to inspire a better-informed citizenry that can demand a higher level of accountability from its government and elected leaders." See, e.g., http://www.publicintegrity.org/about/release.aspx?aid=36. Such a statement obviously does not imply that the Center charges or receives payment for information. In fact, almost all of the Center's reports and analyses are freely available to the public on our Web site, although some printed publications (not "brokered information") are offered for sale.

The Court of Appeals for the D.C. Circuit has held that, for purposes of FOIA's fee classifications, a "representative of the news media" is "a person or entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." *National Security Archive v. DOD*, 880 F.2d 1381, 1387 (D.C. Cir. 1989). The Center for Public Integrity clearly falls

within this definition, and I invite you to review our recent publications, at
http://www.publicintegrity.org/archives.aspx, to satisfy yourself of this fact. I
am also enclosing a list (from http://www.publicintegrity.org/about/
about.aspx?act=awards, supplemented with additional awards for 2005) of
journalism awards won by the Center, conferred on us by other representatives
of the news media who consider us to be one of their own.

For these reasons, I ask that you grant the Center for Public Integrity
the fee reductions due to a representative of the news media under the Freedom
of Information Act.

Sincerely,

Peter Newbatt Smith
Research Editor
And counsel in this matter
202-481-1239

**CENTER FOR PUBLIC INTEGRITY**
**AWARDS RECEIVED - 2005**

- **ASSOCIATION OF CAPITAL REPORTERS AND EDITORS**
  - Online Publications: In-depth reporting
    **"Personal Politics"**, *Leah Rush, Susan Schaab, Daniel Lathrop, David Dagan*

- **INVESTIGATIVE REPORTERS AND EDITORS**
  - IRE Certificate, Other Media: Online
    **"Outsourcing the Pentagon"**, *Elizabeth Brown, M. Asif Ismail, Alex Knott, Dan Guttman and Larry Makinson*
  - Finalist, Other Media: Online
    **"The Politics of Oil"**, *Bob Williams, Kevin Bogardus, Laura Peterson, Paul Radu, Daniel Lathrop, Teo Furtado and Aron Pilhofer*

- **ONLINE NEWS ASSOCIATION AND THE USC ANNENBERG SCHOOL FOR COMMUNICATION**
- Online Journalism Awards, General Excellence (Small) [finalist]
    **The Center for Public Integrity**
  - Online Journalism Awards, Enterprise Reporting (Small) [finalist]
    **"Outsourcing the Pentagon"**, *Elizabeth Brown, M. Asif Ismail, Alex Knott, Dan Guttman and Larry Makinson*

- **SOCIETY OF ENVIRONMENTAL JOURNALISTS**
  - National Award for Outstanding Online Reporting
    **"The Politics of Oil"**, *Bob Williams, Kevin Bogardus, Laura Peterson, Paul Radu, Daniel Lathrop, Teo Furtado, and Aron Pilhofer*

- **SOCIETY OF PROFESSIONAL JOURNALISTS**
  - Public Service in Online Journalism (Independent)
    **"Personal Politics"**, *Leah Rush, Susan Schaab, Daniel Lathrop, David Dagan*
  - Online Reporting: Investigative Reporting (independent)
    **"Politics of Oil"**, *Bob Williams, Kevin Bogardus, Aron Pilhofer, Alex Cohen*

- **RADIO-TELEVISION NEWS DIRECTORS ASSOCIATION**
  - Edward R. Murrow Award, Website—non-broadcast affiliated (Small Market)
    **The Center for Public Integrity**



**THE CENTER FOR PUBLIC INTEGRITY**
Investigative Journalism in the Public Interest

**About Us**

# The Center for Public Integrity List of Awards

## 2005

- **INVESTIGATIVE REPORTERS AND EDITORS**
  - o IRE Certificate, 2004, Other Media: Online
    **"Outsourcing the Pentagon: Who's winning the big contracts"**, *Larry Makinson, Elizabeth Brown, Dan Guttman, M. Asif Ismail, and Alex Knott*

## 2004

- **ASSOCIATION OF CAPITAL REPORTERS AND EDITORS**
  - o Online In-Depth Reporting
    **"Silent Partners: How political non-profits work the system"**, *Derek Willis & Aron Pilhofer*

- **INFORMATION TODAY**
  - o 2004 Buddie Award for Best Unknown Database
    **The Center for Public Integrity**

- **INVESTIGATIVE REPORTERS AND EDITORS**
  - o Other Media: Online [finalist]
    **"The Politics of Oil: How one of the world's richest industries influences government and policy"**, *Bob Williams, Kevin Bogardus, Laura Peterson, Paul Radu, Daniel Lathrop, Teo Furtado, and Aron Pilhofer*

