**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **CENTER FOR PUBLIC INTEGRITY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No.: 06-1818 (JDB)** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **UNITED STATES DEPARTMENT OF** | ) | |
| **HEALTH & HUMAN SERVICES,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| | ) | |

**DEFENDANT'S REPLY IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY**
**JUDGMENT AND OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY**
**JUDGMENT**

_____Defendant, the United States Department of Health and Human Services ("HHS") hereby

submits its reply brief in further support of its motion for summary judgment, and its opposition

to Plaintiff's cross-motion for summary judgment. Defendant is entitled to summary judgment

because there are no genuine issues of material fact in dispute thus entitling Defendant to

judgment as a matter of law.

Defendant submits a response to Plaintiff's statement of material facts not in dispute, a

memorandum of points and authorities, and a proposed order.

Respectfully submitted,

_____/s/ Jeffrey A. Taylor_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

_____/s/ Rudolph Contreras_____
RUDOLPH CONTRERAS, D.C. BAR #  434122
Assistant United States Attorney

_____/s/ Michelle N. Johnson_____
MICHELLE N. JOHNSON, D.C. BAR # 491910
Assistant United States Attorney
United States Attorney's Office
Civil Division
555 4th Street, N.W. – Room E4212
Washington, D.C. 20530
(202) 514-7139

COUNSEL FOR DEFENDANT

Of Counsel:

Patricia Mantoan
Attorney
Office of the General Counsel
General Law Division
Room 4760 Cohen Building
330 Independence Avenue, S.W.
Washington, DC 20201

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

| | |
|---|---|
| **CENTER FOR PUBLIC INTEGRITY,** ) | |
| ) | |
| **Plaintiff,** ) | **Civil Action No.: 06-1818 (JDB)** |
| ) | |
| **v.** ) | |
| ) | |
| **UNITED STATES DEPARTMENT OF** ) | |
| **HEALTH & HUMAN SERVICES,** ) | |
| ) | |
| ) | |
| **Defendant.** ) | |
| ) | |
| ) | |

---

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT OF MATERIAL FACTS
AS TO WHICH THERE IS NO GENUINE ISSUE**

Pursuant to Local Civil Rules 7.1(h) and 56.1, Defendant, the United States Department of Health and Human Services, hereby responds to Plaintiff's Statement of Material Facts as to Which There is no Genuine Dispute.

1.    Defendant does not dispute this statement because in this statement Plaintiff adopts Defendant's statement of fact.

2.    Defendant does not dispute that there is additional language following its quoted excerpt from Mr. Bogardus' letter.  Defendant maintains the document speaks for itself.  Def.'s Ex. A, at 2.[1]

3.    Defendant does not dispute this statement because in this statement Plaintiff adopts Defendant's statement of fact.

4.    Defendant's facts did not represent that Ms. Armstrong's letter contained the

---

[1]References to exhibits are to the exhibits Defendant previously submitted with its motion for summary judgment.

specific statement that "the disclosure of [the requested] information was not in the public

interest and CPI did not qualify as a representative of the news media[,]" hence the absence of

any quotation marks indicating that this statement was a direct quote.   Rather, Ms. Armstrong

stated in her October 5, 2006 letter, in part:

> We have carefully considered your request for a fee waiver but
> do not believe you meet the criteria as set forth in the Department
> of Justice FOIA reference guide, or the Department's implementing
> regulations at 45 C.F.R. Part. 5.45, therefore, we are denying your
> request.

Def.'s Ex. B, at 1.  Furthermore, Defendant states that the actual document speaks for itself.

   5.    Defendant does not dispute this statement because Plaintiff is adopting

Defendant's statement of the facts.

   6.    Defendant does not dispute this statement because Plaintiff is adopting

Defendant's statement of the facts.

   7.    Defendant does not dispute this statement because Plaintiff is adopting

Defendant's statement of the facts.

   8.    Defendant does not dispute this statement because Plaintiff is adopting

Defendant's statement of the facts.

   9.    Defendant disputes this statement to the extent that the actual document speaks

for itself.  Furthermore, Defendant disputes that Ms. Christian's statement could not be construed

to support Defendant's argument that disclosure of the information Plaintiff sought would not be

in the public interest.  As quoted in Defendant's statement of facts, Ms. Christian specifically

stated that the information Plaintiff sought did not "support the likelihood of contributing

significantly to public understanding of government operations or activities that are not already

public knowledge."  Def.'s Ex. E, at 1-2.

