**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| CTR. FOR PUB. INTEGRITY,<br><br>    Plaintiff,<br><br>        v.<br><br>U.S. DEP'T OF HEALTH & HUMAN SERVS.,<br><br>    Defendant. | Civil Action No.  06-1818 (JDB) |

## MEMORANDUM OPINION

Plaintiff Center for Public Integrity ("CPI") challenges the denial by defendant United States Department of Health and Human Services ("HHS") of its request for treatment as a representative of the news media for purposes of assessing fees for document requests made by CPI under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (2000).  Before the Court are the parties' cross-motions for summary judgment.  For the reasons explained below, the Court concludes that CPI is entitled to treatment under FOIA as a representative of the news media.  The Court therefore grants CPI's cross-motion for summary judgment and denies HHS's motion for summary judgment.

## BACKGROUND

CPI defines itself as a nonpartisan, nonprofit investigative reporting organization that examines and writes about public service and ethics-related issues.  See, e.g., Def.'s Mot. for Summ. J., Ex. A (Dec. 21, 2005, FOIA Requests) at 1.  Plaintiff submitted, on two separate dates, a total of six requests for materials from HHS pursuant to the Freedom of Information Act,

§ 552(a).  The Court will describe the two sets of requests in turn.

## I.       December 21, 2005 Requests

On December 21, 2005, CPI sent five FOIA requests to HHS soliciting materials from and correspondence to the Agency for Toxic and Disease Registry.  <u>See</u> Dec. 21, 2005, FOIA Requests.  In its requests, CPI asked to be classified as a "representative of the news media" for purposes of the agency's FOIA fee schedule.  <u>See</u> § 552(a)(4)(A)(II) (requiring agencies to limit processing fees to duplication expenses for requests made by "representative of the news media"); 45 C.F.R. § 5.41(b) (2006) ("If you are . . . a representative of the news media . . . HHS will charge you only for the duplication of documents.").  CPI noted in its request letters that it had been treated as a representative of the news media by the State Department and the Central Intelligence Agency in previous FOIA searches.  Dec. 21, 2005, FOIA Requests at 1, 5, 9, 13, 17.

CPI also provided the following information to HHS in support of its status as a representative of the news media.  First, CPI explained why it thought that the material it requested was likely to contribute to the public's understanding of the agency:

> The information will be posted to our newsletter, <u>The Public i</u> and on our website, www.publicintegrity.org, and will be read by a large number of people.  We expect the information produced through this and other FOIA requests to serve as the basis for several press releases and articles that explain the actions and operations of government to the general public.  Similar stories we have written in the past have increased the understanding of an issue by a large percentage of the public.  For example, our organization posted the first stories about the "Lincoln Bedroom" scandal under the Clinton administration, and now the general public knows that campaign contributors to the Democratic Party were allowed to stay at the White House.  Other stories, including the Center's exclusive release of Securities and Exchange Commission Records pertaining to President Bush's sale of Harken stock and Vice President Cheney's connections to the Halliburton Corporation have similarly informed the public.

<u>Id.</u> at 2, 6, 10, 14, 18.  CPI further noted that "relevant information from this FOIA request will

also be distributed to the general public via major news organizations." Id. In addition, CPI

claimed that it "possesses the skills necessary to process the requested information" because it is

comprised of "investigative journalists" who "write and post an online newsletter." Id. CPI also

observed that "[o]ther members of the media consider us to be [sic] news organization as

evidenced by our numerous awards over the years from the Society of Professional Journalists

and the Investigative Reporters and Editors Inc." Id. at 3, 7, 11, 15, 19. Lastly, CPI stated that

the requested disclosures "do not primarily serve any 'commercial interests.'" Id.

On October 5, 2006, almost a year after plaintiff's FOIA requests were submitted, HHS

denied CPI's request for treatment as a representative of the news media. See Def.'s Mot. for

Summ. J. Ex. B at 1. HHS simply stated that:  "We have carefully considered your request for a

fee waiver but do not believe you meet the criteria as set forth in the Department of Justice FOIA

Reference Guide, or the Department's implementing regulations at 45 CFR Part 5.45, therefore

we are denying your request."[1] Id. On October 18, 2006, plaintiff filed an appeal with HHS

claiming that CPI falls within the D.C. Circuit's definition of a representative of the news media.