- **ONLINE JOURNALISM AWARDS, USC ANNENBERG SCHOOL FOR COMMUNICATION**
  - o Enterprise Journalism, small sites
    **"Silent Partners: How political non-profits work the system"**, *Derek Willis & Aron Pilhofer*
  - o General Excellence, small sites [finalist]
    **The Center for Public Integrity**

- **PEN USA** *(composed of poets, playwrights, essayists, novelists and others interested in protecting the rights of writers round the world)*
  - o First Amendment Award
    **Charles Lewis and the Center for Public Integrity**

- **SOCIETY OF ENVIRONMENTAL JOURNALISTS**
  - o National Award for Outstanding Online Reporting
    **"The Politics of Oil: How one of the world's richest industries influences government and policy"**, *Bob Williams, Kevin Bogardus, Laura Peterson, Paul Radu, Daniel Lathrop, Teo Furtado, and Aron Pilhofer*

## 2003

- **ASSOCIATION OF CAPITAL REPORTERS AND EDITORS**
  - o Online Reporting: Public Service In-Depth Reporting
    **"State Secrets: An Investigation of Political Party Money in the States"**, *Mary Jo Sylwester, Leah Rush, John Dunbar, and Robert Moore*

- **INVESTIGATIVE REPORTERS AND EDITORS**
  - o Finalist, Other Media: Online
    **"Well Connected"**, *John Dunbar, Bob Williams, Morgan Jindrich and Scott Singleton*
  - o IRE Certificate, Other Media: Online
    **"The Water Barons"**, *William Marsden, Maud S. Beelman, Bill Allison, Samiya Edwards, Erika Hobbs, Aron Pilhofer, Daniel Politi and Andre Verloy*

- **LONG ISLAND UNIVERSITY**
  - o Online Journalism Awards, Features Journalism (Independent)
    **"Windfalls of War: U.S. Contractors in Iraq and Afghanistan"**, *Maud S. Beelman, Andre Verloy, Bill Allison, Teo Furtado, Kevin Baron, Neil Gordon, Laura Peterson, Daniel Politi, André Verlöy, Bob Williams, Brooke Williams, Aron Pilhofer and Han Nguyen*

- **ONLINE NEWS ASSOCIATION AND THE USC ANNENBERG SCHOOL FOR COMMUNICATION**
  - o Online Journalism Awards, Enterprise Reporting (Independent) [finalist]
    **"The Water Barons"**, *William Marsden, Maud S. Beelman, Bill Allison, Samiya Edwards, Erika Hobbs, Aron Pilhofer, Daniel Politi and Andre Verloy*
  - o Online Journalism Awards, Enterprise Reporting (Independent)
    **"Well-Connected"**, *John Dunbar, Bob Williams, Morgan Jindrich, Bill Allison and Teo Furtado*
  - o Online Journalism Awards, Features Journalism (Independent) [finalist]
    **"Making a Killing: The Business of War"**, *Philip van Niekerk, Maud S. Beelman, Iqbal Athas, Duncan Campbell, Sunday Dare, Samiya Edwards, Julio Godoy, Alain Lallemand, Yossi Melman, Laura Peterson, Mungo Soggot and Andre Verloy*
  - o Online Journalism Awards, General Excellence [finalist]
    **The Center for Public Integrity**

- **PROJECT CENSORED**
  - o National Award: Top 25 Censored News Stories of 2002-2003 [2nd Place Ranking]
    **"Justice Department Drafts Sweeping Expansion of Terrorism Act"**, *Charles Lewis and Adam Mayle*

- **SOCIETY OF PROFESSIONAL JOURNALISTS**
  - o Public Service in Online Journalism (Independent)
    **"Silent Partners: How political nonprofits work the system"**, *Derek Willis and Aron Pilhofer*

## 2002

- **INVESTIGATIVE REPORTERS AND EDITORS**
  - o National Book Award
    **"Capitol Offenders: How Private Interests Govern Our States"**, *Diane Renzulli, John Dunbar, Alex Knott, Robert Moore, and Leah Rush*
  - o Online Reporting Award Finalist
    **"Enron's Big Political Donors"**, *John Dunbar, Robert Moore, and Mary Jo Sylwester*

- **SOCIETY OF PROFESSIONAL JOURNALISTS**
  - o Sigma Delta Chi Award: Online Investigative Reporting (Independent)
    **"Making a Killing: The Business of War"**, *Philip van Niekerk, Maud S. Beelman, Iqbal Athas, Duncan Campbell, Sunday Dare, Samiya Edwards, Julio Godoy, Alain Lallemand, Yossi Melman, Laura Peterson, Mungo Soggot and Andre Verloy*
  - o Sigma Delta Chi Award: Public Service in Online Journalism (Independent)