10.    Defendant does not dispute this statement because Plaintiff is adopting Defendant's statement of the facts.

11.    Defendant does not dispute this statement because Plaintiff is adopting Defendant's statement of the facts.

12.    Defendant does not dispute this statement because Plaintiff is adopting Defendant's statement of the facts.

13.    Defendant does not dispute this statement because Plaintiff is adopting Defendant's statement of the facts.

14.    Defendant does not dispute this statement because Plaintiff is adopting Defendant's statement of the facts.

15.    Defendant does not dispute this statement because Plaintiff is adopting Defendant's statement of the facts.

16.    Defendant disputes the statement contained in paragraph 16 to the extent that Plaintiff did not actually provide copies of the web pages it sought to have Defendant review, but merely provided website addresses.

17.    Defendant disputes the statement contained in paragraph 17 to the extent that while Defendant's FOIA officer did view certain information on Plaintiff's website, that information was limited and did not include all of the website pages upon which Plaintiff relies. See Declaration of Darlene Christian, Freedom of Information Officer ("FOIO"), for the Public Health Service, Department of Health and Human Services, ¶ 5, attached as Exhibit ("Ex.") 1.

18.    Defendant disputes the statement contained in paragraph 18 to the extent that this information is based only on Plaintiff's assertion and Plaintiff improperly relies on links to web pages that are not a part of the administrative record.

19.    Defendant disputes the statement contained in paragraph 19 to the extent that this

information is based only on Plaintiff's assertion and Plaintiff improperly relies on links to web

pages that are not a part of the administrative record.


Respectfully submitted,

    /s/ Jeffrey A. Taylor
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

    /s/ Rudolph Contreras
RUDOLPH CONTRERAS, D.C. BAR #  434122
Assistant United States Attorney

    /s/ Michelle N. Johnson
MICHELLE N. JOHNSON, D.C. BAR # 491910
Assistant United States Attorney
United States Attorney's Office
Civil Division
555 4th Street, N.W. – Room E4212
Washington, D.C. 20530
(202) 514-7139

COUNSEL FOR DEFENDANT

Of Counsel:

Patricia Mantoan
Attorney
Office of the General Counsel
General Law Division
Room 4760 Cohen Building
330 Independence Avenue, S.W.
Washington, DC 20201

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CENTER FOR PUBLIC INTEGRITY,** ) | |
| ) | |
| **Plaintiff,** ) | **Civil Action No.: 06-1818 (JDB)** |
| ) | |
| **v.** ) | |
| ) | |
| **UNITED STATES DEPARTMENT OF** ) | |
| **HEALTH & HUMAN SERVICES,** ) | |
| ) | |
| ) | |
| **Defendant.** ) | |
| ) | |
| ) | |

**DEFENDANT'S REPLY IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY
JUDGMENT AND OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY
JUDGMENT**

Defendant, the United States Department of Health and Human Services ("HHS" or "the

Agency") hereby submits its reply brief in further support of its motion for summary judgment,

and its opposition to Plaintiff's cross-motion for summary judgment. Defendant is entitled to

summary judgment because there are no genuine issues of material fact in dispute thus entitling

Defendant to judgment as a matter of law.

As Defendant argued in its motion, Plaintiff's submissions to the Agency in this case

failed to establish that Plaintiff was entitled to treatment as a representative of the news media

under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), which is the sole issue in this

case. Plaintiff's cross-motion for summary judgment and opposition to Defendant's motion for

summary judgment do nothing to alter Defendant's entitlement to summary judgment for several

reasons.

First, Plaintiff's attempt to improperly expand the administrative record in this matter

should be rejected. Because Plaintiff did not bother to actually submit the web pages it sought to

have the Agency consider, there is nothing to suggest that the Agency considered the various website pages that Plaintiff has cited to the Court.  In any event, the Agency based its denial of Plaintiff's request for treatment as a representative of the news media on limited excerpts from Plaintiff's website, which were clearly referenced in the Agency's denial letter to Plaintiff.

Second, Plaintiff's submissions to the Agency at the administrative level, which are the only submissions that are to be considered in the Court's review, failed to demonstrate that Plaintiff was entitled to treatment as a representative of the news media.