Def.'s Mot. for Summ. J. Ex. C at 1. As part of the appeal, CPI "invite[d HHS] to review our

---

[1]The letter from HHS referred only to CPI's "request for a fee waiver" and did not
specifically address whether CPI was a "representative of the news media."  Furthermore, the
regulation cited by HHS in its letter governs only fee waivers and reductions and is independent of
the regulation governing fee categories such as "representative of the news media." Compare 45
C.F.R. § 5.41 ("The paragraphs below state, for each category of request, the type of fees that we
will generally charge.  However, for each of these categories, the fees may be limited, waived, or
reduced for the reasons given in §§ 5.42 through 5.45 or for other reasons."), and § 5.41(b) ("If
you are . . . a representative of the news media, and your request is not for a commercial use, HHS
will charge you only for the duplication of documents."), with § 5.45 (providing that HHS "will
waive or reduce the fees we would otherwise charge if disclosure of the information" is in public
interest and is not primarily in commercial interest of requester).  Thus, it is not clear that HHS
ever considered whether CPI was a representative of the news media under 45 C.F.R. § 5.41(b) in
connection with its December 2005 FOIA requests.

recent publications, at http://www.publicintegrity.org/archives/aspx," and enclosed a list of awards that it had received for various publications since 1997.  See id. at 2-6.  No agency action was taken on the appeal prior to the filing of the complaint in district court.

**II.    February 14, 2006 Request**

CPI submitted a sixth FOIA request to HHS on February 14, 2006, that asked for information regarding "grants, contracts and/or agreements made through the HHS in relation to the President's Emergency Plan for Aids Relief."  Def.'s Mot. for Summ. J. Ex. D (Feb. 14, 2006, FOIA Request) at 1.  CPI again requested treatment as a representative of the news media under the HHS fee schedule.  See id.  The information that CPI provided in its February 2006 letter in support of this status was identical to the information provided in each of CPI's December 2005 FOIA requests.  See Feb. 14, 2006, FOIA Request at 2-3.

On April 19, 2006, HHS issued a letter declining to recognize CPI as a representative of the news media.  See Def.'s Mot. for Summ. J. Ex. E (Letter from Darlene Christian, Public Health Service, to Marina Walker Guevara, CPI (Apr. 19, 2006)) ("April 2006 Denial") at 1.  HHS stated that the "CPI web site acknowledges that it is a broker of information.  Therefore, CPI is a secondary contributor, not a primary news-gathering organization."  Id. at 2.  HHS concluded that CPI had not sufficiently demonstrated that release of the requested information was not primarily in CPI's commercial interest.  Id.

CPI appealed this decision on May 26, 2006.  See Def.'s Mot. for Summ. J. Ex. F.  It objected to HHS's interpretation of the phrase "broker of information" as an indication that CPI would profit commercially from the requested information.  See id.  CPI explained that the phrase may have been taken from a statement on its website that "[t]hrough objective and thorough

analyses, the Center hopes to serve as an honest broker of information and to inspire a better-informed citizenry that can demand a higher level of accountability from its government and elected leaders." Id. As in the previous appeal, CPI also invited HHS to review its recent publications on its website and enclosed with the appeal a list of awards for its publications. See id. at 1-2. Again, HHS did not take any action on the appeal prior to the filing of this lawsuit.

## III.    Proceedings After Filing of Complaint

Plaintiff filed a complaint in this Court on October 24, 2006, challenging the denial of its request for news-media fee category status with respect to its February 2006 FOIA request. The amended complaint, filed on November 21, 2006, added similar claims based on HHS's treatment of CPI's December 2005 requests. Then, on November 30, 2006, HHS sent a letter to CPI requesting "additional information from CPI in order to complete processing [of its appeals] and issue a final agency determination." Def.'s Mot. for Summ. J. Ex. G at 1. In that letter, HHS asked CPI to address (1) what it meant by the term "broker of information," as it was used in the "2004 Annual Report that appeared on [CPI's] website" and in the "About Us" section of the website in March 2006; (2) what CPI intended to do with the requested records; (3) how CPI would use its editorial skills to turn the requested record into a distinct work; and (4) how CPI would distribute that distinct work. Id. at 2.