**"State Secrets: An Investigation of Political Party Money in the States"**, *Mary Jo Sylwester, Leah Rush, John Dunbar, and Robert Moore*

## 2001

- **INVESTIGATIVE REPORTERS AND EDITORS**
  - Online Reporting Award Finalist
    **"Tobacco Companies Linked to Criminal Organizations in Lucrative Cigarette Smuggling"**, *Maud S. Beelman, Bill Birmbauer, Duncan Campbell, William Marsden, Erik Schelzig, and Leo Sisti*
- **SOCIETY OF PROFESSIONAL JOURNALISTS**
  - Sigma Delta Chi Award: Public Service in Online Journalism (Independent)
    **"Watchdogs on Short Leashes"**, *Kenneth Vogel and Leah Rush*

## 2000

- **INVESTIGATIVE REPORTERS AND EDITORS**
  - National Book Award Finalist
    **"The Buying of the President 2000"**, *Charles Lewis*
  - Online Reporting Award
    **"Our Private Legislatures - Public Service, Personal Gain"**, *Diane Renzulli, Leah Rush, John Dunbar, Alex Knott, Robert Moore, and Ken Vogel*
  - Online Reporting Award Finalist
    **"Money, Influence and Integrity in the 2000 Election Year"**, *The Public i Staff*

## 1999

- **INVESTIGATIVE REPORTERS AND EDITORS**
  - National Book Award
    **"Animal Underworld: Inside America's Black Market for Rare and Exotic Species"**, *Alan Green*
  - Online Reporting Award Finalist
    **"US Support for Tobacco Overseas: Going Out of Business"**, *The Public i Staff and Maud S. Beelman*

## 1998

- **INVESTIGATIVE REPORTERS AND EDITORS**
  - National Book Award Finalist
    **"The Buying of Congress: How Special Interests Have Stolen Your Right to Life, Liberty, and the Pursuit of Happiness"**, *Charles Lewis*

## 1997

- **INVESTIGATIVE REPORTERS AND EDITORS**
  - National Book Award Finalist
    **"Toxic Deception: How the Chemical Industry Manipulates Science, Bends the Law, and**

Endangers Your Health", *Dan Fagin and Marianne Levelle*

## 1996

- **INVESTIGATIVE REPORTERS AND EDITORS**
  - o National Book Award Finalist
    **"The Buying of the President 1996"**, *Charles Lewis*

- **SOCIETY OF PROFESSIONAL JOURNALISTS**
  - o Sigma Delta Chi Award: Public Service in Online Journalism (Independent)
    **"Fat Cat Hotel: How Democratic High-Rollers are Rewarded with Overnight Stays at the White House"**, *Public i Staff and Margaret Ebrahim*

© 2006, The Center for Public Integrity. All rights reserved.
**IMPORTANT:** Read our <u>privacy policy and the terms</u> under which this service is provided to you.
910 17th Street, NW · 7th Floor · Washington, DC 20006 · Tel. (202) 466-1300

# EXHIBIT G

**DEPARTMENT OF HEALTH & HUMAN SERVICES**     Program Support Center

Division of FOIA Services
Administrative Operations Service
Parklawn Building, Room 17A-46
5600 Fishers Lane
Rockville, Maryland 20857
PH: 301-443-5252
Fax: 301-443-0925

FOIA Case Number: PHS2K6-A-063 and PHS2K7-A-008
November 30, 2006

Peter Newbatt Smith, Esq.
Center for Public Integrity
910 17th Street, N.W., 7th Floor
Washington, D.C. 20006-2606

Dear Mr. Smith:

My office is currently processing the above referenced administrative
appeals filed by the Center for Public Integrity (CPI), which are currently
at issue in the pending matter of _Center for Public Integrity v. U.S._
_Department of Health and Human Services_, Civil Action No. 06-1818(JDB)
ECF. In each of the appeals, you appealed the initial determination to
classify CPI as a Category II, representative of the news media for fee
purposes. As yet, there has been no formal determination on your
appeals. The purpose of this letter is to obtain additional information
from CPI in order to complete processing and issue a final agency
determination.

The definition of a "representative of the news media" is, in essence, a
person or entity that gathers information of potential interest to a
segment of the public, uses its editorial skills to turn the raw materials
into a distinct work, and distributes that work to an audience. You
wrote that CPI clearly falls into this category in that almost all of CPI's
reports and analyses are freely available to the public on your website, as
well as through printed publications that are offered for sale. You
further provided links to your website and a listing of awards conferred
upon CPI by other news media.

Providing documents to the public through a website and through the
sale of publications is not sufficient to qualify a FOIA requester as a
representative of the news media. Further, receiving awards from news
media sources, serving as a type of middleman or vendor of information
that representatives of the news media can utilize when necessary, or

Page 2 - Peter Newbatt Smith, Esq.

providing documents collected from government agencies to media
sources, does not qualify an organization as news media. An
organization must demonstrate its editorial skills to turn the raw
materials into a distinct work that is distributed.