For these reasons, Defendant's motion for summary judgment should be granted and Plaintiff's cross-motion for summary judgment must be denied.

## <u>ARGUMENT</u>

## I.    PLAINTIFF IMPROPERLY SEEKS TO EXPAND THE ADMINISTRATIVE RECORD IN THIS CASE.

Despite acknowledging that the Court's review in this matter is "de novo, but limited to the record before the agency[,]" Plaintiff's Memorandum of Points and Authorities in Support of its Cross-Motion for Summary Judgment and in Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Mem.") at 4 (internal quotation marks and citations omitted), Plaintiff goes on to state that the administrative record in this case incorporates, by reference, various pages from Plaintiff's website.  <u>Id.</u> at 5.  This is quite simply not true.

As Plaintiff concedes, the administrative record properly consists of the record that was before the Agency at the time it made its decision.  <u>See</u> 5 U.S.C. § 552(a)(4)(A)(vii); <u>District of Columbia Tech. Assistance Org. v. HUD</u>, 85 F. Supp. 2d 46, 48 (D.D.C. 2000) (holding that "[t]he decision of an agency to grant or deny a fee waiver request is reviewed <u>de novo</u> looking only to the administrative record before the agency at the time of the decision[,]" and noting that

the additional supporting documents submitted in conjunction with plaintiff's motion for

summary judgment "were not considered in the disposition of [the] case.") (citation omitted);

Brown v. United States Patent & Trademark Office, 445 F. Supp. 2d 1347, 1355 (M.D. Fla.

2006) ("The administrative record should consist of those documents which the [Agency] used to

determine whether Plaintiff's fees should be waived for this FOIA request.") (emphasis added).[1]

As the declaration of Darlene Christian, Freedom of Information Officer for the Public Health

Service, Department of Health and Human Services, states, the Agency did not rely upon the

numerous citations to Plaintiff's website that Plaintiff submitted as Plaintiff did not actually

submit specific, printed pages from its website.  (Id. ¶ 5).  Rather, Ms. Christian's review of

Plaintiff's website was limited to "plaintiff's home page . . . its mission statement and . . .

information regarding the newsletter it published."  (Id.).  Thus, the various webpages submitted

by Plaintiff were not actually considered by the Agency in denying Plaintiff's FOIA request.

Furthermore, the Agency had no duty to conduct independent research about Plaintiff's

prior publication activities by viewing the information contained on Plaintiff's website.  Brown,

445 F. Supp. 2d at 1354.  Plaintiff, as the requester, had the burden to provide the information it

felt supported its fee waiver request.  Id. (citation omitted).  There is simply no authority that

supports Plaintiff's position that the Agency was required to go online and research Plaintiff's

claims.  Rather, if Plaintiff wanted the various pages from its website to have been considered by

the Agency, Plaintiff should have provided printed copies of those pages to the Agency.  See id.

(rejecting plaintiff's claim that information from its website should be considered a part of the

---

[1]Notably, Plaintiff does not cite any legal authority for its proposition that various pages
from its website, which the FOIA Officer does not contend to have relied upon or viewed, are
properly a part of the administrative record in a FOIA case.  Pl.'s Mem. at 5-6.

administrative record because those pages "would be a part of the record only if [p]laintiff submitted it with his fee waiver request, which he did not."). <u>Cf.</u> <u>Electronic Privacy Info. Ctr. v. Department of Defense</u>, 241 F. Supp. 2d 5, 7 (D.D.C. 2003) (Bates, J.) (in support of its request for treatment as a representative of the news media, non-profit organization submitted "50 pages of documents from its website, including its homepage, a web page displaying scanned images of documents . . . obtained through FOIA requests, a web page displaying an archive of past . . . newsletters, and a list of [its] publications.").

Accordingly, the Court should limit the administrative record to those pages of Plaintiff's website that the FOIA officer relied upon in making her determination. This includes the statement contained on Plaintiff's website that it is a "broker of information," <u>see</u> Def.'s Ex. E, at 2,[2] which was also contained in Plaintiff's 2004 Annual Report and its "About Us" web page from March, 2006, <u>see</u> Def.'s Ex. G, at 2, and are clearly referred to in Ms. Christian's letters to Plaintiff, and are thereby a part of the administrative record. <u>See</u> Def.'s Ex. E, at 2; Def.'s Ex. G, at 2. <u>See also</u> Ex. 1, Christian Decl. ¶ 5 (attaching page from Plaintiff's website where "broker of information" phrase appeared). Plaintiff's attempt to present numerous web pages and other information that was not specifically presented to the FOIA officer simply cannot be countenanced by this Court.