CPI provided its response to the agency on December 6, 2006. See Def.'s Mot. for Summ. J. Ex. H. CPI answered the first question by quoting the American Heritage Dictionary definition of "honest broker" ("A neutral agent, as in mediation.") and refused to provide specific answers to the latter three questions because they would be "superfluous" to the information already provided. Id. at 2. CPI then repeated its intention of using the information to "creat[e] 'distinct

works' of a character similar to the hundreds of reports it has created since its formation in 1989"

that would be distributed "by publication on its Web site and/or in printed form (e.g., newsletter,

pamphlet or book)." Id. To this Court's knowledge, HHS has not made a final determination

with respect to CPI's two pending administrative appeals.

## STANDARD OF REVIEW

In a case involving review of an agency determination under FOIA, the standard set forth

in Rule 56(c) of the Federal Rules of Civil Procedure does not apply because of the limited role of

a court in reviewing the record before the agency. This Court will apply a de novo standard of

review to the agency's FOIA fee-category determination, looking only at the record before the

agency. See Elec. Privacy Info. Ctr. v. Dep't of Def., 241 F. Supp. 2d 5, 9 (D.D.C. 2003) ("The

statutory language, judicial authority, and . . . legislative history thus support the view that

determinations regarding preferred fee status are reviewed de novo."); see also 5 U.S.C.

§ 552(a)(4)(A)(vii) ("In any action by a requester regarding the waiver of fees under this section,

the court shall determine the matter de novo: Provided, That the court's review of the matter shall

be limited to the record before the agency.").[2]

## ANALYSIS

Federal regulations implementing FOIA provide some guidance with respect to the

meaning of the term "representative of the news media." Although the FOIA statute does not

---

[2]Most, but not all, district courts have employed a de novo standard of review for FOIA fee category determinations. See, e.g., Elec. Privacy Info. Ctr., 241 F. Supp. 2d at 9 (listing cases). But see Judicial Watch, Inc. v. Dep't of Justice, 122 F. Supp. 2d 5, 11-12 (D.D.C. 2000) (applying arbitrary and capricious standard of review). The Court concludes, and both parties agree, that de novo review is proper. See Def.'s Mem. in Support of Mot. for Summ. J. ("Def.'s Mem.") at 8; Pl.'s Mem. in Support of Cross-Mot. for Summ. J. ("Pl.'s Mem.") at 4.

itself provide a definition of the phrase, it does require agencies to promulgate regulations establishing guidelines for fee determinations in conformance with the uniform guidelines issued by the Office of Management and Budget ("OMB").  § 552(4)(A)(i).  The OMB uniform guidelines define "representative of the news media" as "any person actively gathering news for an entity that is organized and operated to publish or broadcast news to the public."  Uniform Freedom of Information Act Fee Schedule Guidelines, 52 Fed. Reg. 10,012, 10,018 (Mar. 27, 1987).  OMB's comments to the uniform guidelines further explain that "news media" should be limited to "purveyors of information that is current or would be of current interest" and that publishing or broadcasting news "implies something more than merely 'making information available.'"  Id. at 10,015.  Instead, the "news media perform an active rather than a passive role in dissemination.  Thus, they can be distinguished, for example, from an entity such as a library which stores information and makes it available on demand."  Id.  HHS's regulations provide a definition of "representative of the news media" that is essentially identical to the one in the uniform guidelines.  See 45 C.F.R. § 5.5 (defining term as "a person actively gathering information for an entity organized and operated to publish or broadcast news to the public").

The D.C. Circuit has elaborated on the meaning of "representative of the news media" for purposes of FOIA.  After extensively consulting relevant legislative history, the court of appeals in Nat'l Sec. Archive v. Dep't of Defense, 880 F.2d 1381 (D.C. Cir. 1989), held that "[a] representative of the news media is, in essence, a person or entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience."  Id. at 1387.  The court made clear that a private library or repository of information would not fall within this definition; nor would

middlemen (alternatively referred to as "information vendors" or "data brokers") who request documents on behalf of specific parties.  See id.