As such, I am asking CPI to provide additional information to address the
below questions:

1. Please explain what CPI means by the term "broker of information" in
its 2004 Annual Report that appeared on your website. This same
characterization as "broker of information" was used by CPI to describe
itself on your website under "About Us" in March, 2006.

2. What does CPI intend to do with the records that are requested under
the two FOIA requests at issue.

3. Please explain how CPI will use its editorial skills to turn the
requested records for the two FOIA requests at issue into distinct works.

4. If a distinct work is created, please explain how CPI will distribute
that work.

I look forward to receiving the additional information so that we may
render a decision on your appeals, and complete the processing of your
FOIA requests. If you have any questions, please feel free to contact
Patricia Mantoan, Esquire, U.S. Department of Health and Human
Services, Office of the General Counsel, Information Law Division.
Ms. Mantoan's contact information is as follows: Room 4760 Cohen
Building, Washington, D.C. 20201; 202-619-0153.

Sincerely yours,

Darlene Christian

Director
Division of FOIA Services

cc: Michelle Johnson, Esq. (by fax)

# EXHIBIT H

# THE CENTER FOR PUBLIC INTEGRITY

December 6, 2006

**By First-Class Mail and Fax to 301-443-0925**

Ms. Darlene Christian
Director, Division of FOIA Services
U.S. Department of Health and Human Services
Parklawn Building, Room 17A-46
5600 Fishers Lane
Rockville, MD 20857

Re:     FOIA Case Nos. PHS2K6-A-063 and
PHS2K7-A-008

Dear Ms. Christian:

I write in response to your letter dated November 30, 2006.

It has never been my contention that the Center qualifies for media requester status merely because it maintains a public Web site and sells publications. Referencing the D.C. Circuit's definition of a "representative of the news media" in *National Security Archive v. DOD*, 880 F.2d 1381 (D.C. Cir. 1989), my appeals letter in each of these cases invited HHS "to review our recent publications, at http://www.publicintegrity.org/archives.aspx, to satisfy yourself" that the Center falls within that definition. If you examine the content of those publications, I believe it will be obvious that the Center "gathers information of potential interest to a segment of the public [and] uses its editorial skills to turn the raw materials into [] distinct work[s]" (880 F.2d at 1387). The Web site is the primary means by which the Center "distributes [those] work[s] to an audience." (*Id.*)

Turning to your specific questions:

1. Please explain what CPI means by the term "broker of information" in its 2004 Annual Report that appeared on your website. This same characterization as "broker of information" was used by CPI to describe itself on your website under "About Us" in March, 2006.

The passage from which you quote in the 2004 Annual Report says:

The Center's work is based on the conviction that the public has a right to know what its government, public officials and corporate leaders are doing. Its mission includes providing the American people with information – often not available elsewhere – about how these entities are performing their duties. By providing thorough, thoughtful and objective analyses, the Center serves as an honest broker of information, which in turn helps citizens demand a higher level of accountability from their government and elected leaders.

The *American Heritage Dictionary* defines "honest broker" as "A neutral agent, as in mediation." ((4th ed. 2004) http://dictionary.reference.com/browse/honest%20broker). I have no information to suggest that the Center intended by this expression any other meaning.

2. What does CPI intend to do with the records that are requested under the two FOIA requests at issue.

3. Please explain how CPI will use its editorial skills to turn the requested records for the two FOIA requests at issue into distinct works.

4. If a distinct work is created, please explain how CPI will distribute that work.

The specific answers to these questions (2-4) are, for the purposes of determining whether the Center is a representative of the news media, superfluous to the information already given to you and available to you.

The Center intends to use the requested records in the conduct of its investigative journalism mission. The Center plans to use the requested records in creating "distinct works" of a character similar to the hundreds of reports it has created since its formation in 1989. The Center plans to distribute those "distinct works" as it has distributed all its reports, by publication on its Web site and/or in printed form (e.g., newsletter, pamphlet or book).

The Center will not use the requested records for any commercial purpose.

———

Please note that the Center's first appeal has been pending since May 26, 2006, whereas FOIA generally requires that such appeals be decided within twenty working days (5 U.S.C. § 552(a)(6)(A)(ii)). I hope that both the appeals and the pending litigation can be resolved promptly and in the Center's favor.

Sincerely,

/S/

Peter Newbatt Smith
Research Editor and counsel in this matter
Center for Public Integrity
910 17th Street, N.W., 7th Floor
Washington, DC, 20006-2606
202-481-1239
psmith@publicintegrity.org

copy to: Michelle Johnson, AUSA (by e-mail)