## II.    THE AGENCY PROPERLY DENIED PLAINTIFF'S REQUESTS TO BE TREATED AS A REPRESENTATIVE OF THE NEWS MEDIA.

In its memorandum of law in opposition to Defendant's motion for summary judgment and in support of its own summary judgment motion, Plaintiff does not appear to set forth its

---

[2]References to "Def.'s Ex." are to the exhibits Defendant submitted in support of its initial motion for summary judgment.

arguments regarding each of its requests separately.  Rather, relying on various portions of its website, which are not properly a part of the administrative record in this case, Plaintiff appears to argue that its publication history justified its request for treatment as a representative of the news media.  However, neither Plaintiff's December 2005 or its February 2006 requests sufficiently established that Plaintiff was entitled to news media status, and accordingly summary judgment on this issue in Defendant's favor is warranted.

### A.    Plaintiff's December 2005 Request Failed to Establish Plaintiff is a Representative of the News Media.

As Defendant previously argued, Plaintiff's December 2005 request failed to establish Plaintiff's status as a representative of the news media.   Specifically, the fact that Plaintiff represented that it intended to post the information sought to its website did not justify its request for news media status.  Judicial Watch, Inc. v. United States Dep't of Justice, 122 F. Supp. 2d 13, 20 (D.D.C. 2000) ("Merely making available information to the public does not transform a requester into a representative of the news media.") (citing National Security Archive v. United States Dep't of Defense, 880 F.2d 1381, 1386 (D.C. Cir. 1989)).

In National Security Archive, the District of Columbia Circuit held that a representative of the news media is

> a person or entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience.

880 F.2d at 1387.  In that case, the court noted that the requester had specifically "expressed a firm intention . . . to publish a number of what it refers to as 'document sets.'" Id. at 1386.  The court in Judicial Watch, Inc. v. United States Dep't of Justice, No. Civ.A. 99-2315, 2000 WL 33724963, at

*4 (D.D.C. Aug. 17, 2000), held that a "firm intention" to publish requires "a detailed and clear publication plan, which for example lists the precise sources to be consulted, describes the manner in which the information will be organized in the publication, and illustrates the editorial and organization efforts to be provided by the 'representative of the news media.'" (citation omitted).

Plaintiff does not contend that it submitted a detailed publication plan.[3] Rather, Plaintiff contends that it was not required to submit a detailed publication plan. According to Plaintiff, the National Security Archive court did not impose a requirement that a requester with a significant publishing record submit a detailed publication plan. Plaintiff contends that this detailed publication plan was only mentioned because "[t]he court was clarifying that an entity not already established as a representative of the news media[4] must be allowed to demonstrate its intentions and plans for

---

[3]Indeed, in its December 2005 request, Plaintiff stated merely that it "expect[s] the information produced through this and other FOIA requests to serve as the basis for several press releases and articles that explain the actions and operations of government to the general public." (Ex. A, at 2). In its motion, Plaintiff notes that it declined to respond to Ms. Christian's request for information concerning what Plaintiff intended to do with the information it sought "in any great detail." Pl.'s Mem. at 4. Plaintiff indicates that it "resists answering such questions for reasons of principle." Id. at 12 n.4. Although Plaintiff is entitled to its principles, absent Plaintiff establishing its right to a fee waiver, the Agency is entitled to its fees.

[4]It is not clear what Plaintiff intends by this statement. Clearly, no organization is an "established as a representative of the news media" for purposes of any FOIA request that the organization may submit. Plaintiff contends that Defendant's citation from Judicial Watch, Inc., that a requester's "past record . . . is simply irrelevant because [u]nder the FOIA, the analysis focuses on the subject and impact of the particular disclosure, not the record of the requesting party[,]" Judicial Watch, Inc., 2000 WL 33724963, at *5 (citing 5 U.S.C. § 552(a)(4)(A)(iii)), is misleading because this passage relates solely to the public interest waiver standard, not Plaintiff's request for news media status. Pl.'s Mem. at 14. While the Judicial Watch, Inc. court did make this statement in regards to its findings on the public interest fee waiver, which Defendant clearly indicated by including the court's citation to the applicable FOIA section, Defendant submits that the fact that Plaintiff was designated as a representative of the news media in the context of past FOIA requests did not automatically entitle it to such status in the context of this request.