The facts of Nat'l Sec. Archive are also illustrative.  The plaintiff National Security Archive requested information from the Department of Defense in order to publish what it called "document sets" -- compilations of documents relating to particular areas of current interest, supplemented with "'detailed cross-referenced indices, other findings aids, and a sophisticated computerized retrieval system' in order to make [the compilation] more accessible to potential users."  Id. at 1386.  The court of appeals observed that the document sets went beyond merely making information available -- an activity that would be "insufficient to establish an entitlement to preferred status" -- and instead "entail[ed] the kind of initiative we associate with 'publishing or otherwise disseminating' that information," activities that would qualify for preferred fee status. Id.  In particular, the Archive, in compiling its document sets, "gathers information from a variety of sources; exercises a significant degree of editorial discretion in deciding what documents to use and how to organize them; devises indices and finding aids; and distributes the resulting work to the public."  Id. at 1387.  Although the court did not want to "suggest[] that any one of these activities is either necessary or sufficient for a person or organization to be a 'representative of the news media,'" it concluded that "an organization that engages in all of them" would fall within that category.  Id.

CPI falls within FOIA's definition of "representative of the news media."  Each of CPI's six original FOIA requests explained that the information it was seeking would "serve as the basis for several press releases and articles" similar in nature to previous stories that CPI had written and distributed concerning matters such as the "'Lincoln Bedroom' scandal under the Clinton

administration," "President Bush's sale of Harken stock and Vice President Cheney's connections

to the Halliburton Corporation." Dec. 21, 2005 FOIA Requests at 2, 6, 10, 14, 18; Feb. 14, 2006

FOIA Request at 2. CPI also indicated that it was comprised of "investigative journalists" who

"write and post an online newsletter" called The Public i, and that the information sought in the

FOIA requests would be posted to that newsletter. Id. Furthermore, as part of its administrative

appeal, CPI submitted a list of its past publications that had garnered various awards. Def.'s Mot.

for Summ. J. Ex. F at 3-7. This information pertaining to CPI's activities, which was part of the

record before the agency,[3] is sufficient to qualify CPI as a representative of the news media under

---

[3]This Court has not considered any material from CPI's website other than the list of awards that CPI printed out and enclosed with its administrative appeal, see Def.'s Mot. for Summ. J. Ex. F at 4-7, and the copy of the "About Us" section of the website printed out by the HHS FOIA officer at the time she reviewed CPI's appeal, see Def.'s Reply Ex. 1 (Decl. of Darlene Christian) Attach. 1 ("About Us" web page printed Mar. 31, 2006). CPI argues that the entirety of its website may be reviewed here because its original FOIA requests invited HHS to visit its website: "For more information on the Center for Public Integrity, ICIJ [the International Consortium of Investigative Journalists], and their online publication, please refer, respectively, to http://www.publicintegrity.org, http://www.icij.org, and http://www.public-i.org." Dec. 21, 2005, FOIA Requests at 1-2, 5-6, 9-10, 13-14, 17-18; Feb. 14, 2006, FOIA Request at 2. CPI also points to evidence in the record suggesting that HHS did review at least some of the material on the website. See April 2006 Denial at 2 ("The CPI web site acknowledges that it is a broker of information."); Def.'s Mot. for Summ. J. Ex. G at 1 (referencing "2004 Annual Report that appeared on [CPI's] website" and "About Us" section of website in November 2006 letter requesting additional information).

The Court cannot agree that the totality of CPI's website may be considered in this action. The mere inclusion of a website address in a FOIA request is not sufficient to render any and all material appearing on that website part of the record before the agency. Only that material provided to or definitively reviewed by the agency can fairly be considered as part of the record. See Brown v. U.S. Patent & Trademark Office, 445 F. Supp. 2d 1347, 1354 (M.D. Fla. 2006). Furthermore, the type of incorporation by reference of a website suggested by CPI would seriously frustrate judicial review. CPI's filings before the Court demonstrate this problem -- CPI submitted a declaration from a network administrator who used data retrieved from "backups recorded on or about February 24, 2006, and October 27, 2006" in order "to reconstruct certain pages on the Center's Web site as of those dates," which were then attached to the declaration. Decl. of Chatchai Sae-Tung ¶ 4. Even if the FOIA officer admitted to reviewing portions of a website at some point during agency review, see Decl. of Darlene Christian ¶ 5, it would be impossible for

the HHS and OMB regulations -- CPI has taken, and will continue to take, an active role in

disseminating information of current interest to the public. CPI's activities also meet the D.C.

Circuit's interpretation of "representative of the news media" because they demonstrate that CPI,

in its newsletter, press releases, and other articles, "gathers information of potential interest to a

segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and

distributes that work to an audience." Nat'l Sec. Archive, 880 F.2d at 1387.