disseminating the requested information. . . . [T]hese are alternate paths or conditions for receiving recognition as a representative of the news media." Pl.'s Mem. at 13. Plaintiff states this conclusion is not altered by the court's decision in Judicial Watch, Inc., 2000 WL 33724963, at *4, because, according to Plaintiff, the organization there did not have a "significant publishing record to rely on as an alternative to 'precise[ly] outlining its publication intentions." Pl.'s Mem. at 13.

Plaintiff's arguments should be rejected. First, Plaintiff does not, because it cannot, point to any language by the courts in either National Security Archive or Judicial Watch, Inc. that there are "alternate paths" for establishing news media status. Rather, Plaintiff points to the absence of a significant publishing record by the requesters in those cases and deduces that this factor must have been behind the courts' reasoning in requiring a detailed publication plan. However, this was not an explicit holding made in either of the decisions and therefore it is not the law of this circuit.

Second, even assuming the accuracy of Plaintiff's argument that there are separate paths by which to establish its fee waiver status, Plaintiff's statement assumes its request established that it had such a "significant publishing record." However, Plaintiff's December 2005 submission did absolutely nothing to establish that it had a "significant publishing record" that thus alleviated its need to submit a firm publishing plan. Although Plaintiff mentioned in its December 2005 letters that it "write[s] and post[s] an online newsletter" and referred the Agency to Plaintiff's website, Plaintiff did not submit any documents in support of its December 2005 request that established that Plaintiff had a "significant publishing record." Cf. Electronic Privacy Info. Ctr., 241 F. Supp. 2d at 7 (in support of its request for treatment as a representative of the news media, non-profit organization submitted "50 pages of documents from its website, including its homepage, a web page displaying scanned images of documents . . . obtained through FOIA requests, a web page

displaying an archive of past . . . newsletters, and a list of [its] publications.").

Plaintiff's submission in its brief of various website links, Pl.'s Mem. at 9-11, does not change the fact that, in conjunction with its December 2005 request, Plaintiff did not submit one article that it had actually written. Ironically, Plaintiff seeks to impose upon this Court the same burden it sought to impose upon the Agency, i.e., requiring the Court to go on-line to verify that Plaintiff is indeed a representative of the news media. However, neither the Court nor the Agency is required to go on an on-line expedition through Plaintiff's website to find support for its claim that it is entitled to treatment as a representative of the news media. See Brown, 445 F. Supp. 2d at 1354 ("Plaintiff does not provide legal authority for the proposition that an agency must conduct independent research in making a fee waiver determination."). Plaintiff, as the requester, had the burden to establish its entitlement to fee waiver status. Plaintiff failed to do that and therefore the Agency properly denied its request for treatment as a representative of the news media.

**B.    Plaintiff's February 2006 Request Fails to Establish Plaintiff is a Representative of the News Media.**

Nor did anything Plaintiff submitted in support of its February 2006 request establish that it was entitled to status as a representative of the news media. Plaintiff contends that the Agency's conclusion that Plaintiff was a "broker of information," see Def.'s Ex. E, was without basis. Pl.'s Mem. at 6-7. However, not only did Plaintiff fail to substantiate its request for news media status, the Agency was justified in concluding that Plaintiff was a "broker of information" and not a primary news-gathering organization.

**1.    Plaintiff Failed to Substantiate its Request for News Media Status in its February 2006 Request.**

As previously discussed in Defendant's memorandum in support of its motion for summary

8

judgment, Plaintiff's February 2006 request did not provide the justification necessary to establish its claim that it was a representative of the news media.

Again, although Plaintiff's memorandum of law in support of its summary judgment motion is replete with links to website pages that Plaintiff believes supports its request for treatment as a representative of the news media, none of these documents were actually submitted to the Agency, and, as discussed supra, the Agency was not required to conduct independent research on Plaintiff's activities. See Brown, 445 F. Supp. 2d at 1354. Plaintiff, as the FOIA requester, had the burden to justify its entitlement to the fee waiver status it sought. It has wholly failed to do that and submitting numerous links to various website pages to the Court and to the Agency does not alter this conclusion.