    HHS argues that in order for a requester to qualify as a representative of the news media,

it must demonstrate a "firm intention" to disseminate publicly the requested information, and that

CPI has not shown such a firm intention here. See Def.'s Mem. at 13. HHS relies on two district

court opinions that have applied a "firm intention" requirement. In Judicial Watch, Inc. v. U.S.

Dep't of Justice, No. 99-cv-2315, 2000 WL 33724693 (D.D.C. Aug. 17, 2000), the court stated its

view that, "[a]ccording to the D.C. Circuit [in Nat'l Sec. Archive], an entity is a 'representative of

the news media' if it has 'expressed a firm intention' to publish documents related to information

sought in a FOIA request." Id. (quoting Nat'l Sec. Archive, 880 F.2d at 1386). The district court

further explained that a "'firm intention' entails a detailed and clear publication plan which, for

example, lists the precise sources to be consulted, describes the manner in which information will

be organized in the publication, and illustrates the editorial and organizational efforts to be

provided." Id. Judicial Watch had requested news-media-representative status based in relevant

part upon its statement that "it has published and disseminated a report relating to the

impeachment of President Clinton and that it plans to publish similar reports in the future." Id. at

_____

this Court to know whether the website reconstruction accurately replicates the website as it
existed during that review.

*4.  The court determined that Judicial Watch was not entitled to preferred status because it had

not demonstrated the requisite firm intent; instead, Judicial Watch "conveyed only an indefinite

intention to publish future reports based on 'information gleaned from [FOIA] requests <u>like</u> the

one at issue here,' but apparently, not necessarily from this particular request."  <u>Id.</u>  In a second

case involving the same parties, <u>Judicial Watch, Inc. v. U.S. Dep't of Justice</u>, 122 F. Supp. 2d 13

(D.D.C. 2000), the district court again declined to grant news-media-representative status to

Judicial Watch because its "general statements about its past activities," including a reference to

the one, previously released report on President Clinton, were "not specific enough to establish a

'firm intention' to publish requested information."  <u>Id.</u> at 20-21.

  The "firm intention" requirement expressed in these cases is premised on the D.C.

Circuit's observation in <u>Nat'l Sec. Archive</u> that "[t]he Archive has previously published only one

book . . . , but it has expressed a firm intention, which DoD does not here question, to publish a

number of what it refers to as 'document sets.'"  880 F.2d at 1386.  There is no indication,

however, that the court of appeals intended in all circumstances to require a detailed game plan

for the publication of information requested through FOIA, particularly for those organizations

whose past activities would unambiguously qualify them as members of the news media.

Notably, both the National Security Archive and Judicial Watch were organizations whose past

activities did not qualify them as representatives of the news media, save arguably for one

previous publication each.  <u>See</u> <u>Nat'l Sec. Archive</u>, 880 F.2d at 1386; <u>Judicial Watch, Inc.</u>, 2000

WL 33724693, at *4.  And the first <u>Judicial Watch</u> court in particular was concerned that an

entity whose past activities did not support the application of a preferred fee status nonetheless

would be able to qualify as a representative of the news media by stating its vague intention to

publish a report in the future.  See Judicial Watch, Inc., 2000 WL 337724693, at *4 ("If such

vague intentions satisfied FOIA's requirements, any entity could transform itself into a

'representative of the news media' by including a single strategic sentence in its request.").  Here,

in contrast, CPI provided HHS with information detailing its relatively established history of

publication activities, as well as its intent to use the information sought in these particular

requests "as the basis for several press releases and articles" similar in nature to its previous

reports.  Dec. 21, 2005 FOIA Requests at 2, 6, 10, 14, 18; Feb. 14, 2006 FOIA Request at 2.  The

Court does not believe that, in this case, additional detail is necessary with respect to CPI's future

publication plans.

**<u>CONCLUSION</u>**

For the foregoing reasons, the Court holds that CPI is entitled to treatment as a

representative of the news media for purposes of FOIA.  Accordingly, the Court grants plaintiff's

cross-motion for summary judgment and denies defendant's motion for summary judgment.  A

separate order accompanies this memorandum opinion.


                              _____/s/ John D. Bates_____
                                     JOHN D. BATES
                                United States District Judge


Dated: <u>August 3, 2007</u>


-12-