**2.    The Agency was Justified in Concluding that Plaintiff was a Broker of Information.**

In denying Plaintiff's request to be treated as a representative of the news media made in its February 2006 request, the Agency determined that Plaintiff was not a primary news-gathering organization and that it was a "broker of information." Def.'s Ex. E, at 2. While quoting the passage from Plaintiff's website from which the term "broker of information" appears, Pl.'s Mem. at 7, Plaintiff neglects to refer the Court to the actual information in its requests that supported the Agency's interpretation that Plaintiff was a not a primary news-gathering organization entitled to treatment as a representative of the news media. Def.'s Mem. at 14-15. Specifically, in its February 2006 request, Plaintiff stated that it "represent[s] the news media and plan[s] to distribute this information to the public." Def.'s Ex. D, at 3. Plaintiff also noted in its request that, in addition to publishing the information on its website,

relevant information from this FOIA request will also be

9

> distributed to the general public via major news organizations.
> Among the news organizations that referred to our reports during a
> recent time period are: CBS, NBC, CNN, NPR, U.S. News & World
> Report, AP, AFP, Reuters, Knight Ridder, Cox News, New York Times,
> Washington Post, Los Angeles Times, USA Today, Dallas Morning News,
> Houston Chronicle, Austin American Statesman, Chicago Tribune,
> Philadelphia Inquirer, Christian Science Monitor, Atlanta Journal &
> Constitution, San Francisco Chronicle and Seattle Times. International
> newspapers such as The Gazette (Montreal), Daily Telegraph (London),
> The Guardian, Irish Times, Scotland on Sunday and Hong Kong Mail have
> also cited the Center reports during a recent time period. <u>We expect that
> information provided through this FOIA request will similarly result in
> reporting featured by such national and global news organizations.</u>

<u>Id.</u> (emphasis added). Clearly, this information, in conjunction with the information Ms. Christian

viewed on Plaintiff's website, supported the Agency's conclusion that Plaintiff was a "secondary

contributor, not a primary news-gathering organization." Def.'s Ex. E, at 2. Specifically, Ms.

Christian stated:

> You stated that your organization 'represent[s]' the news media and
> other Federal agencies have granted CPI media status. DHHS
> fee classifications are determined on a case-by-case basis for each
> FOIA request. The CPI web site acknowledges that it is a broker of
> information. Therefore, CPI is a secondary contributor, not a primary
> news-gathering organization. As such, your statements are not convincing
> and do not provide substantial information to indicate that the release
> of the information, in this instance, would not further the commercial,
> trade, or profit interests of your organization. After review, I am unable to
> grant your request for a fee classification change.

<u>Id.</u>

Despite Plaintiff's focus on Ms. Christian's reference to Plaintiff's website, on which

Plaintiff states that it is an "<u>honest</u> broker of information," Pl.'s Mem. at 7 (emphasis added), the

administrative record establishes that the Agency had support, aside from this statement, that

buttressed its conclusion that Plaintiff was not a primary news-gathering organization. <u>See, e.g.,</u>

<u>Judicial Watch Inc. v. United States Dep't of Justice</u>, 185 F. Supp. 2d 54, 59 (D.D.C. 2002). In

Judicial Watch, Inc. the court held that Judicial Watch's statements that it permitted reporters to inspect its documents; that such reporters may write stories based on the information reviewed; that it posted electronic copies of information received from its FOIA requests on its website and prepared press releases that were "'blast faxed' to radio and television stations and to newspapers across the country[,]" as well as the fact that representatives of Judicial Watch frequently appear on broadcast radio and television programs, did not entitle the organization to treatment as a representative of the news media. Id. Rather, the court concluded that "plaintiff is at best a type of middleman or vendor of information that representatives of the news media can utilize when appropriate. This relationship with the news media, however, does not make Judicial Watch a representative of the news media or entitle it to be considered as such for purposes of a fee waiver under the FOIA." Id. See also Hall v. Central Intelligence Agency, No. Civ.A. 04-0814, 2005 WL 850379, at *6 (D.D.C. Apr. 13, 2005) (holding that FOIA requesters were not representatives of the news media despite statements that they made "research contributions which were reprinted in several newsletters and magazines, an appearance on a talk radio program; unspecified public presentations and briefings conducting for veterans' groups; email newsletters on POW matters sent to various organizations and a single magazine or newsletter article [one of the requesters] authored . . . .").[5]

## III.    CONCLUSION

For the reasons stated above, as well as in Defendant's Memorandum of Law in Support of

---

[5] It is ironic that Plaintiff now complains about the Agency's conclusion that it is a "broker of information" when, in response to the Agency's request that Plaintiff provide information explaining what Plaintiff meant by the term, Def.'s Ex. G at 2, Plaintiff chose to again quote its website and referred the Agency to the definition of the term "honest broker" as found in the American Heritage Dictionary. Def.'s Ex. H at 2.

its Motion for Summary Judgment, Defendant requests that this Court enter summary judgment in

Defendant's favor and deny Plaintiff's Cross-Motion for Summary Judgment.

Respectfully submitted,

    /s/ Jeffrey A. Taylor
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

    /s/ Rudolph Contreras
RUDOLPH CONTRERAS, D.C. BAR #  434122
Assistant United States Attorney

    /s/ Michelle N. Johnson
MICHELLE N. JOHNSON, D.C. BAR # 491910
Assistant United States Attorney
United States Attorney's Office
Civil Division
555 4th Street, N.W. – Room E4212
Washington, D.C. 20530
(202) 514-7139

COUNSEL FOR DEFENDANT


Of Counsel:

Patricia Mantoan
Attorney
Office of the General Counsel
General Law Division
Room 4760 Cohen Building
330 Independence Avenue, S.W.
Washington, DC 20201

# EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CENTER FOR PUBLIC INTERGRITY,          )
                                       )
              Plaintiff,               )
                                       )
       v.                              )          Civil Case No. 06-1818 (JDB)
                                       )
UNITED STATED DEPARTMENT OF            )
HEALTH AND HUMAN SERVICES,             )
                                       )
              Defendant.               )
_____)

## DECLARATION OF DARLENE CHRISTIAN

I, Darlene Christian, hereby declare as follows:

1. I am the Freedom of Information Officer (FOIO) for the Public Health Service (PHS),

Department of Health and Human Services (HHS). I have served in this position since October

1987. In this capacity, my duties include responding to requests under the Freedom of

Information Act (FOIA) for records generated by all components of the Office of Public Health

and Science (OPHS), and all components of the HHS Program Support Center (PSC). My duties

include determining whether to release or withhold records or portions of records and

determining fee status of the requester in accordance with the FOIA and the HHS implementing

regulations. I have also served as the Privacy Act Officer and the Records Management official

for the HHS PSC for the last two years. As the PSC Privacy Act Officer, I ensure PSC's

compliance with the Privacy Act by reviewing systems of records maintained by PSC;

conducting Privacy Act training; developing new system of records notices as needed; and

1

responding to inquiries regarding PSC's implementation of Privacy Act policies. Records

management activities include maintaining and updating record retention schedules; providing

guidance on the destruction and retirement of records; reviewing policy memoranda; and

ensuring compliance with National Archives and Records Administration guidelines.

 

2. In my capacity as the FOIO for PHS, I also respond to requests for records which

involve more than one component of the PHS agencies and the PSC. PHS agencies include the

Food and Drug Administration (FDA); the Health Resources and Services Administration

(HRSA); the Centers for Disease Control and Prevention (CDC); the Substance Abuse and

Mental Health Services Administration (SAMHSA); the Indian Health Service (IHS); the

Agency for Healthcare Research and Quality (AHRQ); and the National Institutes of Health

(NIH). Further, I serve as the Administrative Appeals FOIA Officer for all public health

agencies and the PSC. Specifically, my office receives, reviews, and processes all administrative

appeals that are filed as a result of a public health agency or PSC withholding under the FOIA or

fee decision. In this capacity, I would receive any administrative appeals filed by Plaintiff as a

result of fee decisions by an organization within PHS.

 

3. I make this declaration based upon my personal knowledge and

information available to me in my official capacity.

 

4. The purpose of this declaration is to provide information about the research I did of

plaintiff's website while processing the two FOIA appeals concerning its media status request.

2

5. Plaintiff's appeals provided general citations to its website, and I voluntarily reviewed various parts of plaintiff's website. Other than a list of awards, plaintiff did not print out specific pages from its website and did not submit them to my office with their appeals. When I was on plaintiff's website, besides the information mentioned in my November 30, 2006 letter to plaintiff's counsel, I looked through plaintiff's home page, and I reviewed its mission statement and clicked on the information regarding the newsletter it published. I specifically printed out one page from plaintiff's website. See Attachment 1 to this Declaration. Also, I queried other FOIA Officers in this Department to determine how they classified plaintiff, and I also reviewed my office's history with it to determine our previous classifications of the organization to determine if there were any challenges made to our previous classifications of the Plaintiff's organization as a Category III requester (someone who is not a commercial requester and not an educational and scientific institution or news media requester).

3

I declare under penalty of perjury that the foregoing is true and correct, to the best of my knowledge and belief.

Executed this 8th day of February, 2007.

Darlene Christian

4

# ATTACHMENT 1

# THE CENTER FOR PUBLIC INTEGRITY

investigative Journalism in the Public Interest

## About Us

The Center for Public Integrity is a nonprofit, nonpartisan, tax-exempt organization that conducts investigative research and reporting on public policy issues in the United States and around the world.



The Center was founded in 1989 by Charles Lewis following a successful 11-year career in network television news. Through thorough, thoughtful and objective analyses, the Center hopes to serve as an honest broker of information – and to inspire a better-informed citizenry to demand a higher level of accountability from its government and elected leaders.

The Center extends its public policy journalism around the world. Created in 1997, the International Consortium of Investigative Journalist network includes 92 leading investigative reporters and editors in 48 countries. The group has collaborated on numerous online and printed reports on corporate crime, arms trafficking, terrorism, U.S. military policy and human rights issues. Global Access, another international project, was launched in 2001 to systematically track and report on openness, accountability and the rule of law in various countries.

Since 1990, the Center for Public Integrity has released more than 275 investigative reports and 14 books. In just the last eight years the organization has been honored more than 30 times by, among others, PEN USA, Investigative Reporters and Editors (IRE) and the Society of Professional Journalists (SPJ). The Center's "Windfalls of War" report on U.S. government contracts in Iraq and Afghanistan won the highly prestigious George Polk award (online category) in 2004.

The Center's publication, *The Buying of the President 2004*, built on the success of its 1996 and 2000 predecessors and again focused on the relationships between major presidential candidates and their "career patrons." The book, which appeared on *The New York Times* bestseller list several times since its January, 2004 publication, has become something of an American classic because it provides the **only** investigative profiles and personal histories of the major presidential candidates prior to the first caucuses and political primaries. In the summer of 2004, the Center published *The Corruption Notebooks*, a hard-hitting collection of essays by leading investigative journalists around the world on the status of corruption in 25 countries.

The exponential increase in usage of the Center's reports by the media, academics, nongovernmental organizations and the public at large shows the growing impact of its mission. The quality of the Center's work, in only 14 years, has firmly established the organization as an institutional presence in Washington. By building upon and perpetuating its hard-earned reputation for "public service journalism," we aim to steadily increase the organization's impact on public policy debates.

The Center is located at 910 17th Street, NW, Suite 700, Washington, DC 20006. The telephone number is (202) 466-1300.

© 2005, The Center for Public Integrity. All rights reserved.
**IMPORTANT:** Read our privacy policy and the terms under which this service is provided to you.
910 17th Street, NW · 7th Floor · Washington, DC 20006 · Tel. (202) 466-1300

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CENTER FOR PUBLIC INTEGRITY,** ) | |
| ) | |
| **Plaintiff,** ) | **Civil Action No.: 06-1818 (JDB)** |
| ) | |
| **v.** ) | |
| ) | |
| **UNITED STATES DEPARTMENT OF** ) | |
| **HEALTH & HUMAN SERVICES,** ) | |
| ) | |
| ) | |
| **Defendant.** ) | |
| ) | |
| ) | |

**[PROPOSED] ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT**

This matter having come before the Court on Defendant's Motion for Summary

Judgment, Plaintiff's Cross-Motion for Summary Judgment, and the supporting pleadings

submitted by both parties, it is hereby

**ORDERED** that Defendant's Motion for Summary Judgment is hereby **GRANTED**. It

is further

**ORDERED** that Plaintiff's Cross-Motion for Summary Judgment is hereby **DENIED**. It

is further

**ORDERED** that Plaintiff's Complaint is dismissed in its entirety with prejudice.

**SO ORDERED** on this ___ day of _____, 2007.

_____
UNITED STATES DISTRICT JUDGE